## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Brandon Hudson**<br>534 E 45th Street<br>Chicago, IL 60653 | From: **Chicago District Office**<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |

|   | On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2018-05720** | **Shuwn Hayes,**<br>**Investigator** | **(312) 869-8036** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

|   | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
|   | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|   | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|   | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| **X** | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
|   | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|   | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman*                              9/28/18

Enclosures(s)

**Julianne Bowman,**
**District Director**                    *(Date Mailed)*

cc:     **COOK COUNTY**
**NILE N. MILLER**
**SUPERVISOR-LABOR AND EMPLOYMENT SECTION**
**CIVIL ACTIONS BUREAU**
**COOK COUNTY STATE'S ATTORNEY OFFICE**
**50 W. WASHINGTON, SUITE 500**
**CHICAGO, IL 60602**

**EXHIBIT**

1

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See Privacy Act Statement before completing this form. | EEOC ☒  IDHR ☐ | 440-2018-05720 |

### Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINT (indicate Mr. Ms. Mrs.)  Brandon Hudson | TELEPHONE NUMBER (include area code) (630) 697-9306 |
|---|---|

| STREET ADDRESS 534 East 45th Street | CITY, STATE, ZIP CODE  Chicago, IL 60653 | DATE OF BIRTH September 21, 1983 |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE, LIST BELOW)

| NAME OF RESPONDENT Kim Foxx The Cook County State's Attorney's Office Cook County | NUMBER OF EMPLOYEES, MEMBERS More than 500 employees | TELEPHONE NUMBER (include area code) (312) 603-1880 |
|---|---|---|

| STREET ADDRESS  Cook County – 118 N. Clark Street | CITY, STATE, ZIP CODE Chicago, IL 60602 Chicago, IL 60602 Chicago, IL 60602 | COUNTY  Cook |
|---|---|---|

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| Race discrimination in violation of Title VII of the 1964 Civil Rights Act, as amended, and the Illinois Human Rights Act, Retaliation in violation of Title VII and the Illinois Human Rights Act. Cook County, the ▓▓▓▓▓▓▓▓ and its agents, including ▓▓▓▓▓▓▓▓ have subjected me to unequal terms and conditions in my employment as an Assistant State's Attorney based on my race and sex, African American male. Respondents retaliated against me when I engaged in protected activity to oppose its discriminatory practices and policies, and ultimately terminated me. If the EEOC determines my position to be exempt from Title VII, I request this charge be processed as a complaint and pursuant to the Government Employee Rights Act of 1991 (GERA). No proceedings involving the alleged and unlawful employment practices herein have been commenced before a State or local FEP agency. | Termination date: December 4, 2017  ☒ CONTINUING ACTION  RECEIVED EEOC  JUN 0 1 2018  CHICAGO DISTRICT OFFICE |

### SEE ALSO THE ATTACHED DOCUMENTS

| I also want this charge filed with the IDHR. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.  ■ Yes | SUBSCRIBED AND SWORN TO BEFORE ME  THIS _____ DAY OF _____, 201__. |
|---|---|
|  | *Brandon Hudson*     6-1-18  SIGNATURE OF COMPLAINANT        DATE  I declare under penalty that the foregoing is true and correct. I swear or affirm that I have read the above charge and that is true to the best of my knowledge, information and belief |
| NOTARY STAMP |  |

**June 1, 2018**

RECEIVED EEOC

JUN.0 4 2018

CHICAGO DISTRICT OFFICE

**BY DELIVERY**
Equal Employment Opportunities Commission
Chicago District Office
500 West Madison Street
Suite 2000
Chicago, Illinois 60661

Re:     *Hudson v. Foxx, et al.*
        Discrimination and Retaliation Charge/Complaint

Please accept this initial position statement as support for and supplement to Complainant Brandon Hudson's EEOC Charge/Complaint, filed herewith. Mr. Hudson asks that in the event that the EEOC were to determine he was exempt from Title VII pf the Civil Rights Act of 1964, as amended, the EEOC process this charge as a complaint and pursuant to the Government Employee Rights Act of 1991 (GERA).

### Factual Background

Respondent Cook County is a municipality organized under the laws of the State of Illinois. Respondent Cook County State's Attorney's Office ("SAO") is an independent agency within the County responsible for prosecuting crimes committed in the County. The office also represents the County in civil proceedings. Respondent Kim Foxx, was elected to lead the SAO and took office in December 1, 2016. At all times relevant to this complaint, Foxx was acting within the scope of her employment. She is named in her individual and official capacity.

Brandon Hudson began his employment as an Assistant State's Attorney with the SAO in June 2015. His first performance evaluation reflected that his work was satisfactory or exceptional in all areas. He performed his duties consistently in a manner that met or exceeded departmental expectations. He was a published ASA in the Appeals division during his first year, which is rare and demonstrates a high level of competence. This continued to be true, throughout Mr. Hudson's employment and despite being subjected to ongoing hostile and discriminatory conduct by supervisors and colleagues that caused him to suffer from anxiety and stress and derailed his professional career.

For example, when he was first hired as an ASA, one of Mr. Hudson's Caucasian colleagues questioned him about how he got a position with the office and informed him that it should have gone to someone else. That same individual later falsely accused Mr. Hudson of the unauthorized practice of law – an allegation his supervisors investigated and found to be false. Despite her false allegation, that Caucasian colleague remains with the ASA's Office today and was effectively promoted at the same time Mr. Hudson was being terminated. At the time of his hire, he was one of only two African American male ASAs in his unit.

1

EEOC Charge/Complaint
*Hudson v. Foxx, et al.*

Mr. Hudson was transferred from the Appellate to the Juvenile division in approximately July of 2016. He was the only African American male ASA in the division at the time of his transfer and for some time after. During his time in the Juvenile division, Mr. Hudson was chastised for no legitimate reason for requesting time off to care for his mother, and was subjected to a pattern of harassment at the hands of his direct supervisor who would openly berate, belittle, and question Mr. Hudson's every decision. Mr. Hudson, whose performance until then was unquestionably meeting or exceeding expectations, was abruptly served a Memorandum from his new supervisors that contained unfounded allegations that his performance required improvement. Mr. Hudson promptly submitted a response rebutting the unfounded allegations. Mr. Hudson was concerned because he noted that his Caucasian colleagues in the Juvenile division were not subjected to such intense and harsh critique and were instead provided guidance and support. For example, when a Caucasian mistakenly recommended deferred prosecution for a defendant who did not qualify for the program, SAO supervisors nonetheless supported the ASA, despite the mistake.

**Mr. Hudson's Protected Activity**

In January of 2017, as a result of the conduct described above, Mr. Hudson reached out to Jennifer Ballard Croft, the Cook County State's Attorney's Chief of Staff and Chief Diversity Officer. Mr. Hudson told Ms. Ballard Croft of the issues he was having with his supervisor, his colleague's statements and accusations, as well as his concern that there was a pronounced lack of diversity in the ASA's Office. In particular, Mr. Hudson noted the disturbing pattern of African American men being made to feel out of place, set up to fail, and pushed out of the job altogether. He also noted that his supervisors and colleagues often made comments about his physique or accused him of being "aggressive," something his Caucasian colleagues did not experience and which made him uncomfortable.

During the conversation with Ms. Ballard Croft, Mr. Hudson requested a transfer out of the Juvenile division. It seems the SAO conducted an investigation of Mr. Hudson's complaints though he was never advised of the findings. For the next month and a half, Mr. Hudson continued to follow up with Ms. Ballard Croft. During that time, the harassment Mr. Hudson was experiencing continued to increase, as did the resulting stress he felt. In March of 2017, Mr. Hudson began to receive treatment for stress-related back issues, which required him to leave work early from time to time. Mr. Hudson advised his supervisors and human resources of his need for medical leave and was, again, discouraged from exercising his right to the same. In fact, he was told by his supervisor that he should seek medical attention "on his own time." Caucasian ASAs who took time off for medical and other reasons were treated more favorably.

Finally, in May of 2017, after two in-person meetings and several follow up email and phone communications with Ms. Ballard Croft and human resources, Mr. Hudson was abruptly transferred to the Narcotics division, effective May 22, 2017. At the time of his transfer, Mr. Hudson was the only African American male ASA in the division.

EEOC Charge/Complaint
*Hudson v. Foxx, et al.*

## Narcotics Division

It became very clear, very quickly that Mr. Hudson was not welcome in the Narcotics division. Most notably, SAO supervisors falsely accused him of unethical conduct and threatened him with possible ARDC charges for actions previously taken by a Caucasian ASA. Specifically, he was accused of unethical conduct that, according to supervisors, could constitute a Brady violation almost immediately after he arrived in the division. Mr. Hudson made it clear to his supervisors that he did not and could not have engaged in the violation because he was not assigned to the case in question when the alleged violation occurred. Further, he informed his supervisors that he had confirmed with the courtroom personnel who were assigned to the courtroom at the time that he, in fact, did not handle the case and thus should not be the individual being accused of misconduct. Still, he was threatened with possible ARDC charges. None of Mr. Hudson's Caucasian courtroom partners, even those assigned to the case during the relevant time period, were questioned about, investigated for, or accused of the violation.

In July 2017, Mr. Hudson was, again, transferred without explanation to the Deferred Prosecution unit. There, Mr. Hudson received no additional training and continued to experience hostility from co-workers and supervisors alike. His attempts to receive training and guidance were met with resistance and subjected him to accusations of being "difficult." Similarly situated white and female ASAs were not treated in a similar manner.

Mr. Hudson again requested to meet with Ms. Ballard-Croft. His request was granted and in October of 2017 he reported the increasing hostility since his move to the Narcotics Division, including: a Caucasian colleague calling him an "asshole"; a supervisor referring to an African American defendant as a "thug"; Caucasian colleagues referring to African American defendants as "mookies" and "pookies;" the patently false allegations that he had engaged in a Brady violation while the Caucasian attorneys assigned to the case were not similarly accused or investigated; and equally false accusations that he had contacted represented parties made by an ASA who had demonstrated racial bias in her conduct toward defendants. These reports were made directly to Ms. Ballard Croft and Deputy Chief of Staff Alyson Miller.

Mr. Hudson made it clear to Ms. Ballard Croft and Ms. Miller that he did not feel welcome at the SAO and that he felt this was, unfortunately, not unusual for an African American male. He noted, again, that there remained a lack of diversity at the office and pattern of African-American males being forced out of the office. In November 27, 2017, human resources confirmed that Mr. Hudson's Caucasian colleague had called him an "asshole," but declined to discipline her. HR immediately prepared termination documents for Mr. Hudson just three days later.

After his termination, Mr. Hudson was shocked to find that a performance improvement plan ("PIP"), dated November 8, 2017 had been placed in his file. No one had ever shown it to him during his employment. At no time during his employment had Mr. Hudson been notified that he was on a PIP nor was he given any reason for his abrupt termination. It is relevant that the PIP's date indicates it was created just over two weeks after Mr. Hudson met with human

3

resources to follow up on his October 6, 2017 report that his Caucasian colleague had called him an "asshole."

## Race Discrimination

There is compelling evidence that Mr. Hudson was discriminated against based on his race and sex. He was repeatedly accused of misconduct, threatened and disciplined, demoted and ultimately terminated based on accusations that, when leveled against his Caucasian colleagues, resulted in no action. For example:

- A charge of a Brady and/or ethical violation occurred in a case Mr. Hudson was not assigned to. ASO supervisors investigated, interrogated and threatened Mr. Hudson with ARDC charges simply for being assigned to the same courtroom where the case in question was pending. His Caucasian colleagues, who had actually been assigned to the case in question, were not questioned at all.

- When Mr. Hudson's colleagues accused him of being "aggressive" (a common stereotype of Black men), he was again interrogated, accused and investigated by supervisors.

- In contrast, when supervisors concluded that Caucasian colleagues made patently false allegations against Mr. Hudson, questioned his merit, and called him an "asshole," those employees were subject to no discipline or corrective action.

In addition to the clear disparity of treatment, examples of which are outlined above, the use of both directly offensive and racist language and comments are further evidence of the race discrimination that is prevalent throughout the ASA's Office. All of this, taken along with the fact that as of at least 2014, a meager 22 out of 822 staff attorneys at the SAO were African American males, exposes a pervasive culture of hostility towards African American and, in particular, African American male Assistant State's Attorneys.

## Retaliation under Title VII

Mr. Hudson did not keep his concerns about the SAO to himself. To the contrary, he met with those he felt could impact and change the culture for the better and aired his concerns about the lack of diversity in the office, comments from his Caucasian colleagues and supervisors, and the disturbing trend of African-American males being pushed out of their jobs in the office. As the timeline above demonstrates, the airing of those concerns led directly to an increasing and ongoing pattern of harassment, unfounded disciplinary actions and, ultimately, Mr. Hudson's termination. No action was taken to stop the retaliation, despite Mr. Hudson's complaints.

Section 2000e-3(a), Title VII of the Civil Rights Act, as amended, prohibits retaliation by an employer where an employee has opposed any unlawful employment practice. *Hunt-Golliday v. Metro. Water Reclamation Dist.*, 104 F.3d 1004, 1014 (7th Cir. 1997). Mr. Hudson need only demonstrate his sincere and reasonable belief that he is challenging conduct that violated the Act.

*Id.* Here, there is more than sufficient evidence that Mr. Hudson engaged in protected activity when he aired his concerns about the harassment he was experiencing, the lack of diversity in the SAO and the pattern of African American males being set up to fail and pushed out of the SAO to Ms. Ballard Croft.

There is a clear pattern of increasing harassment, unfounded accusations and discipline after each of Mr. Hudson's meetings with Ms. Ballard Croft. After each meeting, Mr. Hudson was repeatedly thrown into new positions without warning and provided no training. The accusations of misconduct leveled at him increased in seriousness, and his supervisors surreptitiously began creating a record of his alleged performance issues while providing him no opportunity to improve. This is the kind of conduct that has been found to be evidence of a causal connection between protected activity and retaliation in violation of Title VII. *Id* at 1014; See also *Tate v. Orthopaedics-Indianapolis*, 2014 U.S. Dist. Lexis 36050 (S.D. Ind.).

## Conclusion

Mr. Hudson has been unquestionably damaged by the State's Attorney's Office discrimination and retaliation against him, which includes but is not limited to loss of earnings, benefits, and ability to participate in student loan forgiveness. The harassment and retaliation to which he was subjected caused him significant anxiety and emotional distress, some of which has manifested physically.

Mr. Hudson requests the EEOC investigate his charge and/or process it as a complaint pursuant to GERA if the EEOC makes a finding that his position is exempt from Title VII protections.

# FILING SUIT IN COURT OF COMPETENT JURISDICTION

### PRIVATE SUIT RIGHTS

The issuance of this *Notice of Right to Sue* or *Dismissal and Notice of Rights* ends the EEOC process with respect to your Charge. You may file a lawsuit against the Respondent within 90 days from the date you receive this Notice. Therefore, you should keep a record of the date. Once the 90 day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf, your suit should be filed well in advance of the expiration of the 90 day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short Statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the Respondent has its main office.

You may contact the EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

**IF THE FIRST THREE CHARACTERS OF YOUR <u>EEOC CHARGE NUMBER</u> ARE "21B" <u>AND</u> YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE <u>MUST</u> BE DIRECTED TO IDHR.**

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment of the American with Disabilities Act or, probably, the Equal Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court.

A lawsuit under the Age Discrimination in Employment Act or the American with Disabilities Act or the Equal Pay Act against a political subdivision of a State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of the U.S. District Courts, please see the reverse side.

### ATTORNEY REPRESENTATION

If you cannot afford an attorney, or have been unable to obtain an attorney to represent you, the court having jurisdiction in your case may assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well in advance of the 90 day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within the 90-day period.

### DESTRUCTION OF FILE

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your Charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

**IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 869-8000
TTY: (312) 869-8001
ENFORCEMENT FAX: (312) 869-8220
STATE & LOCAL FAX: (312) 869-8077
LEGAL FAX: (312) 869-8124

FILE REVIEWS FAX: (312) 869-8220
MEDIATION: (312) 869-8060
HEARINGS FAX: (312) 869-8125

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to **Sylvia Bustos** and either mailed to the address above, faxed to **(312) 869-8220** or sent via email to sylvia.bustos@eeoc.gov (please chose only one method, no duplicate requests). *Be sure to include your name, address, phone number and EEOC charge number with your request*.

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

* Before filing a lawsuit, but within 90 days of your receipt of the Right to Sue, or

* After your lawsuit has been filed. If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the entire court complaint (with court stamped docket number) or enough pages to determine whether it was filed based on the EEOC charge.

If you are the *Respondent* you may be granted access to the file *only after* a lawsuit has been filed. Include with your request a copy of the entire court complaint that includes an official court stamped docket number.

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

You must sign an Agreement of Nondisclosure **before** you are granted access to the file, which will be sent to you after receipt of your written request. (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

The process for access to the file will begin no later than ten (10) days following receipt of your request.

When the file becomes available for review, you will be contacted. You may review the file in our offices and/or request that a copy of the file be sent to you. Files may not be removed from the office.

Your file will be copied by **Aloha Print Group, 60 East Van Buren, Suite 1502, Chicago, IL 60605, (312) 542-1300.** You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to the copy service. Therefore, **it is recommended that you first review your file** to determine what documents, if any, you want copied. EEOC will not review your file or provide a count of the pages contained in it. If you choose not to review your file, it will be sent **in its entirety** to the copy service, **and you will be responsible for the cost.** Payment must be made directly to Aloha Print Group, which charges 15 cents per page.

(Revised 04/20/2016, previous copies obsolete)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Brandon Hudson<br>534 E 45th Street<br>Chicago, IL 60653 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2018-05720 | Shuwn Hayes,<br>Investigator | (312) 869-8036 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman*                    9/28/18

Enclosures(s)

**Julianne Bowman,**
**District Director**                    (Date Mailed)

cc:   **COOK COUNTY**
**NILE N. MILLER**
**SUPERVISOR-LABOR AND EMPLOYMENT SECTION**
**CIVIL ACTIONS BUREAU**
**COOK COUNTY STATE'S ATTORNEY OFFICE**
**50 W. WASHINGTON, SUITE 500**
**CHICAGO, IL 60602**

**EXHIBIT**

**2**

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See Privacy Act Statement before completing this form. | EEOC ☒<br><br>IDHR ☐ | 440-2018-05720 |

## Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINT (indicate Mr. Ms. Mrs.)<br><br>**Brandon Hudson** | TELEPHONE NUMBER (include area code)<br>(630) 697-9306 |
|---|---|

RECEIVED EEOC
JUN 01 2018
CHICAGO DISTRICT OFFICE

| STREET ADDRESS<br>534 East 45th Street | CITY, STATE, ZIP CODE<br><br>Chicago, IL 60653 | DATE OF BIRTH<br>September 21, 1983 |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE, LIST BELOW)

| NAME OF RESPONDENT<br>Kim Foxx<br>The Cook County State's Attorney's Office<br>Cook County | NUMBER OF EMPLOYEES, MEMBERS<br>More than 500 employees | TELEPHONE NUMBER (include area code)<br>(312) 603-1880 |
|---|---|---|

| STREET ADDRESS<br><br>Cook County – 118 N. Clark Street | CITY, STATE, ZIP CODE<br>Chicago, IL 60602<br>Chicago, IL 60602<br>Chicago, IL 60602 | COUNTY<br><br>Cook |
|---|---|---|

| CAUSE OF DISCRIMINATION BASED ON:<br>Race discrimination in violation of Title VII of the 1964 Civil Rights Act, as amended, and the Illinois Human Rights Act, Retaliation in violation of Title VII and the Illinois Human Rights Act. Cook County, the ▓▓▓▓▓▓▓▓▓▓▓▓ and its agents, including ▓▓▓▓▓▓▓▓▓▓▓ have subjected me to unequal terms and conditions in my employment as an Assistant State's Attorney based on my race and sex, African American male. Respondents retaliated against me when I engaged in protected activity to oppose its discriminatory practices and policies, and ultimately terminated me. If the EEOC determines my position to be exempt from Title VII, I request this charge be processed as a complaint and pursuant to the Government Employee Rights Act of 1991 (GERA). No proceedings involving the alleged and unlawful employment practices herein have been commenced before a State or local FEP agency. | DATE OF DISCRIMINATION<br>EARLIEST (ADEA/EPA) LATEST (ALL)<br><br>Termination date: December 4, 2017<br><br>☒ CONTINUING ACTION<br><br>RECEIVED EEOC<br>JUN 01 2018<br>CHICAGO DISTRICT OFFICE |
|---|---|

### SEE ALSO THE ATTACHED DOCUMENTS

| I also want this charge filed with the IDHR. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>■ Yes | SUBSCRIBED AND SWORN TO BEFORE ME<br><br>THIS _____ DAY OF _____, 201_.<br><br>_____ |
|---|---|
| NOTARY STAMP | *Brandon Hudson*    6-1-18<br>**SIGNATURE OF COMPLAINANT    DATE**<br>I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that is true to the best of my knowledge, information and belief |

EEOC Charge/Complaint
*Hudson v. Foxx, et al.*

_____

**June 1, 2018**

**BY DELIVERY**                                          RECEIVED EEOC
Equal Employment Opportunities Commission
Chicago District Office                                  JUN. 0 4 2018
500 West Madison Street
Suite 2000                                               CHICAGO DISTRICT OFFICE
Chicago, Illinois 60661

    Re:   *Hudson v. Foxx, et al.*
           Discrimination and Retaliation Charge/Complaint

Please accept this initial position statement as support for and supplement to Complainant Brandon Hudson's EEOC Charge/Complaint, filed herewith. Mr. Hudson asks that in the event that the EEOC were to determine he was exempt from Title VII of the Civil Rights Act of 1964, as amended, the EEOC process this charge as a complaint and pursuant to the Government Employee Rights Act of 1991 (GERA).

### Factual Background

Respondent Cook County is a municipality organized under the laws of the State of Illinois. Respondent Cook County State's Attorney's Office ("SAO") is an independent agency within the County responsible for prosecuting crimes committed in the County. The office also represents the County in civil proceedings. Respondent Kim Foxx, was elected to lead the SAO and took office in December 1, 2016. At all times relevant to this complaint, Foxx was acting within the scope of her employment. She is named in her individual and official capacity.

Brandon Hudson began his employment as an Assistant State's Attorney with the SAO in June 2015. His first performance evaluation reflected that his work was satisfactory or exceptional in all areas. He performed his duties consistently in a manner that met or exceeded departmental expectations. He was a published ASA in the Appeals division during his first year, which is rare and demonstrates a high level of competence. This continued to be true, throughout Mr. Hudson's employment and despite being subjected to ongoing hostile and discriminatory conduct by supervisors and colleagues that caused him to suffer from anxiety and stress and derailed his professional career.

For example, when he was first hired as an ASA, one of Mr. Hudson's Caucasian colleagues questioned him about how he got a position with the office and informed him that it should have gone to someone else. That same individual later falsely accused Mr. Hudson of the unauthorized practice of law – an allegation his supervisors investigated and found to be false. Despite her false allegation, that Caucasian colleague remains with the ASA's Office today and was effectively promoted at the same time Mr. Hudson was being terminated. At the time of his hire, he was one of only two African American male ASAs in his unit.

1

Mr. Hudson was transferred from the Appellate to the Juvenile division in approximately July of 2016. He was the only African American male ASA in the division at the time of his transfer and for some time after. During his time in the Juvenile division, Mr. Hudson was chastised for no legitimate reason for requesting time off to care for his mother, and was subjected to a pattern of harassment at the hands of his direct supervisor who would openly berate, belittle, and question Mr. Hudson's every decision. Mr. Hudson, whose performance until then was unquestionably meeting or exceeding expectations, was abruptly served a Memorandum from his new supervisors that contained unfounded allegations that his performance required improvement. Mr. Hudson promptly submitted a response rebutting the unfounded allegations. Mr. Hudson was concerned because he noted that his Caucasian colleagues in the Juvenile division were not subjected to such intense and harsh critique and were instead provided guidance and support. For example, when a Caucasian mistakenly recommended deferred prosecution for a defendant who did not qualify for the program, SAO supervisors nonetheless supported the ASA, despite the mistake.

**Mr. Hudson's Protected Activity**

In January of 2017, as a result of the conduct described above, Mr. Hudson reached out to Jennifer Ballard Croft, the Cook County State's Attorney's Chief of Staff and Chief Diversity Officer. Mr. Hudson told Ms. Ballard Croft of the issues he was having with his supervisor, his colleague's statements and accusations, as well as his concern that there was a pronounced lack of diversity in the ASA's Office. In particular, Mr. Hudson noted the disturbing pattern of African American men being made to feel out of place, set up to fail, and pushed out of the job altogether. He also noted that his supervisors and colleagues often made comments about his physique or accused him of being "aggressive," something his Caucasian colleagues did not experience and which made him uncomfortable.

During the conversation with Ms. Ballard Croft, Mr. Hudson requested a transfer out of the Juvenile division. It seems the SAO conducted an investigation of Mr. Hudson's complaints though he was never advised of the findings. For the next month and a half, Mr. Hudson continued to follow up with Ms. Ballard Croft. During that time, the harassment Mr. Hudson was experiencing continued to increase, as did the resulting stress he felt. In March of 2017, Mr. Hudson began to receive treatment for stress-related back issues, which required him to leave work early from time to time. Mr. Hudson advised his supervisors and human resources of his need for medical leave and was, again, discouraged from exercising his right to the same. In fact, he was told by his supervisor that he should seek medical attention "on his own time." Caucasian ASAs who took time off for medical and other reasons were treated more favorably.

Finally, in May of 2017, after two in-person meetings and several follow up email and phone communications with Ms. Ballard Croft and human resources, Mr. Hudson was abruptly transferred to the Narcotics division, effective May 22, 2017. At the time of his transfer, Mr. Hudson was the only African American male ASA in the division.

2

EEOC Charge/Complaint
*Hudson v. Foxx, et al.*

**Narcotics Division**

It became very clear, very quickly that Mr. Hudson was not welcome in the Narcotics division. Most notably, SAO supervisors falsely accused him of unethical conduct and threatened him with possible ARDC charges for actions previously taken by a Caucasian ASA. Specifically, he was accused of unethical conduct that, according to supervisors, could constitute a Brady violation almost immediately after he arrived in the division. Mr. Hudson made it clear to his supervisors that he did not and could not have engaged in the violation because he was not assigned to the case in question when the alleged violation occurred. Further, he informed his supervisors that he had confirmed with the courtroom personnel who were assigned to the courtroom at the time that he, in fact, did not handle the case and thus should not be the individual being accused of misconduct. Still, he was threatened with possible ARDC charges. None of Mr. Hudson's Caucasian courtroom partners, even those assigned to the case during the relevant time period, were questioned about, investigated for, or accused of the violation.

In July 2017, Mr. Hudson was, again, transferred without explanation to the Deferred Prosecution unit. There, Mr. Hudson received no additional training and continued to experience hostility from co-workers and supervisors alike. His attempts to receive training and guidance were met with resistance and subjected him to accusations of being "difficult." Similarly situated white and female ASAs were not treated in a similar manner.

Mr. Hudson again requested to meet with Ms. Ballard-Croft. His request was granted and in October of 2017 he reported the increasing hostility since his move to the Narcotics Division, including: a Caucasian colleague calling him an "asshole"; a supervisor referring to an African American defendant as a "thug"; Caucasian colleagues referring to African American defendants as "mookies" and "pookies;" the patently false allegations that he had engaged in a Brady violation while the Caucasian attorneys assigned to the case were not similarly accused or investigated; and equally false accusations that he had contacted represented parties made by an ASA who had demonstrated racial bias in her conduct toward defendants. These reports were made directly to Ms. Ballard Croft and Deputy Chief of Staff Alyson Miller.

Mr. Hudson made it clear to Ms. Ballard Croft and Ms. Miller that he did not feel welcome at the SAO and that he felt this was, unfortunately, not unusual for an African American male. He noted, again, that there remained a lack of diversity at the office and pattern of African-American males being forced out of the office. In November 27, 2017, human resources confirmed that Mr. Hudson's Caucasian colleague had called him an "asshole," but declined to discipline her. HR immediately prepared termination documents for Mr. Hudson just three days later.

After his termination, Mr. Hudson was shocked to find that a performance improvement plan ("PIP"), dated November 8, 2017 had been placed in his file. No one had ever shown it to him during his employment. At no time during his employment had Mr. Hudson been notified that he was on a PIP nor was he given any reason for his abrupt termination. It is relevant that the PIP's date indicates it was created just over two weeks after Mr. Hudson met with human

3

resources to follow up on his October 6, 2017 report that his Caucasian colleague had called him an "asshole."

## Race Discrimination

There is compelling evidence that Mr. Hudson was discriminated against based on his race and sex. He was repeatedly accused of misconduct, threatened and disciplined, demoted and ultimately terminated based on accusations that, when leveled against his Caucasian colleagues, resulted in no action. For example:

- A charge of a Brady and/or ethical violation occurred in a case Mr. Hudson was not assigned to. ASO supervisors investigated, interrogated and threatened Mr. Hudson with ARDC charges simply for being assigned to the same courtroom where the case in question was pending. His Caucasian colleagues, who had actually been assigned to the case in question, were not questioned at all.

- When Mr. Hudson's colleagues accused him of being "aggressive" (a common stereotype of Black men), he was again interrogated, accused and investigated by supervisors.

- In contrast, when supervisors concluded that Caucasian colleagues made patently false allegations against Mr. Hudson, questioned his merit, and called him an "asshole," those employees were subject to no discipline or corrective action.

In addition to the clear disparity of treatment, examples of which are outlined above, the use of both directly offensive and racist language and comments are further evidence of the race discrimination that is prevalent throughout the ASA's Office. All of this, taken along with the fact that as of at least 2014, a meager 22 out of 822 staff attorneys at the SAO were African American males, exposes a pervasive culture of hostility towards African American and, in particular, African American male Assistant State's Attorneys.

## Retaliation under Title VII

Mr. Hudson did not keep his concerns about the SAO to himself. To the contrary, he met with those he felt could impact and change the culture for the better and aired his concerns about the lack of diversity in the office, comments from his Caucasian colleagues and supervisors, and the disturbing trend of African-American males being pushed out of their jobs in the office. As the timeline above demonstrates, the airing of those concerns led directly to an increasing and ongoing pattern of harassment, unfounded disciplinary actions and, ultimately, Mr. Hudson's termination. No action was taken to stop the retaliation, despite Mr. Hudson's complaints.

Section 2000e-3(a), Title VII of the Civil Rights Act, as amended, prohibits retaliation by an employer where an employee has opposed any unlawful employment practice. *Hunt-Golliday v. Metro. Water Reclamation Dist.*, 104 F.3d 1004, 1014 (7th Cir. 1997). Mr. Hudson need only demonstrate his sincere and reasonable belief that he is challenging conduct that violated the Act.

*Id.* Here, there is more than sufficient evidence that Mr. Hudson engaged in protected activity when he aired his concerns about the harassment he was experiencing, the lack of diversity in the SAO and the pattern of African American males being set up to fail and pushed out of the SAO to Ms. Ballard Croft.

There is a clear pattern of increasing harassment, unfounded accusations and discipline after each of Mr. Hudson's meetings with Ms. Ballard Croft. After each meeting, Mr. Hudson was repeatedly thrown into new positions without warning and provided no training. The accusations of misconduct leveled at him increased in seriousness, and his supervisors surreptitiously began creating a record of his alleged performance issues while providing him no opportunity to improve. This is the kind of conduct that has been found to be evidence of a causal connection between protected activity and retaliation in violation of Title VII. *Id* at 1014; See also *Tate v. Orthopaedics-Indianapolis*, 2014 U.S. Dist. Lexis 36050 (S.D. Ind.).

## Conclusion

Mr. Hudson has been unquestionably damaged by the State's Attorney's Office discrimination and retaliation against him, which includes but is not limited to loss of earnings, benefits, and ability to participate in student loan forgiveness. The harassment and retaliation to which he was subjected caused him significant anxiety and emotional distress, some of which has manifested physically.

Mr. Hudson requests the EEOC investigate his charge and/or process it as a complaint pursuant to GERA if the EEOC makes a finding that his position is exempt from Title VII protections.

# FILING SUIT IN COURT OF COMPETENT JURISDICTION

## PRIVATE SUIT RIGHTS

The issuance of this *Notice of Right to Sue* or *Dismissal and Notice of Rights* ends the EEOC process with respect to your Charge. You may file a lawsuit against the Respondent within 90 days from the date you receive this Notice. Therefore, you should keep a record of the date. Once the 90 day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf, your suit should be filed well in advance of the expiration of the 90 day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short Statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the Respondent has its main office.

You may contact the EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

**IF THE FIRST THREE CHARACTERS OF YOUR <u>EEOC CHARGE NUMBER</u> ARE "21B" <u>AND</u> YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE <u>MUST</u> BE DIRECTED TO IDHR.**

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment of the American with Disabilities Act or, probably, the Equal Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court.

A lawsuit under the Age Discrimination in Employment Act or the American with Disabilities Act or the Equal Pay Act against a political subdivision of a State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of the U.S. District Courts, please see the reverse side.

## ATTORNEY REPRESENTATION

If you cannot afford an attorney, or have been unable to obtain an attorney to represent you, the court having jurisdiction in your case may assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well in advance of the 90 day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within the 90-day period.

## DESTRUCTION OF FILE

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your Charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

**IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 869-8000
TTY: (312) 869-8001
ENFORCEMENT FAX: (312) 869-8220
STATE & LOCAL FAX: (312) 869-8077
LEGAL FAX: (312) 869-8124

FILE REVIEWS FAX: (312) 869-8220
MEDIATION: (312) 869-8060
HEARINGS FAX: (312) 869-8125

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to **Sylvia Bustos** and either mailed to the address above, faxed to **(312) 869-8220** or sent via email to sylvia.bustos@eeoc.gov (please chose only one method, no duplicate requests). _Be sure to include your name, address, phone number and EEOC charge number with your request_.

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

* Before filing a lawsuit, but within 90 days of your receipt of the Right to Sue, or

* After your lawsuit has been filed. If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the entire court complaint (with court stamped docket number) or enough pages to determine whether it was filed based on the EEOC charge.

If you are the _Respondent_ you may be granted access to the file _only after_ a lawsuit has been filed. Include with your request a copy of the entire court complaint that includes an official court stamped docket number.

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

You must sign an Agreement of Nondisclosure **before** you are granted access to the file, which will be sent to you after receipt of your written request. (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

The process for access to the file will begin no later than ten (10) days following receipt of your request.

When the file becomes available for review, you will be contacted. You may review the file in our offices and/or request that a copy of the file be sent to you. Files may not be removed from the office.

Your file will be copied by **Aloha Print Group, 60 East Van Buren, Suite 1502, Chicago, IL 60605, (312) 542-1300.** You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to the copy service. Therefore, **it is recommended that you first review your file** to determine what documents, if any, you want copied. EEOC will not review your file or provide a count of the pages contained in it. If you choose not to review your file, it will be sent **in its entirety** to the copy service, **and you will be responsible for the cost**. Payment must be made directly to Aloha Print Group, which charges 15 cents per page.

(Revised 04/20/2016, previous copies obsolete)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Brandon Hudson<br>534 E 45th Street<br>Chicago, IL 60653 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2018-05720 | Shuwn Hayes,<br>Investigator | (312) 869-8036 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman*                    9/28/18

Enclosures(s)

**Julianne Bowman,**
**District Director**                    *(Date Mailed)*

cc:
**COOK COUNTY**
**NILE N. MILLER**
**SUPERVISOR-LABOR AND EMPLOYMENT SECTION**
**CIVIL ACTIONS BUREAU**
**COOK COUNTY STATE'S ATTORNEY OFFICE**
**50 W. WASHINGTON, SUITE 500**
**CHICAGO, IL 60602**

**EXHIBIT**

3

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See Privacy Act Statement before completing this form. | EEOC ☒<br>IDHR ☐ | 440-2018-05720 |

## Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINT (Indicate Mr. Ms. Mrs.)<br><br>Brandon Hudson | | TELEPHONE NUMBER (include area code)<br>(630) 697-9306 |
|---|---|---|

RECEIVED EEOC
JUN 01 2018
CHICAGO DISTRICT OFFICE

| STREET ADDRESS<br>534 East 45th Street | CITY, STATE, ZIP CODE<br>Chicago, IL 60653 | DATE OF BIRTH<br>September 21, 1983 |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE, LIST BELOW)

| NAME OF RESPONDENT<br>Kim Foxx<br>The Cook County State's Attorney's Office<br>Cook County | NUMBER OF EMPLOYEES, MEMBERS<br>More than 500 employees | TELEPHONE NUMBER (include area code)<br>(312) 603-1880 |
|---|---|---|

| STREET ADDRESS<br><br>Cook County State's Attorney by W. Washington<br>Cook County – 118 N. Clark Street | CITY, STATE, ZIP CODE<br>Chicago, IL 60602<br>Chicago, IL 60602<br>Chicago, IL 60602 | COUNTY<br><br>Cook |
|---|---|---|

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION |
|---|---|
| Race discrimination in violation of Title VII of the 1964 Civil Rights Act, as amended, and the Illinois Human Rights Act, Retaliation in violation of Title VII and the Illinois Human Rights Act. Cook County, the ████████████████████ and its agents, including ████████████████ have subjected me to unequal terms and conditions in my employment as an Assistant State's Attorney based on my race and sex, African American male. Respondents retaliated against me when I engaged in protected activity to oppose its discriminatory practices and policies, and ultimately terminated me. If the EEOC determines my position to be exempt from Title VII, I request this charge be processed as a complaint and pursuant to the Government Employee Rights Act of 1991 (GERA). No proceedings involving the alleged and unlawful employment practices herein have been commenced before a State or local FEP agency. | EARLIEST (ADEA/EPA) LATEST (ALL)<br><br>Termination date: December 4, 2017<br><br>☒ CONTINUING ACTION<br><br>RECEIVED EEOC<br>JUN 01 2018<br>CHICAGO DISTRICT OFFICE |

## SEE ALSO THE ATTACHED DOCUMENTS

| I also want this charge filed with the IDHR. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>■ Yes | SUBSCRIBED AND SWORN TO BEFORE ME<br><br>THIS _____ DAY OF _____, 201_. |
|---|---|
| NOTARY STAMP | _Brandon Hudson_    6-1-18<br>SIGNATURE OF COMPLAINANT    DATE<br>I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that is true to the best of my knowledge, information and belief |

June 1, 2018

**BY DELIVERY**
Equal Employment Opportunities Commission
Chicago District Office
500 West Madison Street
Suite 2000
Chicago, Illinois 60661

RECEIVED EEOC

JUN 0 4 2018

CHICAGO DISTRICT OFFICE

Re:    *Hudson v. Foxx, et al.*
          Discrimination and Retaliation Charge/Complaint

Please accept this initial position statement as support for and supplement to Complainant Brandon Hudson's EEOC Charge/Complaint, filed herewith. Mr. Hudson asks that in the event that the EEOC were to determine he was exempt from Title VII of the Civil Rights Act of 1964, as amended, the EEOC process this charge as a complaint and pursuant to the Government Employee Rights Act of 1991 (GERA).

### Factual Background

Respondent Cook County is a municipality organized under the laws of the State of Illinois. Respondent Cook County State's Attorney's Office ("SAO") is an independent agency within the County responsible for prosecuting crimes committed in the County. The office also represents the County in civil proceedings. Respondent Kim Foxx, was elected to lead the SAO and took office in December 1, 2016. At all times relevant to this complaint, Foxx was acting within the scope of her employment. She is named in her individual and official capacity.

Brandon Hudson began his employment as an Assistant State's Attorney with the SAO in June 2015. His first performance evaluation reflected that his work was satisfactory or exceptional in all areas. He performed his duties consistently in a manner that met or exceeded departmental expectations. He was a published ASA in the Appeals division during his first year, which is rare and demonstrates a high level of competence. This continued to be true, throughout Mr. Hudson's employment and despite being subjected to ongoing hostile and discriminatory conduct by supervisors and colleagues that caused him to suffer from anxiety and stress and derailed his professional career.

For example, when he was first hired as an ASA, one of Mr. Hudson's Caucasian colleagues questioned him about how he got a position with the office and informed him that it should have gone to someone else. That same individual later falsely accused Mr. Hudson of the unauthorized practice of law – an allegation his supervisors investigated and found to be false. Despite her false allegation, that Caucasian colleague remains with the ASA's Office today and was effectively promoted at the same time Mr. Hudson was being terminated. At the time of his hire, he was one of only two African American male ASAs in his unit.

Mr. Hudson was transferred from the Appellate to the Juvenile division in approximately July of 2016. He was the only African American male ASA in the division at the time of his transfer and for some time after. During his time in the Juvenile division, Mr. Hudson was chastised for no legitimate reason for requesting time off to care for his mother, and was subjected to a pattern of harassment at the hands of his direct supervisor who would openly berate, belittle, and question Mr. Hudson's every decision. Mr. Hudson, whose performance until then was unquestionably meeting or exceeding expectations, was abruptly served a Memorandum from his new supervisors that contained unfounded allegations that his performance required improvement. Mr. Hudson promptly submitted a response rebutting the unfounded allegations. Mr. Hudson was concerned because he noted that his Caucasian colleagues in the Juvenile division were not subjected to such intense and harsh critique and were instead provided guidance and support. For example, when a Caucasian mistakenly recommended deferred prosecution for a defendant who did not qualify for the program, SAO supervisors nonetheless supported the ASA, despite the mistake.

**Mr. Hudson's Protected Activity**

In January of 2017, as a result of the conduct described above, Mr. Hudson reached out to Jennifer Ballard Croft, the Cook County State's Attorney's Chief of Staff and Chief Diversity Officer. Mr. Hudson told Ms. Ballard Croft of the issues he was having with his supervisor, his colleague's statements and accusations, as well as his concern that there was a pronounced lack of diversity in the ASA's Office. In particular, Mr. Hudson noted the disturbing pattern of African American men being made to feel out of place, set up to fail, and pushed out of the job altogether. He also noted that his supervisors and colleagues often made comments about his physique or accused him of being "aggressive," something his Caucasian colleagues did not experience and which made him uncomfortable.

During the conversation with Ms. Ballard Croft, Mr. Hudson requested a transfer out of the Juvenile division. It seems the SAO conducted an investigation of Mr. Hudson's complaints though he was never advised of the findings. For the next month and a half, Mr. Hudson continued to follow up with Ms. Ballard Croft. During that time, the harassment Mr. Hudson was experiencing continued to increase, as did the resulting stress he felt. In March of 2017, Mr. Hudson began to receive treatment for stress-related back issues, which required him to leave work early from time to time. Mr. Hudson advised his supervisors and human resources of his need for medical leave and was, again, discouraged from exercising his right to the same. In fact, he was told by his supervisor that he should seek medical attention "on his own time." Caucasian ASAs who took time off for medical and other reasons were treated more favorably.

Finally, in May of 2017, after two in-person meetings and several follow up email and phone communications with Ms. Ballard Croft and human resources, Mr. Hudson was abruptly transferred to the Narcotics division, effective May 22, 2017. At the time of his transfer, Mr. Hudson was the only African American male ASA in the division.

EEOC Charge/Complaint
*Hudson v. Foxx, et al.*

**Narcotics Division**

It became very clear, very quickly that Mr. Hudson was not welcome in the Narcotics division. Most notably, SAO supervisors falsely accused him of unethical conduct and threatened him with possible ARDC charges for actions previously taken by a Caucasian ASA. Specifically, he was accused of unethical conduct that, according to supervisors, could constitute a Brady violation almost immediately after he arrived in the division. Mr. Hudson made it clear to his supervisors that he did not and could not have engaged in the violation because he was not assigned to the case in question when the alleged violation occurred. Further, he informed his supervisors that he had confirmed with the courtroom personnel who were assigned to the courtroom at the time that he, in fact, did not handle the case and thus should not be the individual being accused of misconduct. Still, he was threatened with possible ARDC charges. None of Mr. Hudson's Caucasian courtroom partners, even those assigned to the case during the relevant time period, were questioned about, investigated for, or accused of the violation.

In July 2017, Mr. Hudson was, again, transferred without explanation to the Deferred Prosecution unit. There, Mr. Hudson received no additional training and continued to experience hostility from co-workers and supervisors alike. His attempts to receive training and guidance were met with resistance and subjected him to accusations of being "difficult." Similarly situated white and female ASAs were not treated in a similar manner.

Mr. Hudson again requested to meet with Ms. Ballard-Croft. His request was granted and in October of 2017 he reported the increasing hostility since his move to the Narcotics Division, including: a Caucasian colleague calling him an "asshole"; a supervisor referring to an African American defendant as a "thug"; Caucasian colleagues referring to African American defendants as "mookies" and "pookies;" the patently false allegations that he had engaged in a Brady violation while the Caucasian attorneys assigned to the case were not similarly accused or investigated; and equally false accusations that he had contacted represented parties made by an ASA who had demonstrated racial bias in her conduct toward defendants. These reports were made directly to Ms. Ballard Croft and Deputy Chief of Staff Alyson Miller.

Mr. Hudson made it clear to Ms. Ballard Croft and Ms. Miller that he did not feel welcome at the SAO and that he felt this was, unfortunately, not unusual for an African American male. He noted, again, that there remained a lack of diversity at the office and pattern of African-American males being forced out of the office. In November 27, 2017, human resources confirmed that Mr. Hudson's Caucasian colleague had called him an "asshole," but declined to discipline her. HR immediately prepared termination documents for Mr. Hudson just three days later.

After his termination, Mr. Hudson was shocked to find that a performance improvement plan ("PIP"), dated November 8, 2017 had been placed in his file. No one had ever shown it to him during his employment. At no time during his employment had Mr. Hudson been notified that he was on a PIP nor was he given any reason for his abrupt termination. It is relevant that the PIP's date indicates it was created just over two weeks after Mr. Hudson met with human

resources to follow up on his October 6, 2017 report that his Caucasian colleague had called him an "asshole."

## Race Discrimination

There is compelling evidence that Mr. Hudson was discriminated against based on his race and sex. He was repeatedly accused of misconduct, threatened and disciplined, demoted and ultimately terminated based on accusations that, when leveled against his Caucasian colleagues, resulted in no action. For example:

- A charge of a Brady and/or ethical violation occurred in a case Mr. Hudson was not assigned to. ASO supervisors investigated, interrogated and threatened Mr. Hudson with ARDC charges simply for being assigned to the same courtroom where the case in question was pending. His Caucasian colleagues, who had actually been assigned to the case in question, were not questioned at all.

- When Mr. Hudson's colleagues accused him of being "aggressive" (a common stereotype of Black men), he was again interrogated, accused and investigated by supervisors.

- In contrast, when supervisors concluded that Caucasian colleagues made patently false allegations against Mr. Hudson, questioned his merit, and called him an "asshole," those employees were subject to no discipline or corrective action.

In addition to the clear disparity of treatment, examples of which are outlined above, the use of both directly offensive and racist language and comments are further evidence of the race discrimination that is prevalent throughout the ASA's Office. All of this, taken along with the fact that as of at least 2014, a meager 22 out of 822 staff attorneys at the SAO were African American males, exposes a pervasive culture of hostility towards African American and, in particular, African American male Assistant State's Attorneys.

## Retaliation under Title VII

Mr. Hudson did not keep his concerns about the SAO to himself. To the contrary, he met with those he felt could impact and change the culture for the better and aired his concerns about the lack of diversity in the office, comments from his Caucasian colleagues and supervisors, and the disturbing trend of African-American males being pushed out of their jobs in the office. As the timeline above demonstrates, the airing of those concerns led directly to an increasing and ongoing pattern of harassment, unfounded disciplinary actions and, ultimately, Mr. Hudson's termination. No action was taken to stop the retaliation, despite Mr. Hudson's complaints.

Section 2000e-3(a), Title VII of the Civil Rights Act, as amended, prohibits retaliation by an employer where an employee has opposed any unlawful employment practice. *Hunt-Golliday v. Metro. Water Reclamation Dist.*, 104 F.3d 1004, 1014 (7th Cir. 1997). Mr. Hudson need only demonstrate his sincere and reasonable belief that he is challenging conduct that violated the Act.

4

*Id.* Here, there is more than sufficient evidence that Mr. Hudson engaged in protected activity when he aired his concerns about the harassment he was experiencing, the lack of diversity in the SAO and the pattern of African American males being set up to fail and pushed out of the SAO to Ms. Ballard Croft.

There is a clear pattern of increasing harassment, unfounded accusations and discipline after each of Mr. Hudson's meetings with Ms. Ballard Croft. After each meeting, Mr. Hudson was repeatedly thrown into new positions without warning and provided no training. The accusations of misconduct leveled at him increased in seriousness, and his supervisors surreptitiously began creating a record of his alleged performance issues while providing him no opportunity to improve. This is the kind of conduct that has been found to be evidence of a causal connection between protected activity and retaliation in violation of Title VII. *Id* at 1014; See also *Tate v. Orthopaedics-Indianapolis*, 2014 U.S. Dist. Lexis 36050 (S.D. Ind.).

## Conclusion

Mr. Hudson has been unquestionably damaged by the State's Attorney's Office discrimination and retaliation against him, which includes but is not limited to loss of earnings, benefits, and ability to participate in student loan forgiveness. The harassment and retaliation to which he was subjected caused him significant anxiety and emotional distress, some of which has manifested physically.

Mr. Hudson requests the EEOC investigate his charge and/or process it as a complaint pursuant to GERA if the EEOC makes a finding that his position is exempt from Title VII protections.

# FILING SUIT IN COURT OF COMPETENT JURISDICTION

### PRIVATE SUIT RIGHTS

The issuance of this *Notice of Right to Sue* or *Dismissal and Notice of Rights* ends the EEOC process with respect to your Charge. You may file a lawsuit against the Respondent within 90 days from the date you receive this Notice. Therefore, you should keep a record of the date. Once the 90 day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf; your suit should be filed well in advance of the expiration of the 90 day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short Statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the Respondent has its main office.

You may contact the EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

**IF THE FIRST THREE CHARACTERS OF YOUR <u>EEOC CHARGE NUMBER</u> ARE "21B" <u>AND</u> YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE <u>MUST</u> BE DIRECTED TO IDHR.**

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment of the American with Disabilities Act or, probably, the Equal Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court.

A lawsuit under the Age Discrimination in Employment Act or the American with Disabilities Act or the Equal Pay Act against a political subdivision of a State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of the U.S. District Courts, please see the reverse side.

### ATTORNEY REPRESENTATION

If you cannot afford an attorney, or have been unable to obtain an attorney to represent you, the court having jurisdiction in your case may assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well in advance of the 90 day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within the 90-day period.

### DESTRUCTION OF FILE

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your Charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

**IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Chicago District Office

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 869-8000
TTY: (312) 869-8001
ENFORCEMENT FAX: (312) 869-8220
STATE & LOCAL FAX: (312) 869-8077
LEGAL FAX: (312) 869-8124

FILE REVIEWS FAX: (312) 869-8220
MEDIATION: (312) 869-8060
HEARINGS FAX: (312) 869-8125

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to **Sylvia Bustos** and either mailed to the address above, faxed to **(312) 869-8220** or sent via email to sylvia.bustos@eeoc.gov (please chose only one method, no duplicate requests). *Be sure to include your name, address, phone number and EEOC charge number with your request*.

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

* Before filing a lawsuit, but within 90 days of your receipt of the Right to Sue, or

* After your lawsuit has been filed. If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the entire court complaint (with court stamped docket number) or enough pages to determine whether it was filed based on the EEOC charge.

If you are the *Respondent* you may be granted access to the file *only after* a lawsuit has been filed. Include with your request a copy of the entire court complaint that includes an official court stamped docket number.

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

You must sign an Agreement of Nondisclosure before you are granted access to the file, which will be sent to you after receipt of your written request. (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

The process for access to the file will begin no later than ten (10) days following receipt of your request.

When the file becomes available for review, you will be contacted. You may review the file in our offices and/or request that a copy of the file be sent to you. Files may not be removed from the office.

Your file will be copied by Aloha Print Group, 60 East Van Buren, Suite 1502, Chicago, IL 60605, (312) 542-1300. You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to the copy service. Therefore, **it is recommended that you first review your file** to determine what documents, if any, you want copied. EEOC will not review your file or provide a count of the pages contained in it. If you choose not to review your file, it will be sent **in its entirety** to the copy service, **and you will be responsible for the cost**. Payment must be made directly to Aloha Print Group, which charges 15 cents per page.

(Revised 04/20/2016, previous copies obsolete)



**OFFICE OF THE STATE'S ATTORNEY**
COOK COUNTY, ILLINOIS

**KIMBERLY M. FOXX**
STATE'S ATTORNEY

6 9 W. WASHINGTON, SUITE 3200
CHICAGO, ILLINOIS 60602
PHONE (312) 603-1880
FAX (312) 603-9693

November 27, 2017

To:    ASA ████████████
       26th St. ████████████

From:  Kathy Wallace
       Human Resources

On October 6, 2017, you made a claim of work place harassment against ASA Sara Kaufman. Specifically you alleged that in a discussion with ASA Kaufman regarding a September 29, 2017 email exchange, she described your email response as ████████ and stated that you were being ████████. As we discussed, the Cook County State's Attorney's Office ("CCSAO") takes such allegations very seriously and will not tolerate in appropriate behavior in the workplace. Employees are encouraged to bring such matters to our attention at any time, without fear of any adverse action being taken against them for doing so.

In my capacity as Director of Human Resources, I have interviewed all of the employees involved and /or identified as having knowledge of the alleged conduct, including you and ASA Kaufman. The investigation is now complete. Although we have determined that the complained of conduct does constitute unlawful workplace harassment by ASA Kaufman, it does appear that the use of profanity by ASA Kaufman falls short of the CCSAO's expectation that employees conduct themselves at all times in a professional, courteous and business-like manner.

Although privacy considerations limit our ability to share confidential information with you about other employees, I can tell you that appropriate action has been taken to ensure that such conduct does not repeat itself. Should you experience any further problems, please feel free to let me know. Any future conduct, including any retaliation, will be dealt with swiftly and severely as the circumstances dictate.

Please do not hesitate to ask questions or speak up about matters that concern you. If you feel any form of retaliation occurs, report it immediately so that it can be addressed quickly.

**EXHIBIT**

4

Thank you for bringing the matter to my attention.

cc: file



**OFFICE OF THE STATE'S ATTORNEY**
COOK COUNTY, ILLINOIS

**KIMBERLY M. FOXX**
STATE'S ATTORNEY

6 9 W. WASHINGTON, SUITE 3200
CHICAGO, ILLINOIS 60602
PHONE (312) 603-1880
FAX (312) 603-9693

November 27, 2017

To:  ASA ███████
     26th St. ████████████

From: Kathy Wallace
      Human Resources

On October 6, 2017, you made a claim of work place harassment against ASA Sara Kaufman. Specifically you alleged that in a discussion with ASA Kaufman regarding a September 29, 2017 email exchange, she described your email response as ████████ and stated that you were being ████████. As we discussed, the Cook County State's Attorney's Office ("CCSAO") takes such allegations very seriously and will not tolerate in appropriate behavior in the workplace. Employees are encouraged to bring such matters to our attention at any time, without fear of any adverse action being taken against them for doing so.

In my capacity as Director of Human Resources, I have interviewed all of the employees involved and /or identified as having knowledge of the alleged conduct, including you and ASA Kaufman. The investigation is now complete. Although we have determined that the complained of conduct does constitute unlawful workplace harassment by ASA Kaufman, it does appear that the use of profanity by ASA Kaufman falls short of the CCSAO's expectation that employees conduct themselves at all times in a professional, courteous and business-like manner.

Although privacy considerations limit our ability to share confidential information with you about other employees, I can tell you that appropriate action has been taken to ensure that such conduct does not repeat itself. Should you experience any further problems, please feel free to let me know. Any future conduct, including any retaliation, will be dealt with swiftly and severely as the circumstances dictate.

Please do not hesitate to ask questions or speak up about matters that concern you. If you feel any form of retaliation occurs, report it immediately so that it can be addressed quickly.

Thank you for bringing the matter to my attention.

cc: file



# OFFICE OF THE STATE'S ATTORNEY
### COOK COUNTY, ILLINOIS

**KIMBERLY M. FOXX**
State's Attorney

JENNIFER BALLARD CROFT
Chief of Staff
69 W. Washington – Suite 3200
Chicago, IL 60602
312/603-1880

December 4, 2017



Dear ▉▉▉▉▉:

Effective March 4, 2017, your employment with the Cook County State's Attorney's Office is terminated.

All office materials (keys, ID's, etc.) must be returned to Human Resources. Your last check will be mailed to you, if you are not currently using direct deposit. Please verify with Human Resources that we have your correct address. You must make arrangements to pick up all personal belongings.

Sincerely,

*Kathy Wallace*

Kathy Wallace
Director of Human Resources

**EXHIBIT**

5

exhibitsticker.com

 **Brandon Hudson <bhudson205@gmail.com>**

## Your Contingent Offer Letter – Allstate Insurance Company

**Lisa Vinyard** <system@successfactors.com>           Tue, Oct 31, 2017 at 4:22 PM
Reply-To: Lisa Vinyard <LVINE@allstate.com>
To: Brandon Hudson <bhudson205@gmail.com>

10/31/2017

Brandon Hudson
534 East 45th, Street
Chicago, Illinois, 60653

Dear Brandon,

Congratulations! It is my pleasure to confirm your contingent offer for a full-time position with Allstate. Our success depends on selecting the very best people and we believe you possess the necessary talent to help us achieve our business goals and shape the future of our company.

As I mentioned during our call, this offer is contingent upon our satisfaction with your drug screen and background results.

Your contingent offer details are as follows:

**Job Title:** Trial Attorney - Chicago, IL
**Department:** Litigation Services
**Anticipated Start Date:** We anticipate your start date to be 11/20/2017.
**Annual Salary:** $85,000.00 *(paid on a bi-weekly basis)*

Allstate provides a Comprehensive Benefit Program which can be viewed at www.allstategoodlife.com. In addition to our benefits Allstate provides a Paid Time Off (PTO) Bank. The PTO Bank can be used for vacation, personal days, family illness and illness days not covered by the Short Term Disability (STD) plan. In addition to PTO days, you will receive company holidays and miscellaneous time off (funeral, jury duty, etc.).

We are excited about the possibility of you joining us. We look forward to your decision by 11/03/2017. If I can be of any further assistance, please don't hesitate to contact me.

Best regards,

Lisa Vinyard

HR Talent Acquisition
Allstate Insurance Company

**EXHIBIT**

**6**

exhibitsticker.com