**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION**

| | | |
|---|---|---|
| BRANDON HUDSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 18-cv-08243 |
| | ) | |
| v. | ) | Judge Andrea R. Wood |
| | ) | |
| KIMBERLY M. FOXX, COOK COUNTY | ) | |
| STATE'S ATTORNEY'S OFFICE, and | ) | |
| COOK COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
RULE 12(b)(6) MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

PERTINENT FACTS ALLEGED IN THE COMPLAINT ........................................................ 2

    A.    Plaintiff's Initial Assignment to Criminal Appeals from 2015-2016. ................... 2

    B.    Plaintiff's Work in the Juvenile Justice Unit from 2016 to July 2017, and His Complaints. ........................................................................................................ 3

    C.    Plaintiff's Work in the Narcotics Prosecution Bureau from May 22, 2017 to his December 4, 2017 Termination, and his Complaints. .................................. 5

    D.    All Three Counts of the Complaint Are Brought Under Title VII. ....................... 7

STANDARD FOR A MOTION TO DISMISS PURSUANT TO RULE 12(b)6 ........................ 7

ARGUMENT ...................................................................................................................... 8

I.    Plaintiff's Entire Complaint Must be Dismissed Because He is not an "Employee" Within the Purview of Title VII. ....................................................................... 8

II.    Counts I and II Must Be Dismissed Because Plaintiff Fails to Sufficiently Allege a Hostile Work Environment Under Title VII. ............................................... 12

    A.    None of the alleged conduct regarding a "hostile work environment" was based on Plaintiff's race or gender. ................................................................. 12

    B.    The alleged "hostile" conduct does not meet the pleading standard for a hostile work environment claim. ..................................................................... 14

III.    Plaintiff Fails to Plead Retaliation Because He Cannot Properly Allege That He Engaged In "Protected Activity." .................................................................... 16

    A.    Plaintiff's alleged complaints during or about his time in the Appellate and Juvenile Justice Division are time-barred. ............................................... 17

    B.    Plaintiff's complaints were not protected activity. ............................................. 18

    C.    Apart from his termination, none of the alleged "retaliation" constitutes adverse employment actions. ........................................................................... 20

CONCLUSION ................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Faragher v. City of Boca Raton*,
524 U.S. 775 .................................................................................................................18

*188 LLC v. Trinity Indus., Inc.*,
300 F.3d 730 (7th Cir. 2002) ..........................................................................................3

*A'Ku v. Motorola, Inc.*,
1999 U.S. App. LEXIS 26543 (7th Cir. 1999) ...............................................................17

*Alamo v. Bliss*,
864 F.3d 541 (7th Cir. 2017) .........................................................................................15

*Alexander v. Casino Queen, Inc.*,
739 F. 3d 972 (7th Cir. 2014) ........................................................................................14

*Americanos v. Carter*,
74 F.3d 138 (7th Cir. 1996) ...........................................................................1, 9, 10, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................7, 8

*Barnett v. Certified Grocers Midwest*,
1997 U.S. Dist. LEXIS 11489 (N.D. Ill.) ......................................................................20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................7

*Bell v. Lane*,
657 F.Supp. 815 (N.D. Ill. 1987) ..................................................................................20

*Blickle v. Ill. Dep't of Children & Family Servs.*,
2013 U.S. Dist. LEXIS 80014 (N.D. Ill.) ................................................................14, 15

*Boss v. Julian Castro*,
816 F.3d 910 (7th Cir. 2016) .........................................................................................21

*Branti v. Finkel*,
445 U.S. 507 (1980)...........................................................................................................9

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) ...........................................................................................8

*Burton v. Bd of Regents of the University of Wisconsin System*,
    851 F.3d 690 (7th Cir. 2017) ................................................21

*Cole v. Illinois*,
    562 F.3d 812 (7th Cir. 2009) ................................................22

*Cooper-Schut v. Visteon Auto. Sys.*,
    361 F.3d 421 (7th Cir. 2004) .........................................13, 14

*Dear v. Shinseki*,
    578 F.3d 605 (7th Cir. 2009) ................................................20

*EEOC v. Concentra Health Servs.*,
    496 F.3d 773 (7th Cir. 2007) .........................................16, 17

*Elrod v. Burns*,
    427 U.S. 347 (1976).............................................................9

*Ford v. Minteq Shapes & Servs., Inc.*,
    587 F.3d 845 (7th Cir. 2009) ................................................15

*Garza v. Ill. Inst. of Tech.*,
    2018 U.S. Dist. LEXIS 18 (N.D. Ill.) ..................................19

*Geraty v. Vill. Of Antioch*,
    2015 U.S. Dist. LEXIS 1785 (N.D. Ill. 2015) .....................12

*Heck v. City of Freeport*,
    985 F.2d 305 (7th Cir. 1993) ...........................................9, 10

*Huri v. Office of the Chief Judge of the Circuit Court of Cook County*,
    804 F.3d 826 (7th Cir. 2015) ................................................15

*Langenbach v. Wal-Mart Stores, Inc.*,
    761 F.3d 792 (7th Cir. 2014) ................................................22

*Livas v. Petka*,
    711 F.2d 798 (7th Cir. 1983) ................................................11

*Lloyd v. Swifty Transp., Inc.*,
    552 F.3d 594 (7th Cir. 2009) ................................................21

*Madlock v. WEC Energy Grp., Inc.*,
    885 F.3d 465 (7th Cir. 2018) ................................................21

*McCauley v. City of Chicago*,
    671 F.3d 611 (7th Cir. 2011) ..................................................8

*McCullah v. Gadert,*
   344 F.3d 655 (7th Cir. 2003) ....................................................................................7

*McGrath v. Gillis,*
   44 F.3d 567 (7th Cir. 1995) ....................................................................................11

*Meritor Sav. Bank, FSB v. Vinson,*
   477 U.S. 57 ..............................................................................................................18

*Metzger v. Ill. State Police,*
   519 F.3d 677 (7th Cir. 2008) ..................................................................................16

*N. Ind. Gun & Outdoor Shows v. City of South Bend,*
   163 F.3d 449 (7th Cir. 1998) ..................................................................................20

*Oncale v. Sundowner Offshore Services, Inc.,*
   523 U.S. 75 (1998) ..................................................................................................18

*Opp v. Office of the State's Atty.,*
   630 F.3d 616 (7th Cir. 2010) ............................................................1, 9, 10, 11, 12

*Phillipson v. Kelly,*
   2017 U.S. Dist. LEXIS 42753 (N.D. Ill 2017) ......................................................15

*Smith v. Ne. Ill. Univ.,*
   388 F.3d 559 (7th Cir. 2004) ..................................................................................14

*Strong v. Del. County,*
   976 F. Supp. 2d 1038 (S.D. Ind. 2013) ..................................................................12

*Swanson v. Citibank, N.A.,*
   614 F.3d 400 (7th Cir. 2010) ....................................................................................8

*Tomanovich v. City of Indianapolis,*
   457 F.3d 656 (7th Cir. 2006) ..................................................................................20

*Tomczak v. City of Chicago,*
   765 F.2d 633 (7th Cir. 1985) ....................................................................................9

*W. Bend Mut. Ins. Co. v. Schumacher,*
   844 F.3d 670 (7th Cir. 2016) ....................................................................................8

*Whittaker v. N. Ill. Univ.,*
   424 F3d 640 (7th Cir. 2005) ..................................................................................21

*Winters v. Hamos,*
   2018 U.S. Dist. LEXIS 119685 at *11 (N.D. Ill. 201 ......................................15, 16

**Other Authorities**

29 C.F.R. 1603.100 *et seq.*..........................................................................................................12

55 ILCS 5/4-2003(a) ...............................................................................................................11, 12

42 U.S.C. 2000e-16a to 2000e-16c ................................................................................................12

42 U.S.C. 2000e(f) ..........................................................................................................................8

42 U.S.C. § 2000e-5(e)(1)..............................................................................................................17

EEOC Enforcement Guidance on Retaliation and Related Issues.................................................16

Fed. R. Civ. P. 12(b)(6)....................................................................................................................7

Plaintiff Brandon Hudson ("Plaintiff") is a former Assistant State's Attorney in the Cook County State's Attorney's Office ("CCSAO"). Plaintiff has brought a three-count complaint against the CCSAO, alleging that his former employer violated Title VII of the Civil Rights Act of 1964, 42. USC § 2000e *et seq.* ("Title VII") (Cplt. ¶¶ 79-111, Dkt. 1). Under the well-settled law of this Circuit, however, Plaintiff cannot pursue any claims under Title VII because he does not qualify as an "employee" under that statute. In *Opp v. Office of the State's Atty.*, 630 F.3d 616, 619 (7th Cir. 2010), the Seventh Circuit held that "*all Assistant State's Attorneys are appointees on the policymaking level* and therefore are not within the coverage of the ADEA." (Emphasis added). That decision was based on a prior Seventh Circuit ruling in *Americanos v. Carter*, 74 F.3d 138, 143-44 (7th Cir. 1996) that an Indiana deputy attorney general could not bring Title VII or ADEA actions against his employer because both statutes "exempt certain public officials from their protections" and the employee fell within the "appointee" exemption. In each case, the Seventh Circuit upheld the trial court's dismissal because the plaintiffs did not qualify as an "employee" within the purview of the relevant statute. Based on these decisions, this case also must be dismissed, with prejudice.

The Court can end its analysis there. Nonetheless, there are additional reasons why each of the three counts of the Complaint also must be dismissed. *First,* there is not a single allegation in the Complaint that establishes that Plaintiff was subjected to a hostile work environment based on either his gender or race. Taking, as we must, the well-pled allegations of the Complaint as true, at most, it establishes that Plaintiff was subject to criticism of his performance as a lawyer over a two-year period, that some of his co-workers weren't very nice to him, and that some workers used inappropriate language when referring to defendants – not Plaintiff – in criminal cases. That is not enough to establish a claim of hostile work environment under Title VII. None of the conduct directed *at Plaintiff* can plausibly be linked to his race or gender, and the conduct

alleged is not sufficiently severe or pervasive enough to satisfy the standards set by the Seventh Circuit to state a hostile work environment claim. Accordingly, Counts I and II of the Complaint for hostile work environment for alleged racial and gender discrimination, respectively, should be dismissed.

*Second*, while Plaintiff asserts that he made complaints "to HR" about "harassment" and other conduct he didn't like, he did not actually make claims of Title VII gender or race discrimination against him that could trigger a retaliation claim. Accordingly, his complaints cannot be deemed "protected activity" under the law, which is a required element for the Complaint's Title VII Retaliation claim (Count III). Count III also should be dismissed.

## PERTINENT FACTS ALLEGED IN THE COMPLAINT

The Complaint in this case is, to put it mildly, a muddle. It is difficult to follow, internally inconsistent, and riddled with errors, conclusory allegations, and implausible leaps of illogic. Below, Defendant provides the pertinent facts, organized chronologically, from the Complaint.

### A. Plaintiff's Initial Assignment to Criminal Appeals from 2015-2016.

Plaintiff was appointed a Cook County State's Attorney on June 29, 2015 and remained in that position for about 2 and a half years – through December 4, 2017. (Cplt. ¶ 1). His initial assignment was to the Criminal Appeals Unit, where, after having worked for approximately four months, his work was rated as "Satisfactory" for the tasks that he performed. (*Id.* ¶ 11; *see also* October 2015 CCSAO's Performance Evaluation, referenced at *id.* ¶¶ 58-65 and attached hereto as Ex. A).[1] Hudson claims that in August 2015, a female employee with whom he worked

---

[1] The Complaint expressly references this review at paragraphs 58-61 (mislabeling it a "2015-2016 review") and quotes from it at paragraphs 62-65 (incorrectly referring to it as a "2016-2017 review"). The document on its face it shows that it is a review from October 2015 and covers only 4 months of service to the office. (Ex. A hereto, at 1). Because the document is referenced and quoted in the Complaint, Defendants are permitted to attach it and the Court may consider it on a motion to dismiss. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (It is "well-settled in this circuit that documents attached to a motion

2

"displayed visible disregard and frustration" with Hudson and said "How did you get this job. My friend is supposed to have your job and is supposed to be sitting in your seat." (Cplt. ¶ 17). He also claims that the same employee had a conversation with him – again in August 2015 – in which she tried to "illicit [*sic*] derogatory remarks from Hudson about the African-American murder suspect" and in which she allegedly made "biased" comparisons between Hudson and the murder suspect – although what the comparisons were and how they supposedly were biased is not explained. (*Id.* ¶ 18).

Nowhere is there an allegation in the Complaint that Hudson reported these alleged comments to anyone at the CCSAO. Indeed, the Complaint alleges that the next day Plaintiff was informed that this employee had reported him for violation of the State's Attorney's Employee Handbook; that the allegation was deemed unfounded; and that she was moved away from Hudson and later transferred to an undesirable assignment. (*Id.* ¶ 19). No adverse employment action is alleged as a result of any of Hudson's allegations concerning his time at the Appeals Unit.

### B. Plaintiff's Work in the Juvenile Justice Unit from 2016 to July 2017, and His Complaints.

While the Complaint does not directly state it, the Complaint and documents referenced therein establish that in 2016 Plaintiff began working in the Juvenile Justice Bureau of the CCSAO. (*See id.* ¶ 33, referencing his transfer from this bureau; ¶ 20, referencing September 2016 complaints about Hudson in this bureau.)

The Complaint alleges that on or about September 1, 2016 a white female ASA complained about Plaintiff's courtroom demeanor to ASA Mary Joly Stein and, rather than investigate the allegations, Stein moved Plaintiff to another courtroom. (*Id.* ¶ 20). Plaintiff alleges that in this

---

to dismiss are to be considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.")

courtroom, an unnamed first-chair commented on Plaintiff's size and stature, said "You're a big guy. You could probably beat me up, take me in a fight." (*Id.* ¶ 21). He also complains that he was assigned to a hard case and had to work late on his birthday. (*Id.* ¶ 22).

On November 29, 2016, Plaintiff says he was placed on a performance improvement plan, despite his claim that his "performance was unquestionable [*sic*] exceeding expectations." (*Id.* ¶ 23). He asserts, however, that he was told the PIP would not be placed in his file, and if it was, his four-page response would also be placed in his file. (*Id.*). No actual adverse employment action concerning this PIP is alleged.

Thereafter, Plaintiff alleges that from June 2016 to May 2017, he "reported behaviors of micromanagement, invasion of personal space and unprofessional behavior" that seem to be based on claims that Plaintiff's first chair logged onto and deleted messages from Plaintiff's work voicemail and moved Plaintiff's belongings. (*Id.* ¶ 24). It is not clear how any of this conduct, assuming it occurred, was related to Plaintiff's race or gender.

Plaintiff claims that when he met with the CCSAO's Chief of Staff ("COS") on or about January 20, 2017, he complained in general about a lack of diversity in the CCSAO and about "how African-American men were made to feel." (*Id.* ¶¶ 26-27). Plaintiff's personal complaints seem be that people made comments about his physique and accused him of being aggressive – again, it is unclear what the connection is to his race or to gender discrimination. (*Id.* ¶ 27).

On or about February 14, 2017, Plaintiff raised a complaint with HR about a comment he said was made to him about an approved Family and Medical Leave ("FMLA") in which someone allegedly said "I have never had someone take leave like this in my … years of working here." (*Id.* ¶ 28). There is no FMLA claim in the Complaint, and Plaintiff does not establish how this alleged comment was related to his race or gender. Plaintiff says he met again with the COS on April 14, 2017, but does not allege what if anything he reported apart from the FMLA-related

4

comment. (*Id.* ¶ 32). Plaintiff was transferred to the Narcotics Prosecution Bureau ("Narcotics") on May 22, 2017 – a transfer about which he was "enthusias[tic]." (*Id.* ¶¶ 33, 34).

### C. Plaintiff's Work in the Narcotics Prosecution Bureau from May 22, 2017 to his December 4, 2017 Termination, and his Complaints.

Plaintiff alleges a litany of complaints about his time in Narcotics:

- He was "essentially demoted" to an administrative position. (*Id.* ¶ 36).
- He experienced "hostility" from co-workers and supervisors and he was deemed "difficult." (*Id.*).
- A Caucasian colleague "called out his name using profanity." (*Id.* ¶ 38).
- Caucasian colleagues allegedly used epithets for some African-American defendants. (*Id.*).
- Hudson was accused by a supervisor of unethical conduct. (*Id.* ¶¶ 38, 42).
- A fellow employee called him an "asshole." (*Id.* ¶¶ 43-44 and Exs. 1, 4 to Cplt.).
- He was placed on a Performance Improvement Plan "PIP" (that he disagreed with) after he complained about being called an "asshole." (*Id.* ¶ 45).
- Someone at the CCSAO opened his health insurance documents. (*Id.* ¶ 46).
- People had conversations that he was not welcome to join. (*Id.* ¶ 47).
- An employee stated to Plaintiff: "Your new thing is to question me." (*Id.* ¶ 48). She also allegedly complained that Plaintiff was not following protocol and treated him with "hostility and unprofessionalism." (*Id.* ¶ 49). The same employee "attended work noticeable [*sic*] uncomfortable and unwelcoming of Hudson." (*Id.* ¶ 50). This employee also allegedly screamed "I don't have time for this" in response to an inquiry from Plaintiff, and on another occasion said "I might scream" when she learned Plaintiff had shared information with another ASA. (*Id.* ¶¶ 51-52).

While the CCSAO certainly does not condone using epithets for criminal defendants, the Complaint does not allege that such comments were made about Plaintiff or that they were made to harass Plaintiff. Plaintiff also cites random hearsay comments from a co-worker named Kyla Bourne and another hearsay comment made on June 5, 2018 – months after he was gone – by another co-worker named Sue McShane about their perceptions of his treatment. (*Id.* ¶¶ 39-40). The remainder of the allegations focus on conflict that Plaintiff had with other employees, which he purports to detail at paragraphs 43-56 as part of a conspiracy to "precariously [*sic*] terminate Hudson." These allegations, once again, have no apparent connection to gender or race discrimination.

5

Plaintiff alleges that on or about September 29, 2017 he reported Sara Kaufman for "harassment and discrimination." (*Id.* ¶ 43).[2] Plaintiff claims that the CCSAO found that the report constituted "unlawful workplace harassment" "*and*" that Ms. Kaufman's conduct fell "short of the CCSAO's expectation that employees conduct themselves at all times in a professional, courteous, business-like manner." (*Id.* ¶ 44, citing Ex. 4 to Cplt.). The exhibits attached to the Complaint establish that Ms. Kaufman called Plaintiff an "asshole" – not a comment that in any way could be deemed gender or race-based. (See Ex. 1 to Cplt., Docket #2, at page 6 of 34; Ex.4 to Cplt., at page 28 of 34).

It also is clear that the Complaint seeks to avoid an obvious typo in Exhibit 4 to manufacture an implausible claim that the CCSAO had deemed Ms. Kaufman calling Plaintiff an "asshole" to be an instance of unlawful workplace harassment. The full sentence is:

> Although we have determined that the complained of conduct does constitute unlawful workplace harassment by ASA Kaufman, it does appear that the use of profanity by ASA Kaufman falls short of the CCSAO's expectations that employees conduct themselves at all times in a professional, courteous, business-like manner. . . . I can tell you that appropriate action has been taken to ensure that such conduct does not repeat itself.

(Ex. 4 to Cplt.). There is no plausible way to read this passage without concluding that the author intended to say, "Although the complained of conduct does ***[not]*** constitute unlawful workplace harassment by ASA Kaufman." Plaintiff's decision to remove the word "Although" and break up the sentence to add the word "and" where there is no such word only underscores the implausibility of the Complaint's contention that such a finding had been made.

Finally, Plaintiff alleges that he met again with the COS in October 2017 to complain about (1) a Caucasian colleague calling out his name using profanity; (2) a supervisor referring to a defendant that he claims in the Complaint was African-American as a "thug" in an email; (3)

---

[2] Exhibits 1 and 4 to the Complaint both state that the report was actually on October 6, 2017.

Caucasian colleagues allegedly referring to African-American defendants as "mookies" and "pookies,"; and (4) allegations that Plaintiff engaged in a Brady violation and an "ARDC threat." As discussed below, none of these allegations rise to the level of opposition to a violation of Title VII.

### D.     All Three Counts of the Complaint Are Brought Under Title VII.

The Complaint contains three Counts, all of which are brought under Title VII.  Count I is for "Hostile Work Environment Based on Gender Discrimination Violation of Title VII Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*."  (*Id.* ¶¶ 79-91).  Count II is for "Hostile Work Environment Based on Racial Discrimination Violation of Title VII Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*."  (*Id.* ¶¶ 92-104).  And Count III is for "Retaliation for Exercise of Rights Under Title VII Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*."  (*Id.* ¶¶ 105-111).

### STANDARD FOR A MOTION TO DISMISS PURSUANT TO RULE 12(b)6

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Under Rule 12(b)(6), a complaint must contain allegations that "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In considering a motion to dismiss, the Court accepts as true all *well-pleaded* factual allegations and draws all *reasonable* inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003).  In *Twombly*, 550 U.S. at 555 n. 3, the Supreme Court held under Fed. R. Civ. P. 8(a)(2) the plaintiff's allegations must "raise a right to relief above the speculative level." *Id*. at 555.  The plausibility standard requires enough facts to "present a story that holds together." *Swanson v. Citibank, N.A*., 614 F.3d 400, 404 (7th Cir. 2010). Where "facts" in a complaint are legal conclusions or elements of the cause of action, they may be

disregarded on a motion to dismiss. *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681).

In ruling on a motion to dismiss, while "courts must accept a plaintiff's factual allegations as true. . .some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "[T]he plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675-676 (7th Cir. 2016).

As detailed below, all three of Plaintiff's counts should be dismissed because, as a matter of law, they fail to state claims on which relief can be granted.

## <u>ARGUMENT</u>

### I.    Plaintiff's Entire Complaint Must be Dismissed Because He is not an "Employee" Within the Purview of Title VII.

The Seventh Circuit has firmly established that Cook County Assistant State's Attorneys ("ASA") like Plaintiff are not "employees" under the definition of that term in Title VII and thus may not sue for redress under that Act. Title VII defines the term "employee" as follows:

> The term "employee" means an individual employed by an employer, except that ***the term "employee" shall not include*** any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or ***an appointee on the policy making level*** or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C. 2000e(f) (emphasis added).

Courts in this Circuit repeatedly have held that government workers like Plaintiff fall within the "policy-making appointee" exception to the definition of "employee" and thus do not fall within the purview of the statute. Indeed, the Seventh Circuit held in 2010 that Cook County ASA's specifically are "appointees on the policy making level" under this definition of employee.

8

*Opp*, 630 F.3d at 619 (holding that Cook County ASAs are appointees on the policy making level under the ADEA's identical exemption and cannot sue under that statute); *see also Americanos v. Carter*, 74 F.3d 138, 143-44 (7th Cir. 1996) (court properly dismissed deputy attorney general's Title VII and ADEA claims because he was "not an 'employee' within the purview of either Title VII…or the ADEA."). Plaintiff's complaint asserts only Title VII causes of action. The entire complaint thus should be dismissed because he is not an "employee" and thus does not fall within the protections of Title VII.

The *Americanos* and *Opp* decisions arose out of Supreme Court jurisprudence permitting political and policymaking employees to be terminated from employment despite the protections of the First Amendment. *Branti v. Finkel*, 445 U.S. 507 (1980); *Elrod v. Burns*, 427 U.S. 347 (1976). *See Heck v. City of Freeport*, 985 F.2d 305, 308-09 (7th Cir. 1993); *Americanos*, 74 F.3d at 140; *Opp*, 630 F.3d at 620. In *Branti*, the Supreme Court held that party affiliation is a permissible ground for an employee's termination if it is "an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518. In *Tomczak v. City of Chicago*, the Seventh Circuit applied *Branti* to develop the appointed policymaker test as: "whether the *position* held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation." 765 F.2d 633, 641 (7th Cir. 1985) (emphasis in original). *Tomczak* went on to hold that *Elrod* only required a court to examine the "'powers inherent in a given office,' rather than the actual functions the occupant of that officer performed." *See Heck*, 985 F.2d at 309 (quoting *Tomczak*, 765 F.2d at 641); *Americanos*, 74 F.3d at 140-41 (same); *Opp*, 630 F.3d at 620 (same).

Since at least 1993, the Seventh Circuit has applied this appointed policymaker test from these political patronage cases to preclude complaints like Plaintiff's from being brought in federal

9

court under anti-discrimination statutes like, and including, Title VII. *See Heck*, 985 F.2d at 308-10 (plaintiff's ADEA claim failed "for the same reasons as his political patronage claim"). In *Heck*, the General Inspector of the City of Freeport could not pursue claims under the First Amendment or the ADEA for identical reasons. *Id.* at 309. To determine the inherent powers of the office, the court examined the Freeport Municipal Code creating the General Inspector. *Id.* The Municipal Code stated that the "General Inspector shall make inspections and perform such duties as may be required of him, from time to time, by the Mayor, City Engineer or Health Commissioner, and perform such other duties as may be required by ordinance." *Id.* By examining this language in conjunction with the structure of Freeport's government, the court held that the office had inherent policymaking authority and thus it need not examine the actual functions of the plaintiff's job. *Id.* at 309-10. Accordingly, the court held that the plaintiff's political patronage claim failed. *Id.* Moving to the ADEA claim, the court then held that the plaintiff also was an "appointee on the policymaking level" under the ADEA's exception and thus his "ADEA claim fail[ed] for the same reasons as his political patronage claim." *Id.* at 310.

Three years later, the Seventh Circuit in *Americanos* applied the same analysis to Title VII's identical exclusion of "appointee[s] on the policy making level" from its definition of an "employee." 74 F.3d at 143-44 (citing *Heck* and finding same test for whether an employee is an appointee on the policy making level applies to Title VII and to the ADEA). *Americanos* applied the Indiana Code and found that policymaking powers were inherent in the duties of deputy attorney generals ("DAG"), obviating the need for further factual inquiry into the plaintiff's duties. *See id.* at 141-42. The Indiana Code stated that DAGs "may be authorized to 'perform on behalf of . . . the state *any and all of the rights, powers or duties now or hereafter conferred by law or laws upon the attorney general*.'" *Id.* at 141 (quoting Ind. Code Ann. § 4-6-5-1.9) (emphasis in original). The court found that these "easily ascertainable" duties inherently carry the ability to

10

have "meaningful input into governmental decision-making." *Id.* at 141-42. The court concluded that the plaintiff's position as a DAG, with the inherent duties of that office, barred claims under *both* Title VII and the ADEA because he was "an appointee on the policy making level" – not an "employee" under Title VII or the ADEA. *Id.* at 143-44.

In 2010, the Seventh Circuit in *Opp* conclusively established that Cook County ASAs also fall within the "appointed policy maker" exception to the ADEA's definition of "employee." *Opp*, 630 F.3d at 621-22. Since *Americanos* already had established that the definitions of "employee" under the ADEA and Title VII are indistinguishable, this means Cook County ASAs also cannot be deemed employees under Title VII. As in *Americanos*, in *Opp*, the Seventh Circuit again examined the statutory duties of the job along with common knowledge of the functions of the State's Attorney's office to hold that ASAs have inherent policymaking authority. *See id.* at 621. In Illinois, the State's Attorney "has the broad discretion to set whatever policies he or she believes necessary to protect the interests of . . . society." *Id.* (citing *Livas v. Petka*, 711 F.2d 798, 800 (7th Cir. 1983)). Additionally, "[ASAs] are to be named by the State's Attorney of the county, and when so appointed shall take the oath of office in the same manner as State's Attorneys and shall be under the supervision of the State's Attorney." 55 ILCS 5/4-2003(a); *Opp*, 630 F.3d at 621. Thus, ASAs "possess the power in the same effect as the State's Attorney." *Id.* (quoting *McGrath v. Gillis*, 44 F.3d 567, 571 (7th Cir. 1995). As with DAGs in *Americanos*, the *Opp* court held that these statutory duties confer policymaking authority on *all* ASAs. *Opp*, 630 F.3d at 619-21 ("all ASAs are appointees on the policymaking level and therefore are not within the coverage of the ADEA.")

There is no way to distinguish the holdings in *Heck*, *Americanos*, and *Opp*. This Court must dismiss the Complaint because Title VII does not apply to Plaintiff. Plaintiff was a Cook County ASA appointed pursuant to statute. *See* 55 ILCS 5/4-2003(a) (ASAs "are to be named by

the State's Attorney of the county"); *Opp*, 630 F.3d at 621 (citing 55 ILCS 5/4-2003(a) and holding former ASAs were appointed). The statutory language relied upon by the Seventh Circuit in *Opp* remains the same today. *See* 55 ILCS 5/4-2003(a). Under on-point, well established law, Plaintiff was an "appointed policy maker" and thus falls outside the purview of Title VII protections. There can be no dispute that the Complaint arises solely under Title VII. Accordingly, this case must be dismissed in its entirety, with prejudice.[3]

## II. Counts I and II Must Be Dismissed Because Plaintiff Fails to Sufficiently Allege a Hostile Work Environment Under Title VII.

While the argument above is more than sufficient to grant the Motion to Dismiss, the Complaint also fails to state hostile work environment claims under Title VII (Counts I and II). Nowhere in Plaintiff's Complaint does he allege a hostile work environment on the basis of gender or race. Rather, the conduct complained of is race- and gender-neutral, and is not protected under Title VII. Further, even if the alleged conduct related to Plaintiff's race or gender, it does not rise to the level sufficient to allege a hostile work environment under established Seventh Circuit caselaw.

### A. None of the alleged conduct regarding a "hostile work environment" was based on Plaintiff's race or gender.

In order to state a claim under Title VII for a hostile work environment, a plaintiff must be able to demonstrate that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race or sex; (3) the harassment was severe or pervasive enough as to alter the

---

[3] Plaintiff never had a basis on which to file a Title VII action before this Court – something he should have known since, as Plaintiff identified in both the Complaint, (¶ 1), and his EEOC charge (Ex. 1 to Cplt.), the Government Employees Rights Act of 1991 ("GERA"), 42 U.S.C. 2000e-16a to 2000e-16c, applies to employees who are exempt from Title VII. However, this Court does not have jurisdiction to decide cases covered by GERA. *See Strong v. Del. County*, 976 F. Supp. 2d 1038, 1045-46 (S.D. Ind. 2013) ("District courts do not have jurisdiction to decide discrimination cases covered by GERA.") (cited favorably in *Geraty v. Vill. Of Antioch*, 2015 U.S. Dist. LEXIS 1785, *18 (N.D. Ill. 2015)). Rather, such matters are handled administratively within the EEOC. *See* 29 C.F.R. 1603.100 *et seq.*

conditions of the employee's environment and create a hostile or abusive working environment; and (4) there is basis for employer liability. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004).

Here, Plaintiff is full of complaints about his treatment at the SAO, but the fact is that none of this alleged "hostile" treatment was "based on" Plaintiff's race or gender. Plaintiff's initial allegations from 2015 or thereabouts seem to describe a conflict with his office mate. Plaintiff complains that his office mate asked how he got this job, engaged in a conversation with Plaintiff about a news story on television concerning a black murder suspect, and later made a complaint against Plaintiff. (Cplt. ¶¶ 17-19). Plaintiff then goes on to allege that his co-worker filed a complaint about Plaintiff. (*Id.* ¶ 20). Plaintiff alleges that other co-workers made unwelcome comments about his physique (*Id.* ¶¶ 21, 27), instructed Plaintiff to work late on his birthday (*Id.* ¶ 22), assigned him to difficult case (*Id.* ¶ 22), accused him of being aggressive (*Id.* ¶ 27), and made comments about his FMLA leave (*Id.* ¶ 28). He then goes on to discuss his dissatisfaction at his assignment in the Narcotics division, where he felt he was "not welcome." (*Id.* ¶¶ 34-36).

The common theme across all of plaintiff's allegations is that they have nothing to do with his race or gender. The treatment that Plaintiff complains of may have been unpleasant for him, but it simply does not meet the second prong of a claim for a hostile work environment claim, that the harassment is "based on his race or sex." *Cooper-Schut*, 361 F.3d at 426.

Plaintiff's allegation in Paragraph 38 of the Complaint describes an email that a supervisor sent calling a defendant Plaintiff claims was African-American a "thug," and colleagues allegedly referring to African-American defendants as "mookies" and "pookies." None of these comments, while undoubtedly inappropriate, were made about Plaintiff and thus do not suffice for a hostile work environment claim. "There is no hostile work environment where the harassment about which plaintiff complains was not directed at him." *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 567 (7th

13

Cir. 2004). In *Smith*, as here, the plaintiff only heard an offensive term directed at a third person and learned from others about other offensive comments directed at third persons. *Id.* The Court found that what plaintiff had "personally experienced [did] not amount to an objectively hostile work environment." *Id.*

> **B.    The alleged "hostile" conduct does not meet the pleading standard for a hostile work environment claim.**

A hostile work environment is one that is "permeated with *discriminatory* intimidation, ridicule, and insult." *Cooper-Schut*, 361 F.3d at 426. (emphasis added). "To rise to the level of a hostile work environment, conduct must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an *abusive* relationship." *Alexander v. Casino Queen, Inc.,* 739 F. 3d 972, 981 (7th Cir. 2014) (emphasis in original). Moreover, a plaintiff must show that his or her work environment was both subjectively and objectively hostile. *Id.* To be objectively hostile, a reasonable person must find the discriminatory environment abusive. *Blickle v. Ill. Dep't of Children & Family Servs.*, 2013 U.S. Dist. LEXIS 80014, *10-11 (N.D. Ill.) In determining whether a workplace is objectively hostile, a court should consider the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.*

Here, Plaintiff's allegations do not "reflect the types of situations the Seventh Circuit has held to be plausible allegations of a hostile work environment," nor are they sufficiently severe or pervasive to state such a claim. *Winters v. Hamos,* 2018 U.S. Dist. LEXIS 119685 at *11 (N.D. Ill. 2018*), citing Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826, 834 (7th Cir. 2015) (allegations of screaming, prayer circles, implicit criticism of non-Christians, and uniquely bad treatment plausibly alleged hostile environment); *Alamo v. Bliss*, 864

F.3d 541, 549-50 (7th Cir. 2017) (allegations that coworkers used offensive slurs, stole plaintiff's food, and physically threatened him as well as allegations that he complained to supervisors to no avail sufficient to survive motion to dismiss); *see also Phillipson v. Kelly*, 2017 U.S. Dist. LEXIS 42753, *15-16 (N.D. Ill 2017) (dismissing hostile work environment claim where Plaintiff's allegations were not, "as an objective matter, physically threatening or humiliating").

Plaintiff does not allege any actions that rise to the level required by Seventh Circuit law to allege a hostile work environment, such as physically threatening comments. Rather, he alleges comments to which Plaintiff took offense. But a mere offensive utterance does not raise the level of harassment to the required severe or pervasive level. *Winters,* 2018 U.S. Dist. LEXIS 119685, *13. "Title VII is not . . . a general civility code and will not find liability based on the sporadic use of abusive language." *Ford v. Minteq Shapes & Servs., Inc.*, 587 F.3d 845, 848 (7th Cir. 2009).

Finally, Plaintiff cannot meet the pleading standard because he does not allege that this "hostile work environment" interfered with his work performance. *Winters v. Hamos*, 2018 U.S. Dist. LEXIS 119685, *13 (N.D. Ill. 2018). In *Winters,* where plaintiff alleged that he was meeting the legitimate job performance expectations of defendant and that his negative performance reviews were inaccurate and unwarranted, the court found that Plaintiff had not adequately pled a hostile work environment and dismissed Plaintiff's claim. *Id.* The same is true here – Plaintiff maintains that he was meeting the legitimate job performance expectations of his employer and that his 2017 Performance Improvement Plan was "unsubstantiated and illegitimate" and his 2016 PIP was "pretextual." (Cplt. ¶¶ 72-73). Plaintiff's "hostile work environment" allegations should therefore be dismissed.

### III.    Plaintiff Fails to Plead Retaliation Because He Cannot Properly Allege That He Engaged In "Protected Activity."

Count III of the Complaint is for retaliation under Title VII.  To state a claim for retaliation, a plaintiff must show through either direct or circumstantial evidence that (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) there was a causal connection between the two.  *Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008).  Here, Plaintiff cannot plausibly allege that he engaged in "statutorily protected activity," because any complaints he made to HR about so called "harassment" are either time-barred, unrelated to his race or gender, or not based on a reasonable good faith belief that the conduct opposed is, or could become unlawful.

Protected activity may fall under one of two categories: participation or opposition.  *See* EEOC Enforcement Guidance on Retaliation and Related Issues, at 6 (8/25/16).[4]  Participation requires involvement with an investigation under Title VII, the ADEA, the EPA, the ADA, the Rehabilitation Act, or GINA.  *Id.* at 6.  Opposition includes communicating, explicitly or implicitly, opposition to practices that are unlawful under Title VII.  *See id.* at 8.  The manner of opposition must be reasonable, and it must be based on a reasonable good faith belief that the conduct opposed is, or could become, unlawful.  *Id.*

While Plaintiff asserts that he made complaints "to his local and executive human resources representatives" about "harassment" and other conduct he didn't like, nowhere does he establish that he was making complaints that can reasonably be deemed to have been about race or gender discrimination (or indeed, any other legal violation) against him.  Moreover, some of the alleged retaliation occurred outside the limitations period, and apart from his termination, none qualify as adverse employment actions.

---

[4] A*vailable at* https://www.eeoc.gov/laws/guidance/retaliation-guidance.cfm.

### A. Plaintiff's alleged complaints during or about his time in the Appellate and Juvenile Justice Division are time-barred.

Plaintiff filed his charge with the EEOC on June 1, 2018. (Cplt. Ex. 1). In Illinois, a claimant must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); *A'Ku v. Motorola, Inc.*, 1999 U.S. App. LEXIS 26543, *5 (7th Cir. 1999). The limitations period begins to run on the date the plaintiff is told he is or will be terminated. *Id.* Thus Plaintiff's limitations period began to run on December 4, 2017. (Cplt. ¶ 75).

Plaintiff's allegations that he complained to HR or other supervisors about so-called harassment (and retaliation therefore) before February 14, 2017 are therefore time-barred. This includes Plaintiff's allegations about his meeting with the CCSAO's COS on January 23, 2017. (*Id.* ¶ 26). Although Plaintiff alleges that he met again with the COS on April 14, 2017, (*Id.* ¶ 32) he does not allege that he discussed any type of race or gender-based harassment, and in fact does not allege any information about what was discussed at that meeting. Retaliation claims "alleging illegal retaliation on account of protected conduct must provide some specific description of that conduct beyond the mere fact that it is protected." *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 781 (7th Cir. 2007). Moreover, the Complaint itself makes clear that the only alleged retaliatory action taken by the CCSAO was his termination in October 2017. (Cplt. ¶ 107) ("in retaliation for Plaintiff's complaints, reports, and protests of sexual harassment and a hostile work environment, the Cook County State's Attorney's Office terminated Plaintiff's employment.") This leaves only the October 2017 complaints about Ms. Kaufman and the October 2017 meeting with the COS as reports that should be considered for a retaliation claim.

### B. Plaintiff's complaints were not protected activity.

Title VII is not a federal "civility code." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998) ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations."); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 ("A recurring point in these opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" (internal citation omitted)); *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 ("[N]ot all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII."). Plaintiff's only allegations of reporting so-called "harassment" that took place within the 300-day statute of limitations include an October 2017 meeting with the COS (Cplt. ¶ 38) and a complaint made about ASA Sara Kaufman. (*Id.* ¶¶ 43-45). Neither of these reports satisfies the opposition requirement of a retaliation claim because they did not complain of conduct that reasonably could be deemed an unlawful employment practice under Title VII.

Plaintiff alleges that he reported several issues to the COS in October 2017. First, he alleges a colleague calling Plaintiff "out his name using profanity." (*Id.* ¶ 38). There is no allegation that this "profanity" was related to race or gender – and if it refers to Ms. Kaufman calling Plaintiff an "asshole," that word is not race or gender specific at all. Second, Plaintiff alleges a supervisor referred to a defendant as a "thug" via email, and that colleagues allegedly referred to African-American defendants as "mookies" and "pookies." (*Id.*). As discussed above, these references were not directed at Plaintiff. Such conduct does not constitute a hostile work environment or discrimination against Plaintiff, and therefore cannot be a "protected activity" required to state a retaliation claim. Moreover, the term "thug" is racially neutral, describing a

18

violent person or criminal; describing a criminal defendant with this word does not raise a claim of race discrimination against Plaintiff. Finally, Plaintiff alleges that he told the COS about false allegations of a Brady violation and an ARDC threat. (Cplt. ¶ 38). Presumably, these allegations were made against Plaintiff, but neither a Brady violation nor an ARDC threat is related to Plaintiff's race or gender.

"For purposes of retaliation claims, statutorily protected activity generally consists of either an employee filing a charge with the EEOC or opposing any practice made unlawful." *Garza v. Ill. Inst. of Tech.*, 2018 U.S. Dist. LEXIS 18, *10 (N.D. Ill.). Plaintiff's report to the COS about such comments are not protected activity, because such comments are not unlawful. Further, for an action to be considered protected activity, it must be "more than simply a complaint about some situation at work, no matter how valid the complaint might be. The complaint instead must indicate discrimination on the basis of membership in a protected class." *Id.* (citations omitted). To establish that his complaint about Kaufman calling him an "asshole" was statutorily protected under the opposition clause, Plaintiff would have to be able to show that he had a good faith belief that the comment was an unlawful employment practice under Title VII. This, he simply cannot do.

The same problem applies to Plaintiff's allegation that he made a report about ASA Sara Kaufman for "harassment and discrimination." (Cplt. ¶ 43). The exhibits to the Complaint establish that the report was made on or about October 6, 2017. (Exs. 1 and 4). Plaintiff's report was investigated by HR and resulted in a finding, which Plaintiff attached to his Complaint as Exhibit 4. (*Id.* ¶ 44, Ex. 4). Plaintiff's attachment to the Complaint redacts the alleged "discriminatory" word, but Exhibit 1 makes it clear that the word was "asshole." The word "asshole," while it may be regarded as distasteful, is clearly gender and race neutral. *See Barnett v. Certified Grocers Midwest*, 1997 U.S. Dist. LEXIS 11489, *73 (N.D. Ill.) (language that

"consisted of profanity, not racial slurs" is "insufficient for purposes of a Title VII racial harassment claim").

Further, Plaintiff is playing fast and loose with the HR finding. As established in the fact section above, there is an obvious typo in the document, and Plaintiff is taking improper advantage of that typo. Plaintiff's allegation at Paragraph 44 of his Complaint misleadingly and selectively quotes the finding from HR, and cannot state a plausible claim for Title VII harassment. *See N. Ind. Gun & Outdoor Shows v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well settled rule that when a written instrument contradicts the allegations in the complaint to which it is attached, the exhibit trumps the allegations."); *see also Bell v. Lane*, 657 F.Supp. 815, 817 (N.D. Ill. 1987) ("where exhibits attached to a complaint negate its allegations, a court is not required to credit the unsupported allegations). In any event, the finding from HR is of no consequence to the legal issue at hand. Plaintiff complained of a co-worker calling him an "asshole," which does not "oppose any practice made unlawful," because it is not related to Plaintiff's race or gender and thus is not "protected activity" required to plausibly state a claim for retaliation. *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 664 (7th Cir. 2006) (no protected activity where employee's complaint to supervisor did not reference race or other discriminatory conduct); *Dear v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009) (affirming summary judgment for employer where statements made to employee could not be construed as objectively racist).

**C.      Apart from his termination, none of the alleged "retaliation" constitutes adverse employment actions.**

An adverse employment action must materially alter the terms and conditions of employment. *Whittaker v. N. Ill. Univ.*, 424 F3d 640, 648 (7th Cir. 2005). Actions that do not result in tangible job consequences "are not adverse employment actions actionable under Title VII." *Id.* Likewise, transfers that do not "significantly reduce[] the employee's career prospects"

are not adverse employment actions. *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 471 (7th Cir. 2018) (transfer not adverse employment action where plaintiff and co-workers found the transfer humiliating and the equivalent of a demotion). Here, the Complaint alleges that, after Plaintiff was transferred to the narcotics division, he was "essentially demoted" within narcotics to an administrative position. (Cplt. ¶ 36). Such a transfer and/or demotion, like in *Madlock,* does not constitute an adverse employment action. *See also Boss v. Julian Castro*, 816 F.3d 910, 918 (7th Cir. 2016) (An adverse employment action requires "a significant change in employment status.").

As for the other allegations – that he was accused of improper conduct or that a friend of Ms. Kaufman's was unwelcoming and yelled at Plaintiff – these too do not rise to the level of adverse employment actions. *See Burton v. Bd of Regents of the University of Wisconsin System*, 851 F.3d 690, 697 (7th Cir. 2017) ("unfulfilled threats" do not constitute adverse employment action because employee suffered no injury); *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009) ("[W]ritten reprimands without any changes in the terms or conditions of [an employee's] employment are not adverse employment actions."). Likewise, Plaintiff's allegation that he was placed on a PIP in 2016 is not an adverse employment action because Plaintiff has not alleged that the PIP negatively affected his salary or responsibilities. The same holds true as to the PIP in or about November 2017 that he denies was actually presented to him. (Cplt. ¶ 44). *Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009) (performance improvement plan, although disciplinary, was not an adverse action because plaintiff "was not deprived of responsibility, hours, pay, or any other relevant accoutrement of her position"); *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014) (placing employee on performance improvement plan was not materially adverse).

21

Only Plaintiff's termination could qualify as an adverse employment action under the law. But to be actionable, Plaintiff would have to be able to show that his termination was in retaliation for complaints opposing unlawful conduct under Title VII. Because Plaintiff's October 2017 complaints do not qualify as such opposition, Plaintiff cannot state a claim for retaliation under that law.

## **CONCLUSION**

Plaintiff cannot state a cause of action under Title VII because he is not an "employee" under that statute. For this reason alone, the Motion to Dismiss should be granted, with prejudice. In addition, the Complaint fails to state claims for hostile work environment under the standards established by the Seventh Circuit; thus Counts I and II could be dismissed for these additional reasons. Finally, Count III for retaliation also must be dismissed because Plaintiff cannot plausibly establish that he was engaged in protected activity or that he was fired in retaliation for engaging in protected activity.

Dated: February 25, 2019            Respectfully submitted,

/s/ Sarah R. Marmor
Sarah R. Marmor
Suzanne Milne Alexander
Morgan G. Churma
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Ph. 312-726-6000
smarmor@scharfbanks.com
salexander@scharfbanks.com
mchurma@scharfbanks.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

TO:     Mason Scott Cole
          Cole Sadkin, LLC
          20 S. Clark St. Suite 500
          Chicago, IL 60603
          mcole@colesadkin.com

       I certify that on February 25, 2019, I caused to be filed the foregoing MEMORANDUM

IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS THE

COMPLAINT using the Court's CM/ECF system, which will send e-mail notification of the

filing to all counsel of record.  These documents are available for viewing and downloading via

the CM/ECF system.


                    /s/ Sarah R. Marmor