**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRANDON HUDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KIMBERLY M. FOXX, Cook County State | ) | |
| Attorney in her Official and | ) | |
| Individual Capacity; COOK COUNTY | ) | Case No: 18-cv-08243 |
| STATE ATTORNEY'S OFFICE; COOK | ) | |
| COUNTY, ILLINOIS; JENNIFER | ) | Judge Andrea R. Wood |
| WALKER-COLEMAN, in her official | ) | |
| and individual capacity as Division Chief of | ) | |
| Staff; JENNIFER BALLARD-CROFT, in her | ) | |
| official and individual capacity as | ) | |
| Chief of Staff; JOAN PERNECKE, in her | ) | |
| official and individual capacity as Division | ) | |
| Chief; EMILY COLE, in her Official and | ) | |
| individual capacity as Supervisor; and | ) | |
| MARY JOLY STEIN, in her official and | ) | |
| individual capacity as Supervisor; | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF INDIVIDUAL DEFENDANTS'**
**RULE 12(b)(6) MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

FACTS ABOUT THE INDIVIDUAL DEFENDANTS ALLEGED
    IN THE COMPLAINT...................................................................................1

  A. The "Individual Defendants" ...................................................................1

  B. Hudson's Allegations About 2016 Against Joly Stein and Pernecke ...................................2

  C. Hudson's Allegations About 2017 Against Ballard-Croft, Coleman, and Cole. ..................3

  D. FMLA Allegations Against Joly Stein and Pernecke...........................................4

  E. The Eight Counts of the Amended Complaint ................................................5

STANDARD FOR A MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)........................5

ARGUMENT .......................................................................................................6

I.   Count I Fails to State Any Plausible Section 1983 Equal Protection Claim
    Against the Individual Defendants ..................................................................6

  A. Joly Stein and Pernecke.........................................................................7

  B. Ballard-Croft.......................................................................................10

  C. Cole and Coleman................................................................................11

II.  Count II Cannot Be Pleaded Against the Individual Defendants Because
    *Monell* Liability Only Applies to Governmental Entities....................................12

III. Count III – For Purported Section 1981 Racial Discrimination – Must be Dismissed
    Because Hudson Fails to Establish a Plausible Claim of Intentional Discrimination
    Against Any Individual Defendant and Because Alleging Both Race and Gender
    Discrimination Pleads Away this Cause of Action ...............................................13

IV. The First Amendment Retaliation Claim (Count IV) Must Be Dismissed
    Because Hudson Did Not Engage In Protected Speech .........................................14

V.  Counts I through IV Against Joly Stein, Pernecke, and Ballard-Croft
    Also Must be Dismissed as Time-Barred..........................................................15

VI. Count V for FMLA Interference Must be Dismissed Because
    as an ASA Hudson Was Not Entitled to FMLA Protections and Because
    he Received the Leave he Claims he Requested ................................................16

  A. Hudson Cannot be Deemed an "Employee" Under the FMLA and Therefore
      Cannot Invoke the Act's Protections Against Joly Stein or Pernecke ................17

  B. Hudson Does Not Identify a "Serious Health Condition" For
      Purposes of the FMLA, Making Him Ineligible for its Protections Here ............18

  C. Hudson Fails to Show That he Was Denied FMLA at Any Time .......................19

VII.    Count VI, for FMLA Retaliation, Also Must be Dismissed Because
Hudson Cannot Establish Either Protected Activity of Causation ....................................20

VIII.   The Privacy Act Claim (Count VII) Should be Dismissed for the
Reasons in the Entity Defendants' Motion to Dismiss, and the
Allegations Against Cole and Coleman are Utterly Inadequate ........................................23

IX.    The Intentional Infliction of Emotional Distress Should be Dismissed
With Prejudice ..............................................................................................................24

CONCLUSION .....................................................................................................................25

**Cases**

*Alexander v. Casino Queen, Inc.*,
   739 F. 3d 972 (7th Cir. 2014) .......................................................................... 9, 10

*Americanos v. Carter*,
   74 F.3d 138, 143-44 (7th Cir. 1996) ............................................................. 17, 18

*Apuri v. Parkview Health Sys.*,
   2019 U.S. Dist. LEXIS 51533 ....................................................................... 13, 14

*Argyropoulos v. City of Alton*,
   539 F.3d 724, 734 (7th Cir. 2008) ....................................................................... 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 5, 6, 11, 23

*Bachman v. St. Monica's Congregation*,
   902 F.2d 1259 (7th Cir. 1990) ............................................................................. 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 570 (2007) ...................................................................................... 5, 6

*Blickle v. Ill. Dep't of Children & Family Servs.*,
   2013 U.S. Dist. LEXIS 80014 ............................................................................. 10

*Boyd v. Ill. State Police*,
   384 F.3d 888 (7th Cir. 2004) ............................................................................... 10

*Brooks v. Ross*,
   578 F.3d 574 (7th Cir. 2009) ................................................................................. 6

*Bunch v. Cnty. of Lake*,
   2016 U.S. Dist. LEXIS 32761 ............................................................................. 20

*Burnett v. LFW Inc.*,
   472 F.3d 471, 477 (7th Cir. 2006) ....................................................................... 16

*City of Canton, Ohio v. Harris*,
   489 U.S. 378 (1989) ............................................................................................. 13

*Cooper-Schut v. Visteon Auto. Sys.*,
   361 F.3d 421 (7th Cir. 2004) ................................................................................. 9

*Farrar v. Grochowiak*,
   2005 U.S. Dist. LEXIS 9511 ................................................................. 8

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) ............................................................... 14, 15

*General Bldg. Contractors Ass'n v. Pa.*,
   458 U.S. 375 (1982) ...................................................................... 13

*Gibbons v. Vill. of Sauk Vill.*,
   2016 U.S. Dist. LEXIS 58345 .......................................................... 10

*Goelzer v. Sheboygan Cnty., Wis.*,
   604 F.3d 987, 995 (7th Cir. 2010) ................................................... 19

*Gray v. Lacke*,
   885 F. 2d 399 (7th Cir. 1989) ............................................... 7, 10, 15

*Horwitz v. Bd. of Educ.*,
   260 F.3d 602, 606 (7th Cir. 2001) ................................................... 23

*Jackson v. Dakkota Integrated Sys., LLC* .......................................... 19

*Jones v. Metro. Water Reclamation Dist. of Greater Chi.*,
   2018 U.S. Dist. LEXIS 134708 ........................................................ 21

*Kubiak v. City of Chicago*,
   810 F.3d 476 at 480-81 (7th Cir. 2016) ..................................... 14, 15

*Licari v. City of Chi.*,
   298 F.3d 664, 667-68 (7th Cir. 2002) .............................................. 15

*Longstreet v. Ill. Dep't of Corr.*,
   276 F.3d 379, 384 (7th Cir. 2002) ................................................... 23

*McCauley v. City of Chicago*,
   671 F.3d 611 (7th Cir. 2011) ............................................................. 6

*McCullah v. Gadert*,
   344 F.3d 655 (7th Cir. 2003) ............................................................. 6

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978) ........................................................ 5, 11, 12, 13

*Nat'l Ass'n of African American-Owned Media v. Charter Communs., Inc.*,
915 F.3d 617, 2019 WL 1116317 (U.S. June 10, 2019) ........................................ 13

*Nicholson v. Pulte Homes Corp.,* 690 F.3d 819, 828 (7th Cir. 2012) ........................ 21

*Nowak v. Oce-USA, Inc.*,
2004 U.S. Dist. LEXIS 24322 ...................................................................... 22

*Oest v. Illinois Dept. of Corr.*,
240 F.3d 605 (7th Cir. 2001) ...................................................................... 9

*Opp v. Office of the State's Attorney*,
630 F.3d 616, 619 (7th Cir. 2010) ........................................................... 17, 18

*Pagel v. TIN Inc.*,
695 F.3d 622, 631 (7th Cir. 2012) ........................................................... 18, 21

*Parks v. Speedy Title & Appraisal Review Servs.*,
318 F. Supp. 3d 1053 (N.D. Ill. 2018) ........................................................ 9

*Personnel Administrator of Massachusetts v. Feeney,*
442 U.S. 256 (1979) .................................................................................. 9

*Ruckebeil v. Cancer Treatment Ctrs. Of Am., Inc.*,
2016 U.S. Dist. LEXIS 29624 ...................................................................... 21

*Saunders-El v. Tsoulos,*
1997 U.S. Dist. LEXIS 2973 ...................................................................... 8

*Shango v. Jurich,*
681 F.2d 1091, 1104 (7th Cir. 1982) .......................................................... 8

*Smiley v. Chicago,*
1991 U.S. Dist. LEXIS 11011 ...................................................................... 8

*Smith v. Hope Sch.*,
560 F.3d 694, 702 (7th Cir. 2009) ............................................................. 21

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) ...................................................................... 6

*Villars v. Kubiatowski,*
2017 U.S. Dist. LEXIS 157836 ...................................................................... 8

*W. Bend Mut. Ins. Co. v. Schumacher,*
844 F.3d 670 (7th Cir. 2016) ...................................................................... 6

*Weiler v. Vill. of Oak Lawn*,
   2016 U.S. Dist. LEXIS 12364 ................................................................ 23

*Williams v. Ill. Dep't of Corr.*,
   2006 U.S. Dist. LEXIS 64082 .................................................................. 9

**Statutes**

29 U.S.C. § 2611(11) ........................................................................... 19

29 U.S.C. § 2615(a)(2) .......................................................................... 20

29 U.S.C. § 630(f) ................................................................................ 18

29 U.S.C. § 2611(3) .............................................................................. 17

42 U.S.C. § 1981 .................................................................................. 15

42 USCS § 2000e(f) .............................................................................. 18

745 ILCS 10/8-101 (1995) ..................................................................... 24

**Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................ 6

Fed. R. Civ. P. 12(b)(6) ...................................................................... 5, 23

*INTRODUCTION*

On December 3, 2019, Defendants Kimberly Foxx (in her official and individual capacities), the Cook County State's Attorneys Office, and Cook County, Illinois ("Entity Defendants") moved to dismiss all counts in this suit against them as a matter of law. The remaining individual defendants – Jennifer Coleman (misidentified in the Amended Complaint as Jennifer Walker-Coleman), Jennifer Ballard-Croft, Joan Pernecke, Emily Cole, and Mary Joly Stein (collectively "Individual Defendants") – now move to dismiss all counts against them, as well.

## FACTS ABOUT THE INDIVIDUAL DEFENDANTS
## ALLEGED IN THE COMPLAINT

The December 3, 2019 Motion to Dismiss (Dkt. # 49) on behalf of the Entity Defendants provided a detailed explanation of the facts, such as they are, alleged in the Amended Complaint. Rather than repeat that section, the Individual Defendants incorporate by reference the fact section of the prior Motion to Dismiss (at pages 1-2) and provide below only the facts specifically alleged against them. Those facts are sparse and ultimately do not add up to any plausible claim against any of the Individual Defendants.

### A. The "Individual Defendants"

All of the Individual Defendants were added to this lawsuit for the first time in the Amended Complaint. They are:

- "Jennifer Walker-Coleman" in her official and individual capacity as "Division Chief of Staff" ("Coleman");[1]
- Jennifer Ballard-Croft, in her official and individual capacity as "Chief of Staff" (Ballard-Croft);

---

[1] As the Court is aware, there is no such person or such a role. On January 8, 2020, counsel for Plaintiff represented that she would be filing a replacement Amended Complaint identifying Jennifer Coleman as the person meant to be named as a defendant. Counsel for the other defendants will file an appearance on behalf of Ms. Coleman and this Motion to Dismiss addresses the claims against her, even though she could have taken longer to respond since she was not properly named and therefore not yet served.

- Joan Pernecke, in her official and individual capacity as "Division Chief" ("Pernecke");
- Emily Cole, in her official and individual capacity as "Supervisor" ("Cole"); and
- Mary Joly Stein, in her official and individual capacity as "Supervisor" (Joly Stein").

(Am. Cplt. Caption, pg. 1).

**B. Hudson's Allegations About 2016 Against Joly Stein and Pernecke.**

Hudson, an African American male, was appointed a Cook County State's Attorney on June 29, 2015 and remained in that position for about 2 and a half years – through December 4, 2017. (*Id.* ¶¶ 14-15). Hudson alleges that on or around September 1, 2016 a "Caucasian ASA and Supervisor, Mary Joly Stein filed an internal complaint within the State's Attorney's Office alleging Hudson was a hostile employee." (*Id.* ¶ 21). Confusingly, Hudson alleges that he asked Joly Stein to "investigate the matter" but she instead transferred him to another courtroom. (*Id.* ¶ 22). Hudson does not allege that he made any complaint of his own to Joly Stein, but he claims that in the new courtroom he "continued to experience ridicule from his co-workers" about his size. (*Id.* ¶ 23). There is no allegation that he reported this behavior to Joly Stein at any time.

The only other allegation regarding any of the Individual Defendants in 2016 is that on November 29, 2016, Joly Stein and Pernecke "attempted to place Hudson on a pretextual, preemptive [Performance Improvement Plan]" ("PIP") by means of a memo that contained "unfounded allegations that his performance required improvement." (*Id.* ¶ 24). Hudson does not allege that he suffered any loss of salary or a demotion as a result of this "attempted" PIP. He claims that he "complained that his Caucasian colleagues were not subject to such intense and harsh critique and were instead provided support and guidance." (*Id.* ¶ 25). Hudson does not say to whom such alleged complaints were made, and he provides no examples of any similarly situated ASAs from that time who he thinks were having the same performance problems he was

having and were somehow treated better. Indeed, nowhere does Hudson aver that any specific Individual Defendant engaged in such activity, let alone establish who the similarly situated ASAs were. (*See id.* ¶ 34 ("Similarly situated Caucasian and female ASAs were not treated in a similar manner.")

There are no other allegations about any of the Individual Defendants from 2016.

## C. Hudson's Allegations About 2017 Against Ballard-Croft, Coleman, and Cole.

Hudson claims that he met with the CCSAO's Chief of Staff Jennifer Ballard-Croft on or about January 23, 2017, when he complained in general about a lack of diversity in the CCSAO and about "how African-American men were made to feel." (*Id.* ¶¶ 27-28). Hudson also made personal complaints – that his colleagues made unfounded accusations about him, that unnamed supervisors and colleagues made comments about his physique, and that unnamed colleagues accused him of being aggressive. (*Id.*). It is unclear what connection these alleged events have to his race or gender. Hudson alleges that in early February 2017 he met with Ballard-Croft a second time "regarding persistent harassing behaviors from Caucasian co-workers and the hostile work environments that were created." (*Id.* ¶ 29). There is no additional detail provided as to what was harassing or what created a hostile work environment.

In July 2017, Hudson says he was "essentially unduly demoted within the Narcotics Prosecution Bureau" to an "administrative position for speaking out about the Defendants' violation of his rights to be free from discrimination and retaliation." (*Id.* ¶ 32). He does not identify which "Defendants" he is referring to in this claim, nor does he establish what "speaking out" he is referring to. The only reports he alleged up to the point of his "essential[]" demotion are his meetings with Ballard-Croft in February 2017 – six months before the alleged demotion.

Hudson alleges that on September 29, 2017 he reported harassment and discrimination by an unnamed "Caucasian female ASA" to that ASA's manager, Cole. He further alleges that thereafter Cole "conspired with 'Walker-Coleman' to precariously *[sic]* terminate Hudson" three months later. (*Id.* ¶ 32). He contends that "Walker-Coleman" tried to discipline him six days after he filed an alleged report about a Caucasian female co-worker and that at some point Coleman "attempted to place Hudson on a PIP after Hudson met with HR to follow up on his October 6, 2017 report of harassment and work-place discrimination." (*Id.* ¶¶ 37-38).[2] He also complains that Coleman threatened to report him for a "Brady violation" to the ARDC (which apparently never came to pass) and engaged in a "failed attempt to place Hudson on a PIP." (*Id.* ¶¶ 45, 51-52, 54-55).

Finally, Hudson claims that on or about October 23, 2017 he received some "tampered mail containing his private health insurance information" from Cole, "who is also friends with 'Walker-Coleman' and the Caucasian female co-worker that Hudson previously reported." (*Id.* ¶ 47). He contends, on this flimsy basis, that "Defendants Cole and 'Walker-Coleman', on belief and information, illegally and without consent of Hudson, breach *[sic]* the physical safeguards of ensuring the security and confidentiality of Hudson's private health information." *Id.* ¶ 150).

**D. FMLA Allegations Against Joly Stein and Pernecke.**

The only other allegations specific to any of the Individual Defendants in the Amended Complaint relate to alleged comments about Hudson seeking to take FMLA leave. He alleges that Joly Stein and Pernecke "chastised" him in December 2017 either for having been granted FMLA leave or for "requesting FMLA." (*Id.* ¶¶ 59). There is no allegation as to what condition he had at

---

[2] As noted in the Entity Defendants' Motion to Dismiss Memorandum, it appears that the September 29, 2017 and October 6, 2017 reports are one and the same – and refer to a fellow ASA having referred to Hudson as an "asshole." (Dkt. # 63 at pp. 7-11) *See* Am. Cplt. ¶ 45.

that time, although earlier in the complaint he notes that in March 2017 he had some sort of stress-induced back pain for which he says he was approved for FMLA leave in February 2017, many months before his employment was terminated.  (*Id.* ¶ 31).

### E.  The Eight Counts of the Amended Complaint.

The Amended Complaint is comprised of eight counts:  Count I under § 1983 for alleged violation of the Equal Protection Clause by all defendants.  (*Id.* ¶¶ 65-74).  Count II for "*Monell* Liability" under § 1983 for alleged "failure to train and supervise regarding harassment, hostile work environment & retaliation."  (*Id.* ¶¶ 75-84).  Count III under § 1981 for alleged racial discrimination in violation of the Equal Protection Clause by all defendants.  (*Id.* ¶¶ 85-100).  Count IV under § 1983 for alleged retaliation in violation of the First Amendment by all defendants.  (*Id.* ¶¶ 101-117).  Count V for alleged violation of the FMLA "through interference" – against only defendants Joly Stein, Pernecke, Cook County and the CCSAO.  (*Id.* ¶¶ 118-132). Count VI also alleges violation of the FMLA against defendants Joly Stein, Pernecke, Cook County and the CCSAO "through interference" but seems actually to be a retaliation claim.  (*Id.* ¶¶ 133-145).  Count VI is for alleged violation of the federal Privacy Act as to Defendants Cole, "Walker-Coleman," and CCSAO and Cook County.  (*Id.* ¶¶ 146-154).  And Count VIII is for alleged intentional infliction of emotional distress against all "individual defendants."  (*Id.* ¶¶ 155-161).

### STANDARD FOR A MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

This Court must dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if it fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6). Under Rule 12(b)(6), a complaint must contain allegations that "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  In considering a motion to dismiss, the Court accepts as true all *well-pleaded* factual allegations and draws all *reasonable* inferences in the Hudson's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003).  Conclusory allegations and threadbare assertions are not deemed true or afforded such an inference.  *Iqbal*, 556 U.S. at 678-81.  In *Twombly*, 550 U.S. at 555 n. 3, the Supreme Court held that Fed. R. Civ. P. 8(a)(2) requires an evidentiary "'showing' rather than a blanket assertion of relief."  In other words, Hudson's allegations must "raise a right to relief above the speculative level." *Id.* at 555.

The plausibility standard requires enough facts to "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).  Where "facts" in a complaint are legal conclusions or elements of the cause of action, they may be disregarded on a motion to dismiss.  *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681).  In ruling on a motion to dismiss, while "courts must accept a plaintiff's factual allegations as true . . . some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  "[T]he plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *W. Bend Mut. Ins. Co. v. Schumacher,* 844 F.3d 670, 675-676 (7th Cir. 2016).

As detailed below, all eight of Hudson's counts against the Individual Defendants should be dismissed because they do not state claims upon which relief can be granted.

## ARGUMENT

I.      **Count I Fails to State Any Plausible Section 1983 Equal Protection Claim Against the Individual Defendants.**

In Count I Hudson alleges that all of the defendants in this case violated the Equal Protection Clause by:

failing to (at times) investigate Caucasian Female ASA's misconduct; failing to properly discipline serious misconduct by Caucasian ASA's; failing to adequately train and supervise; and manifesting deliberate indifference to the hostile work environment, harassment, breach of privacy and discrimination of Hudson by other Caucasian ASA's, including the Defendants.

(Am. Cplt. ¶ 69.)  As detailed in the Motion to Dismiss by the Entity Defendants, the Eleventh Amendment precludes Counts I-IV as against any "official capacity defendant," all of which are brought under § 1983.  The law is clear that the CCSAO's employees in their official capacity are not "persons" who can be sued in federal court under § 1983.  (Dkt. # 49 at 3).  Accordingly this Motion addresses only whether the § 1983 counts state a claim against any of the Individual Defendants in their personal capacities.  They do not.

Hudson contends that the Equal Protection Clause "prohibits intentional discrimination" (*id.* ¶ 67) – and that indeed is the standard for such a claim.  *See, e.g., Gray v. Lacke*, 885 F. 2d 399, 414 (7th Cir. 1989) ("In order to maintain her equal protection claim, [plaintiff] must show that the [defendants] intentionally discriminated against her because of her membership in a protected class.")  But Count I fails to allege any actual intentional discrimination by the Individual Defendants.  Nowhere in the litany of alleged conduct in Paragraph 69 does Hudson identify any intentionally discriminatory act by any of the Individual Defendants that could support an Equal Protection claim against any of them.  Nor does the Amended Complaint as a whole establish any plausible claim of this necessary element of an Equal Protection cause of action.

### A.  Joly Stein and Pernecke.

The only allegations against Joly Stein and Pernecke are either from 2016 or relate to the FMLA claims in this case.  (Am. Cplt. ¶¶ 21-25 and 59).  The 2016 allegations are that an internal complaint was made about Hudson being a "hostile employee," which Joly Stein opted not to investigate – instead, she transferred Hudson to another courtroom.  Hudson further alleges that in

2016 Joly Stein and Pernecke "attempted" to place him on a PIP and says he complained (to whom, he does not say) that white colleagues were not subjected to the same level of criticism. None of these allegations support a claim that Joly Stein or Pernecke failed to investigate misconduct by any other ASA (the internal complaint was about Hudson's misconduct), discipline anyone, adequately train or supervise, or otherwise subject Hudson to a discriminatory hostile work environment – as alleged in this Count.

Moreover, there is nothing in these allegations showing that Hudson was treated differently by Joly Stein or Pernecke *because of* his membership in a protected class. *See Smiley v. Chicago*, 1991 U.S. Dist. LEXIS 11011, *14-16 (N.D. Ill. Aug. 5, 1991) (dismissed Equal Protection claim where plaintiff failed to allege disparate treatment was based on membership in a protected class). Likewise, Hudson fails to identify any actually similarly situated white ASA who somehow was treated differently by Joly Stein or Pernecke with respect to a PIP. *See Villars v. Kubiatowski*, 2017 U.S. Dist. LEXIS 157836, *30-31 (N.D. Ill. Sept. 26, 2017) (dismissing analogous 5th Amendment due process claim where plaintiff failed to identify similarly-situated individuals or that he was intentionally treated differently from members of the unprotected class).

Hudson also must show that a "defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." *See Farrar v. Grochowiak*, 2005 U.S. Dist. LEXIS 9511, at *17 (N.D. Ill. May 4, 2005); *Saunders-El v. Tsoulos*, 1997 U.S. Dist. LEXIS 2973, *8-9 (N.D. Ill. March 12, 1997) (dismissing Equal Protection claim for failure to allege any defendant acted with a discriminatory purpose). Intentional discrimination "implies that a decision maker singled out a particular group for disparate treatment and selected his course of action at least in part *for the purpose of causing its adverse effects* on the identifiable group." *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) (emphasis added). Allegations amounting to disparate impact cannot

establish that a defendant intentionally discriminated against a protected group. *See Washington v. Davis,* 426 U.S. 229, 242-45 (1976) (disparate impact is insufficient to trigger the Equal Protection Clause); *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 260 (1979) (same). Here, the only allegation is that there was some difference between how Hudson's PIP was handled and how performance problems with white ASAs were addressed – but that does not suffice to establish intentional discrimination against him based on his race.

Hudson does not contend and cannot show that the "attempted" PIP by Joly Stein and Pernecke resulted in any materially adverse employment action against him or created a hostile work environment that altered the conditions of his employment – additional requirements to state a claim. *See Williams v. Ill. Dep't of Corr.*, 2006 U.S. Dist. LEXIS 64082, *18 (N.D. Ill. 2006) ("Plaintiff must still identify an adverse employment action, even when proceeding under § 1983."); *see also Parks v. Speedy Title & Appraisal Review Servs.*, 318 F. Supp. 3d 1053, 1062 (N.D. Ill. 2018) (dismissing claim where plaintiff merely alleged corrective actions taken against him that did not result in other tangible consequences and holding that a plaintiff must allege conduct "which visits upon a plaintiff a significant change in employment status" and the actions must be more disruptive than an inconvenience or changes in job responsibilities). Negative performance evaluations and oral or written reprimands such as a PIP are not actionable in a discrimination suit absent a tangible job consequence – and none is alleged as a result of the 2016 PIP. *Oest v. Illinois Dept. of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001).

Similarly, to premise a discrimination claim on a hostile work environment, a plaintiff must allege that the conduct is "sufficiently severe or pervasive to alter the conditions of employment such that it creates an *abusive* relationship." *Alexander v. Casino Queen, Inc*., 739 F. 3d 972, 981 (7th Cir. 2014) (emphasis in original); *Cooper-Schut v. Visteon Auto. Sys*., 361 F.3d 421, 426 (7th

Cir. 2004) (A hostile work environment is one that is "permeated with *discriminatory* intimidation, ridicule, and insult") (emphasis added). Moreover, a plaintiff must show that his or her work environment was both subjectively and objectively hostile. *Alexander*, 739 F. 3d at 981; *Blickle v. Ill. Dep't of Children & Family Servs*., 2013 U.S. Dist. LEXIS 80014, *10-11 (N.D. Ill. June 7, 2013). None of the allegations in the Amended Complaint are sufficient to support either claim against Joly Stein or Pernecke.

Finally, the FMLA-related allegations against Joly Stein and Pernecke likewise have no relationship to the litany of alleged discrimination in paragraph 69 – alleged comments about taking FMLA leave have nothing to do with Hudson's race or gender. As for the FMLA retaliation claim, the Equal Protection Clause does not provide a cause of action for retaliation. Thus, any allegation that any Individual Defendants acted with a retaliatory purpose cannot support Count I (or indeed Count II). *See Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004); *Gray,* 885 F.2d at 414 (plaintiff's "right to be free from retaliation for protesting sexual harassment and sex discrimination is a right created by Title VII, not the equal protection clause."); *Gibbons v. Vill. of Sauk Vill.*, 2016 U.S. Dist. LEXIS 58345, *8 (N.D. Ill. May 3, 2016) (dismissing Equal Protection claim based on alleged retaliatory conduct).

### B. Ballard-Croft.

The only allegations in the Amended Complaint about Ballard-Croft are that she met with Hudson once in January 2017 and again in February 2017. (Am. Cplt. ¶¶ 27-29). During these meetings, Hudson says he made complaints about how male African American ASAs "were made to feel" and that colleagues had made unfounded accusations about him, that some had made comments about his physique, and had accused him of being aggressive. (*Id.*). He also complained

about "personal harassing behaviors from Caucasian co-workers and hostile work environments that were created." (*Id.*).

There is no allegation that Ballard-Croft herself engaged in discriminatory acts against Hudson – or indeed that she engaged in any act relating to Hudson in any way at all. Accordingly, Hudson has alleged no facts to plausibly establish that Ballard-Croft did (or failed to do) something *because of* his race or gender. As the Supreme Court made clear in *Iqbal*, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* 556 U.S. at 677. Section 1983 cases, of course, do not permit vicarious liability. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978). Thus, mere knowledge of complaints – which is all the Amended Complaint alleges as to Ballard-Croft – cannot establish liability under a § 1983 case. *Iqbal*, 556 U.S. at 676-77 (rejecting argument that "knowledge and acquiescence" in subordinates' conduct created supervisory liability under § 1983).[3]

### C. Cole and Coleman.

The allegations against Cole and Coleman turn on claims of supervisory liability and retaliation – neither of which, as explained above, can establish a § 1983 cause of action. Hudson contends that his reporting harassment and discrimination by a "Caucasian female ASA" to Cole led her and Coleman to conspire to "precariously" terminate his employment three months after that report. (Am. Cplt. ¶ 32). He also alleges that Coleman tried to discipline him and tried to place him on a PIP after he complained about an ASA calling him an "asshole." (*Id.* ¶¶ 37-38). He claims that Coleman threatened him with an ARDC charge, and that Cole tampered with some

---

[3] For the same reasons, Kim Foxx must be dismissed in her individual capacity since the only allegation is that she received complaints from Hudson at some time, and there is no allegation that she engaged in any personal action relating to Hudson at all, let alone intentional discrimination. (Am. Cplt. ¶49).

of his mail (and tries to tie Coleman to this alleged tampering with the meagre claim that Cole and Coleman were friends.) (*Id.* ¶¶ 45, 47, 51-52, 54-55, 150.)

Hudson does not contend that Cole or Coleman failed to investigate any claim or that they were responsible for training – or indeed how the latter can have been based on a discriminatory purpose  Indeed, there are no facts alleged as to these two defendants that plausibly show their actions were based on Hudson's race or gender.  The same holds true for the rest of the litany of alleged conduct in paragraph 69.

In sum, Count I should be dismissed with prejudice as to each Individual Defendant.

## II.     Count II Cannot Be Pleaded Against the Individual Defendants Because *Monell* Liability Only Applies to Governmental Entities.

Count II asserts *Monell* liability for failure to train and supervise regarding harassment, hostile work environment, and retaliation.  (Am. Cplt. Count II).  Hudson alleges that "all individual Defendants were 'state actors' working for Defendant CCSAO and Cook County, Illinois." (*Id.* ¶ 76.)  *Monell* liability, by definition, applies only to municipal entities and therefore cannot be brought against the Individual Defendants in their individual capacities.

As the seminal holding from *Monell* makes plain "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that *the government as an entity* is responsible under § 1983."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (emphasis added).  *Monell* liability therefore is – by definition – liability against a municipality, not against an individual.  That conclusion is underscored by the Supreme Court's treatment of *Monell* liability for "failure to train" – the alleged basis for the claim here.  "A plaintiff can also sue *a municipality* under § 1983 by showing that a municipality failed to train its employees under

12

an otherwise constitutionally sound policy." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-389 (1989) (emphasis added). To the extent that Hudson intended to bring a *Monell* claim for failure to train against any of the Individual Defendants, any such claim must therefore be dismissed with prejudice.

### III. Count III – For Purported Section 1981 Racial Discrimination – Must be Dismissed Because Hudson Fails to Establish a Plausible Claim of Intentional Discrimination Against Any Individual Defendant and Because Alleging Both Race and Gender Discrimination Pleads Away This Cause of Action.

As a threshold matter, as explained in the Entity Defendants' Motion to Dismiss, Count III can be dismissed because § 1981 claims cannot be brought against public employees. (Dkt. 49 at 2). Assuming, for the sake of argument, that Hudson meant to bring this claim via § 1983, it still must be dismissed because, like Hudson's Equal Protection claim (Count I), Count III requires a showing of intentional discrimination by each Individual Defendant. *General Bldg. Contractors Ass'n v. Pa.*, 458 U.S. 375, 396-97 (1982) (failing to ensure all races enjoy the same employment opportunities is insufficient to show intentional discrimination); *Apuri v. Parkview Health Sys.*, 2019 U.S. Dist. LEXIS 51533, *6 (N.D. Ill. 2019). Count III, as with Count I, refers to "Defendants" collectively and nowhere shows what any Individual Defendant did that was intentionally discriminatory.

Equally fatal to Count III is the assertion that "Hudson's race was *a* motivating factor" in discriminating against him. (Am. Cplt. ¶ 90, emphasis added). That is not the standard in this Circuit. Rather, race must have been the "but-for" cause of any alleged discrimination under § 1981 – it cannot be "a" motivating factor, race must be "the" motivating factor. *Bachman v. St. Monica's Congregation*, 902 F.2d 1259, 1262-63 (7th Cir. 1990).[4] Moreover, the Amended

---

[4] Notably, the question whether alleging that race was "a motivating factor" suffices to state a § 1981 claim currently is pending before the United States Supreme Court. *See Nat'l Ass'n of African American-Owned Media v. Charter Communs., Inc.*, 915 F.3d 617, *cert. granted in part*, 2019 WL 1116317 (U.S. June 10,

Complaint suggests repeatedly that Hudson believes there was a discriminatory purpose based on both the racial *and* gender differences between himself and alleged wrongdoers – albeit with nothing more. (*See, e.g.,* Am. Cplt. ¶¶ 19-20, 28, 36-37, 39). Where an adverse employment action is alleged to have been caused by factors in addition to race, a plaintiff has pleaded himself out of a § 1981 claim. *Apuri v. Parkview Health Sys.*, 2019 U.S. Dist. LEXIS 51533, *6 (N.D. Ill. 2019) ("where a plaintiff alleges that race was only one factor in an adverse employment action, he can find no relief under § 1981."). For this reason, too, Count V must be dismissed.

## IV. The First Amendment Retaliation Claim (Count IV) Must be Dismissed Because Hudson Did Not Engage In Protected Speech.

In Count IV, Hudson alleges First Amendment retaliation based on his complaints concerning "racial and gender discrimination and hostile work environment" for him and fellow African-American male employees. (Am. Cplt. ¶¶ 103, 105.) This claim must be dismissed because Hudson's alleged speech was not "protected speech" under the First Amendment. "To establish a claim for retaliation in violation of the *First Amendment*, a public employee first must prove that [his] speech is constitutionally protected." *Kubiak v. City of Chicago*, 810 F.3d 476 at 480-81 (7th Cir. 2016) (emphasis in the original). A public employee's speech is constitutionally protected only if it: (1) is made as a private citizen; and (2) addresses a matter of public concern. *Id.* "The determination of whether speech is constitutionally protected is a question of law." *Id.* at 481.

When a public employee's statements are made pursuant to his official duties, he is not speaking as a private citizen. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (deputy district attorney's allegations of unconstitutional retaliation were not protected speech). Where the alleged

2019) (oral argument heard on November 13, 2019). In the absence of a ruling on that case, this Court can and must follow the Seventh Circuit's answer to that question – such an allegation is not sufficient.

speech is "intimately connected" with the public employee's job, it is made pursuant to his official duties. *Kubiak*, 810 F.3d at 482. A public employee's complaints about co-worker misconduct or harassment in the workplace are within his official duties because he is expected to report such conduct. *See Garcetti*, 547 U.S. at 421 (complaints regarding retaliation not protected); *Kubiak*, 810 F.3d at 481-82 (dismissing First Amendment claim based on report of verbal assault by co-worker); *Davis v. Cook Cnty.*, 534 F.3d 650, 653-54 (7th Cir. 2008) (complaints about workplace harassment not protected).

Here, there is no doubt that Hudson's speech was intimately connected to his job and thus cannot be protected under the First Amendment. Because he does not allege that he reported any conduct outside of the workplace or any conduct not related to his job, and has not plausibly alleged any speech that was made outside of his official duties as a State's Attorney, Count IV must be dismissed with prejudice.

**V.      Counts I through IV Against Joly Stein, Pernecke, and Ballard-Croft Also Must be Dismissed as Time-Barred.**

Hudson filed the Amended Complaint on October 31, 2019, adding the Individual Defendants and for the first time alleging § 1983 claims for violations of the Equal Protection Clause (Counts I & II), 42 U.S.C. § 1981 (Count III), and the First Amendment (Count IV). The statute of limitations for such § 1983 claims is two years, and the Court may dismiss claims where it is apparent on the face of the complaint that they are time-barred. *Licari v. City of Chi.*, 298 F.3d 664, 667-68 (7th Cir. 2002); *see also Gray*, 885 F.2d at 409 (precluding plaintiff from using allegations of time-barred conduct to support First Amendment and Equal Protection claims). Thus, Hudson cannot pursue these claims against the Individual Defendants for any conduct prior to October 31, 2017.

Insofar as these counts are concerned, all of the allegations against Joly Stein, Ballard-Croft, and Pernecke concern conduct or reports that occurred before October 31, 2017. The non-FMLA allegations as to Joly Stein and Pernecke all took place in 2016; and Hudson's meetings with Hudson were in January and February 2017. Counts I, III, and IV thus should be dismissed with respect to these three Defendants as entirely time-barred.

## VI. Count V for FMLA Interference Must be Dismissed Because as an ASA Hudson Was Not Entitled to FMLA Protections and Because he Received the Leave he Claims he Requested.

The Amended Complaint alleges that on or around March 24, 2017, "Hudson began receiving treatment for stress-induced back pain and was discouraged from exercising his right to take leave for medical treatment." (Am. Cplt. ¶ 31). This is the only allegation Hudson makes regarding any medical issues he experienced that may have led to a request for FMLA leave. Count V alleges that he was "approved" for FMLA leave in February 2017, and that "Defendants" responded by saying "I have never had someone take leave like this in my … years of working here." (*Id.* ¶ 122). He alleges that approximately nine months later, on December 1, 2017, following an approved FMLA leave by HR, he was "chastised for no legitimate reason by Defendants Joly Stein and Pernecke by stating 'this is unacceptable!" (*Id.* ¶ 123). What Hudson does not plead is that he ever failed to take any allegedly approved leave. It is unclear whether he requested more than one leave, and if there was a second leave request, what it was for and when he requested it.

"In order to prevail on an interference claim, the employee must establish that: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Burnett v. LFW Inc.*, 472

F.3d 471, 477 (7th Cir. 2006).  Hudson cannot establish that Pernecke or Joly Stein, the only individual defendants named in this count, interfered with any FMLA leave because the Amended Complaint does not satisfy any of these elements of an interference claim as a matter of law and of fact.  As an ASA, Hudson was not covered by the FMLA (even if his employer chose to grant medical leave) and in any event, the Amended Complaint does not identify what serious health condition he had that would qualify him for such leave.  Nor does Hudson aver, as he must, that his employer denied any FMLA leave request.

### A. Hudson Cannot be Deemed an "Employee" Under the FMLA and Therefore Cannot Invoke the Act's Protections Against Joly Stein or Pernecke.

As detailed in the first Motion to Dismiss in this case (Dkt. # 49), the Seventh Circuit firmly has established that Cook County Assistant State's Attorneys ("ASA") like Plaintiff are not "employees" under the definition of that term in federal employment statutes.  *Opp v. Office of the State's Attorney*, 630 F.3d 616, 619 (7th Cir. 2010) (Cook County ASAs are appointees on the policy making level under the ADEA and cannot sue under that statute because they are not "employees"); *Americanos v. Carter*, 74 F.3d 138, 143-44 (7th Cir. 1996) (Indiana deputy attorney general could not bring either Title VII or ADEA claim because both statutes "exempt certain public officials from their protections" and the employee fell within the "appointee" exemption.)

The same analysis applies to claims by an ASA like Hudson under the FMLA.  Under the FMLA, the term "employee" has "the same meaning[] given such term in subsection[] . . . (e) . . . of section 3 of the Fair Labor Standards Act of 1938."  29 U.S.C. §2611(3).  The Fair Labor Standards Act of 1938 defines an individual employed by a public agency as an "employee" for purposes of the Act as:

(C)    any individual employed by a State, political subdivision of a State, or an interstate governmental agency, **other than such an individual—**

(i)     who is not subject to the civil service laws of the State, political subdivision, or agency which employs him; and

(ii)     **who**. . . . (III) **is appointed by such an officeholder to serve on a policymaking level.**

29 U.S.C. § 203(e)(1)(C) (emphasis added).[5]

Applying this language, *Opp* and *Americanos* held unequivocally that government workers like Hudson fall within the "policy-making appointee" exception to the definition of "employee" and thus do qualify as employees under any statute using this definition. The same analysis must apply here because the term "employee" is defined in exactly the same way in the FMLA as in Title VII and the ADEA – and the same exception to that term applies to Hudson. Because ASAs are not "employees" for purposes of FMLA claims, Hudson cannot establish that he was eligible for FMLA protections by this Court, and for this reason alone both Counts V and VI must be dismissed.[6]

## B. Hudson Does Not Identify a "Serious Health Condition" for Purposes of the FMLA, Making Him Ineligible for its Protections Here.

Even if Hudson were deemed an employee under the FMLA, an employee must have a "serious health condition" to be eligible for FMLA leave – and the Amended Complaint fails to make such a showing. *Pagel v. TIN Inc.,* 695 F.3d 622, 631 (7th Cir. 2012) ("An employee is entitled to FMLA leave if she suffers from a serious health condition that makes the employee unable to perform the functions of the position of such employee."). Such a condition is defined

---

[5] Title VII and the ADEA include the exact same definition of "employee": "The term 'employee' means an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level." 42 USCS § 2000e(f) (Title VII); 29 U.S.C. § 630(f).

[6] The fact that Hudson alleges that FMLA leave was granted to him does not change this conclusion. ASAs may well receive leave for medical conditions as a benefit, but because they cannot be deemed "employees" under the statute, Hudson is not entitled to sue for interference or retaliation under the statute because he did not qualify for the legal protections of the FMLA.

as "an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

In *Jackson v. Dakkota Integrated Sys., LLC*, the Court dismissed plaintiff's FMLA interference claim because plaintiff made only one, bare-bones allegation involving her health: that she "called off work to see her physician regarding treatment for a serious health condition." 2015 U.S. Dist. LEXIS 29600, *4-5 (N.D. Ill.) (citing 29 C.F.R. § 825.115). Here, likewise, Hudson's only allegation regarding any "serious health condition" or any medical issue at all involves "treatment for stress-induced back pain." (Am. Cplt. ¶ 31). This bare-bones allegation does nothing to allege medical treatment in a hospital or continued treatment of any kind. In short, Hudson has not alleged a serious health condition sufficient to trigger FMLA protections.

**C. Hudson Fails to Show That he Was Denied FMLA Leave at Any Time.**

Hudson also fails to plead that his employer denied him FMLA benefits to which he was entitled – another required element for an interference claim. Hudson alleges that he was "approved for leave pursuant to FMLA" in February 2017 – before his alleged treatment for back pain in March 2017. (*Id*. ¶ 122). Later, Hudson contends that "on December 1, 2017, *following an approved FMLA leave by HR*, Hudson was chastised for no legitimate reason…" (*Id.* ¶ 123.) Hudson also complains that he was chastised "in regards to *FMLA granting* of medical leave for Hudson…" (*Id.* ¶ 59, emphasis added.) There is no allegation that Hudson ever was *denied* FMLA leave – an absolute requirement for an FMLA interference claim. *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 995 (7th Cir. 2010) ("The difference between an FMLA retaliation claim and an interference claim is that the former 'requires proof of discriminatory or retaliatory intent,'

while the latter '*requires only proof that the employer denied the employee his or her entitlements under the Act*.'"). (Emphasis added).

The Amended Complaint, by its terms, thus pleads away any assertion that Hudson was denied FMLA leave. Hudson's FMLA interference claim must therefore be dismissed. *Bunch v. Cnty. of Lake*, 2016 U.S. Dist. LEXIS 32761, *15 (N.D. Ill. 2016) ("Because, as pleaded, Bunch's specific allegations are inconsistent with an FMLA interference claim, as they suggest that Bunch received all the FMLA leave to which he was entitled, the Court dismisses his FMLA claim.").

## VII. Count VI, for FMLA Retaliation, Also Must be Dismissed Because Hudson Cannot Establish Either Protected Activity or Causation.

Although Hudson captions Count VI as "Violation of FMLA Through Interference," the allegations in this count reference 29 U.S.C. § 2615(a)(2), which is the anti-retaliation provision of the statute. (Am. Cplt. ¶ 134.) Accordingly, this Motion treats Count VI as a retaliation, not an interference, claim. Just as with the interference claim, however, Count VI fails to state a cause of action. In this Count, Hudson claims that he "invoked his right to FMLA benefits on multiple occasions and more recently in *[sic]* December 1, 2017. (*Id.* ¶ 135). Hudson does not say to whom or how he "invoked" his right to FMLA benefits in December – but he says he was terminated on December 4, 2017 "after providing notice to" Joly Stein and Pernecke. (*Id.* ¶ 136). Hudson claims that his termination "was causally connected to his invocation of his FMLA . . . as he had previously complained of numerous false allegations, discrimination based on his race and gender, hostile working conditions against him by Caucasian colleagues, supervisors and Chiefs." (*Id.* ¶ 137). Count VI continues in this vein, arguing he "endured" race discrimination (*id.* ¶ 138) and contends and that "Defendants" were acting pursuant to some sort of policy or custom (*id.* ¶ 142) – apparently confusing an FMLA claim with a municipal liability claim under Section 1983.

As a threshold matter, to establish a claim for FMLA retaliation, a plaintiff must first show he is entitled to FMLA benefits. *Pagel v. TIN Inc.,* 695 F.3d at 631 ("To succeed [on an FMLA retaliation claim], [Plaintiff] must of course be entitled to FMLA benefits."). Because, as detailed above, Hudson does not qualify as an employee and does not establish any serious health condition in the Amended Complaint, he cannot show he was eligible for FMLA protections.

Even if Hudson somehow could clear this hurdle, to properly state an FMLA retaliation claim, he must plead: (1) that he engaged in a statutorily protected activity; (2) that his employer took a materially adverse action against him; and (3) a causal connection between the two – *i.e.* between his activity and a materially adverse action. *Ruckebeil v. Cancer Treatment Ctrs. Of Am., Inc.*, 2016 U.S. Dist. LEXIS 29624, *7-8. The Amended Complaint fails to establish the first or third element of a retaliation claim.

*First*, Hudson fails to plead that he made a request for FMLA, what the alleged leave was for, to whom he made such a request, or that he actually took FMLA leave near the time of his termination. The only allegation is the vague claim that he "invoked his right to FMLA benefits." Without such allegations, Hudson fails to satisfy the first element of an FMLA retaliation claim, that he engaged in "statutorily protected activity." *Jones v. Metro. Water Reclamation Dist. of Greater Chi.*, 2018 U.S. Dist. LEXIS 134708, *15 (N.D. Ill.) (dismissing complaint where plaintiff failed to sufficiently allege that she requested or put employer on notice that she was requesting leave to begin on or after her eligibility date); *see also Nicholson v. Pulte Homes Corp.,* 690 F.3d 819, 828 (7th Cir. 2012) (retaliation claim failed where employee failed to show he engaged in FMLA-protected activity); *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009) (employee could not have been fired for asserting rights under the FMLA where her request for leave was not protected).

*Second*, the Amended Complaint fails to show any causal connection between seeking FMLA leave and Hudson's termination.  The Amended Complaint alleges, utterly illogically, that "Hudson's termination was causally connected to his invocation of his FMLA, *inter alia*, as he had previously and continuously complained of numerous false allegations, discrimination based on his race and gender, hostile working conditions against him by Caucasian colleagues, supervisors and Chiefs."  (*Id.* ¶ 137.)   This allegation demonstrates no connection at all between Hudson taking or seeking FMLA leave and his termination.  Instead, Hudson argues that his termination was in retaliation for his complaints about alleged "false allegations," "discrimination," and "hostile working conditions against him by Caucasian colleagues, supervisors and Chiefs" – which have nothing to do with FMLA – and therefore fails to plead a causal connection between any FMLA leave and his termination.  *Nowak v. Oce-USA, Inc.*, 2004 U.S. Dist. LEXIS 24322, *1 (N.D. Ill) (finding no causal link between FMLA and termination where supervisor made stray comments about the plaintiff's allotted leave time).

Nor, indeed, does this allegation have anything to do with Defendants Pernecke or Joly Stein.  The only allegation about FMLA retaliation against these two individual defendants is that one or both of them said "this is unacceptable" on December 1, 2017 about Hudson planning to take an FMLA leave.  (*Id.* ¶ 59).  Neither is alleged to have been made aware of Hudson's complaints anywhere near that time, and indeed, the only other allegations about these defendants with regard to Hudson are from September and November 2016, when he alleges Joly Stein moved him to another courtroom and both "attempted" to place him on a performance improvement plan.  (*Id.* ¶¶ 21, 22, 24).  Setting aside the illogic of using complaints about work environment to establish an FMLA retaliation claim, a gap of over a year between the acts complained of and a termination cannot establish a causal connection for a retaliation claim.  *Argyropoulos v. City of*

*Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (seven-week interval was not sufficient to demonstrate causation for Title VII retaliation claim); *Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) (four-month gap was insufficient to establish retaliation); *Horwitz v. Bd. of Educ.*, 260 F.3d 602, 606 (7th Cir. 2001) (6-month gap in time between plaintiff's lawsuit and her termination could not establish a causal connection); *Weiler v. Vill. of Oak Lawn*, 2016 U.S. Dist. LEXIS 12364 (N.D. Ill. Feb. 2, 2016) (four-month interval "is too long under governing Seventh Circuit authority to support a reasonable inference of causation without other evidence").

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Hudson provides no facts in the Amended Complaint permitting any inference that Pernecke or Joly Stein retaliated against him for taking FMLA leave.

## VIII. The Privacy Act Claim (Count VII) Should be Dismissed for the Reasons in the Entity Defendants' Motion to Dismiss, and the Allegations Against Cole and Coleman are Utterly Inadequate.

Count VII, against Cole and Coleman only, should be dismissed for the same reasons provided in the Entity Defendants' Motion to Dismiss (Dkt. # 49 at 4) – namely, that the federal Privacy Act does not apply to state actors at all. Even if that were not the case, the allegations against Cole and Coleman are so thin that they cannot possibly establish a breach of Hudson's privacy in any way. All he alleges is that he received some mail that had been opened, Hudson presumes by Cole. (Am. Cplt. ¶ 47). Hudson provides no facts showing that the information in the mail qualified as private under the Act, nor does he allege anything suggesting Cole looked at the contents of the mail. The allegations against Coleman are even less compelling. The only basis on which Hudson connects Coleman to the mail is that he imagines she and Cole are

"friends." (*Id.*). His "belief and information" allegation in Count VII that these two defendants "breach the physical safeguards of ensuring the security and confidentiality of Hudson's private health information" thus has no legitimate basis at all. This wholly improper claim must be dismissed with prejudice.

## IX. The Intentional Infliction of Emotional Distress Should be Dismissed With Prejudice.

The Individual Defendants incorporate by reference Section VIII of the Motion to Dismiss filed by the Entity Defendants (Dkt. 49, at pages 4-5). Just as none of Hudson's allegations against the Entity Defendants rise to the level required for a claim of Intentional Infliction of Emotional Distress under Illinois law, none of the allegations against the Individual Defendants does so either. As discussed above, Hudson's allegations against the Individual Defendants include that they "placed him on a pretextual PIP," filed a complaint against him alleging that Hudson was "a hostile employee," "chastised" him for taking FMLA leave, tampered with his mail, and "threatened" to report him for a "Brady violation." None of this conduct satisfies the high pleading standards for an intentional infliction of emotional distress claim in this state.

Moreover, as detailed in the Entity Defendant's Motion to Dismiss (Dkt. 49, at pages 4-5), the Individual Defendants, as employees of a local government agency, are subject to the Local Government and Governmental Employees Tort Immunity Act, which bars any "civil action" against a "local entity *or any of its employees* for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101 (1995). Hudson alleges that he was terminated on Dec. 4, 2017. (*Id.* ¶ 1). The Amended Complaint was filed on October 31, 2019, more than one year after his termination. This claim thus can and should be dismissed as time barred.

## <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons further stated in the Entity Defendants' Motion to Dismiss and Memorandum in Support, the Individual Defendants ask the Court to grant their Motion to Dismiss all counts of the Amended Complaint against them.


Dated:  January 13, 2020                    Respectfully submitted,


                                             /s/ Sarah R. Marmor
                                             Sarah R. Marmor
                                             Suzanne Milne Alexander
                                             Morgan G. Churma
                                             SCHARF BANKS MARMOR LLC
                                             333 West Wacker Drive, Suite 450
                                             Chicago, IL 60606
                                             Ph. 312-726-6000

                                             smarmor@scharfbanks.com
                                             salexander@scharfbanks.com
                                             mchurma@scharfbanks.com