**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRANDON HUDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18-cv-08243 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| KIMBERLY M. FOXX, Cook County | ) | |
| State's Attorney in Her Official | ) | |
| and Individual Capacity, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Brandon Hudson is a former Assistant State's Attorney ("ASA") with the Cook County State's Attorney's Office ("CCSAO"). Hudson alleges that while he was working at the CCSAO, his supervisors and his coworkers subjected him to constant harassment and bullying because he is an African-American man. Based on the mistreatment Hudson claims he endured at the CCSAO, he has brought an eight-count First Amended Complaint ("FAC"), setting forth claims under 42 U.S.C. § 1983; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the Privacy Act, 5 U.S.C. § 552a; and for intentional infliction of emotional distress ("IIED"). (Dkt. No. 37.) The FAC names as Defendants the CCSAO, Cook County State's Attorney Kimberly M. Foxx, in her official and individual capacities, and Cook County ("Entity Defendants"), along with Jennifer Coleman,[1] Jennifer Ballard-Croft, Joan Pernecke, Emily Cole, and Mary Joly Stein, all named in both their official and individual capacities ("Individual Defendants"). Now, Entity Defendants and Individual Defendants have each filed motions to dismiss the FAC. (Dkt. Nos. 49, 69.) For the reasons that follow, the motions are granted.

---

[1] Jennifer Coleman is misidentified in the FAC as Jennifer Walker-Coleman. The Court will refer to her by her proper name.

## BACKGROUND

For the purposes of the motions to dismiss, the Court accepts all well-pleaded facts in the FAC as true and views those facts in the light most favorable to Hudson as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Hudson is an African-American man who began working as an ASA with the CCSAO on June 29, 2015. (FAC ¶¶ 1, 14–15.) Over the course of his tenure at the CCSAO, beginning shortly after his employment, Hudson claims that he experienced numerous incidents of harassment and other discriminatory conduct at the hands of his coworkers. (*Id.* ¶¶ 18, 69.) First, on August 25, 2015, a white female ASA compared Hudson an African-American male murder suspect who, during a live television broadcast, murdered two of his white journalist colleagues. (*Id.* ¶ 19.) The next day, that same coworker accused Hudson of violating the State's Attorney's Employee Handbook, an allegation that Hudson's supervisors later determined to be unfounded. (*Id.* ¶ 20.) That same month, a different white ASA filed an internal complaint alleging that Hudson was engaged in the unauthorized practice of law. (*Id.* ¶ 35.) However, after an investigation, the complaint was determined to be baseless. (*Id.*)

Beginning around June 2016, Hudson's coworkers repeatedly invaded his personal space by logging into his voicemail and deleting messages and sneaking into his office to move around his belongings. (*Id.* ¶ 26.) In September 2016, another white ASA filed an internal complaint alleging that Hudson was a "hostile employee." (*Id.* ¶ 21.) When Hudson asked his supervisor, Defendant Joly Stein, to investigate the matter, she refused and instead transferred Hudson to a different courtroom. (*Id.* ¶ 22.) Following his reassignment, Hudson continued to experience harassment from his coworkers, who made fun of Hudson because of his size and told him that he would be able to beat up a coworker in a fight. (*Id.* ¶ 23.) On November 29, 2016, a week before

he was set to try one of his cases, Joly Stein and Defendant Pernecke sought to place Hudson on a

performance improvement plan ("PIP")[2] predicated on baseless allegations of his deficient

performance. (*Id.* ¶ 24.) In response, Hudson complained that his white colleagues were not as

harshly criticized as he was and instead received support and guidance. (*Id.* ¶ 25.) Moreover,

when Hudson did seek out training and guidance, his efforts were met with resistance and led to

accusations that he was "difficult." (*Id.* ¶ 33.)

Hudson reported his colleagues' ongoing harassment and raised concerns about the lack of

diversity in the CCSAO to Defendant Ballard-Croft, the Cook County State's Attorney's Chief of

Staff. (*Id.* ¶ 27.) Specifically, Hudson complained that African-American male ASAs were made

to feel out of place at the CCSAO and were set up to fail due to the bullying they faced from their

non-African-American colleagues or were pushed out of their jobs based on unfounded

allegations of misconduct. (*Id.* ¶ 28.) In addition, he also told Ballard-Croft that his supervisors

and coworkers made inappropriate comments about his physique and improperly accused him of

being "aggressive." (*Id.*) Yet, even after following up with Ballard-Croft, Hudson received no

response. (*Id.* ¶¶ 29–30.) Consequently, he turned to Human Resources, informing it that his

coworkers' bullying and harassment had created a hostile work environment that caused him

physical and psychological distress. (*Id.* ¶ 30.)

As a result of his colleagues' harassment, Hudson began to experience stress-induced back

pain. (*Id.* ¶ 31.) By late March 2017, the pain became so severe that Hudson required medical

treatment. (*Id.*) However, his supervisor discouraged him from taking FMLA leave to seek

---

[2] Hudson's FAC refers to performance improvement plans only by the acronym "PIP" without ever specifying the phrase being abbreviated. However, Entity Defendants explain in their motion to dismiss that "PIP" refers to a performance improvement plan. (Entity Defs.' Mem. in Supp. of Mot. to Dismiss at 6, Dkt. No. 63.)

treatment and instead told him to do it "on his own time."[3] (*Id.*) Moreover, his complaints about his colleagues' behavior yielded no positive changes in his work environment. (*Id.* ¶ 32.) To the contrary, in July 2017, Hudson was demoted to an administrative position in retaliation for speaking out about his colleagues' behavior. (*Id.*) Beginning around October 2017, Hudson's coworkers escalated their mistreatment of him. (*Id.* ¶ 45.) On two separate occasions, a white ASA yelled at Hudson and became aggressive after Hudson made routine inquiries concerning criminal matters to which they were both assigned. (*Id.* ¶ 40.) Another white female ASA, Sara Kaufman, engaged in a pattern of harassing, bullying, and threatening conduct toward Hudson. (*Id.* ¶ 43.) On October 6, 2017, after Kaufman called Hudson an asshole, Hudson filed a complaint about her conduct with Human Resources. (*Id.* ¶¶ 38, 41, 45; FAC, Ex. 4, Dkt. No. 37-1.)

During this period, Defendants Coleman and Cole, both individuals with supervisory authority,[4] conspired to get Hudson fired after he informed Cole of the harassment to which he was subjected by her supervisee, Kaufman. (FAC ¶ 36.) Shortly thereafter, Coleman attempted to discipline Hudson but could not cite any deficiency warranting disciplinary measures. (*Id.* ¶ 37.) Coleman also threatened to report Hudson to Illinois's Attorney Registration and Disciplinary Commission based on a false claim that he violated *Brady v. Maryland*, 373 U.S. 83 (1963), with respect to a case in which he had no involvement. (*Id.* ¶¶ 45, 51–52.) Around the same time, Cole tampered with Hudson's mail containing his private health insurance information. (*Id.* ¶¶ 47–48.)

---

[3] Hudson does not provide the name of the supervisor who discouraged him from taking leave.

[4] The FAC is unclear as to Coleman's position at the CCSAO. In the caption, Coleman is identified as "Division Chief of Staff," but in the section of the FAC identifying the parties, Coleman is identified as the CCSAO Chief of Staff. (FAC ¶ 9.) The caption also identifies Ballard-Croft as "Chief of Staff" and, in the body of the FAC, she is alleged to be the CCSAO Chief of Staff (*id.* ¶ 27), although she is not listed in the section identifying the parties. While the briefs fail to clarify the precise position Coleman held, it appears that Individual Defendants agree that Ballard-Croft was the CCSAO Chief of Staff. Thus, for present purposes, the Court accepts that Coleman held a position that gave her supervisory authority over Hudson.

Then, after Hudson met with Human Resources to follow up on his complaint regarding Kaufman, Coleman attempted to place Hudson on a PIP, which failed to state how Hudson's performance needed improvement and did not comply with Human Resources' requirements for PIPs. (*Id.* ¶¶ 38, 54.) In late November 2017, Human Resources responded to Hudson about his complaint, stating that Kaufman would be subject to undisclosed discipline. (*Id.* ¶ 42; FAC, Ex. 4.) Yet Hudson claims that Kaufman was never disciplined for her misconduct, and indeed, continued to harass him throughout the duration of his employment at the CCSAO. (FAC ¶¶ 42–43.)

On October 23, 2017, Hudson discussed the harassment he was experiencing at the CCSAO with a former coworker. (*Id.* ¶ 46.) That coworker expressed her belief that Hudson was being treated like he was inferior because he was African American even though he knew "this stuff better than any of them." (*Id.*) About a month later, Defendant Foxx acknowledged that she had "received an unprecedented number of workplace harassment and discrimination complaints" and would therefore "address this issue and begin mandatory trainings." (*Id.* ¶ 49.) Upon hearing this acknowledgment from Foxx, Hudson informed her of his experience with harassment and discrimination during his tenure at the CCSAO. (*Id.*)

Despite his supervisor's earlier discouragement, Hudson ultimately submitted a request for FMLA medical leave to Human Resources, which was approved on December 1, 2017. (*Id.* ¶¶ 31, 59.) When Hudson informed Joly Stein and Pernecke of his impending leave that same day, they told him his request was "unacceptable" and chastised him for seeking medical leave "for no legitimate reason." (*Id.* ¶ 59.) Shortly thereafter, Hudson received notice, dated December 4, 2017, that his employment at the CCSAO would be terminated effective March 4, 2018.[5] (*Id.*

---

[5] The notice of termination contains a typo and lists March 4, 2017, as the effective date of his termination but all parties agree that Hudson's termination was effective March 4, 2018.

¶¶ 56, 60; FAC, Ex. 5, Dkt. No. 37-2.) Later, Hudson would discover that his employment file contained a November 8, 2017 PIP to which he was never given the opportunity to respond. (FAC ¶ 57.)

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

The eight-Count FAC sets forth four claims under 42 U.S.C. § 1983,[6] two claims under the FMLA, 29 U.S.C. § 2615, one claim under the Privacy Act, 5 U.S.C. § 552a, and one state-law claim for IIED. Entity Defendants and Individual Defendants each have filed motions to dismiss that, together, seek the dismissal with prejudice of the FAC in its entirety. Before the Court reaches the merits of any of the claims, it first addresses Entity Defendants' Eleventh Amendment

---

[6] Although Count III of the FAC purports to set forth a claim under 42 U.S.C. § 1981, in his responses to the motions to dismiss, Hudson acknowledges that Defendants are correct that § 1981 has no application in the public employment context. (Pl.'s Opp'n to Entity Defs.' Mot. to Dismiss at 9 n.2, Dkt. No. 66; Pl.'s Opp'n to Individual Defs.' Mot. to Dismiss at 12–13, Dkt. No. 80); *see Campbell v. Forest Pres. Dist. of Cook Cty.*, 752 F.3d 665, 671 (7th Cir. 2014) ("[Section] 1983 remains the exclusive remedy for violations of § 1981 committed by state actors."). Nonetheless, Hudson states that the FAC lists § 1981 in error and requests that Count III be construed to set forth a claim under § 1983 instead. The Court will do so, because requiring an amendment would serve no purpose when the FAC provides all the necessary information for the Court to evaluate the viability of Count III under § 1983. *See Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error.").

arguments, as well as both Entity Defendants and Individual Defendants' contentions that certain claims are time-barred.

## I.     Eleventh Amendment

Entity Defendants argue that the § 1983 and the FMLA claims should be dismissed as to the CCSAO as well as to any other Defendant sued in their official capacity because they are state actors protected by Eleventh Amendment sovereign immunity. The Supreme Court has held that under the Eleventh Amendment, "an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Under this view of the Eleventh Amendment, "a state cannot be sued in federal court for monetary damages or equitable relief." *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 291 (7th Cir. 1993). The Eleventh Amendment's prohibition extends to state agencies and state officials acting in their official capacities. *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994). "However, a state's sovereign immunity is not absolute. In some cases, a suit against a state or its officials may proceed despite the Eleventh Amendment's proscription." *Ameritech Corp. v. McCann*, 297 F.3d 582, 585 (7th Cir. 2002). For example, a suit may proceed against a state where it has waived its sovereign immunity and consented to suit in federal court or where Congress has used its enforcement powers under the Fourteenth Amendment to abrogate the states' sovereign immunity. *Id.* In addition, under the doctrine announced by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), "a private party can sue a state officer in his or her official capacity to enjoin prospective action that would violate federal law." *Dean Foods Co. v. Brancel*, 187 F.3d 609, 613 (7th Cir. 1999).

### A.     Section 1983 Claims

Hudson has brought his § 1983 claims against all Defendants, including against both Foxx and all Individual Defendants in their official capacities. First, as to the CCSAO, the Illinois Supreme Court has held that State's Attorneys are state officials. *Garcia*, 24 F.3d at 969. Consequently, § 1983 claims against the CCSAO and Foxx acting in her official capacity as Cook County State's Attorney cannot be maintained insofar as they seek monetary relief. *Id.*; *Houston v. Markey*, No. 06 C 5773, 2007 WL 9814723, at *3 (N.D. Ill. May 30, 2007). Similarly, the § 1983 claims for monetary relief against Individual Defendants in their official capacities must also be dismissed. *Orange v. Burge*, No. 04 C 0168, 2005 WL 742641, at *17 (N.D. Ill. Mar. 30, 2005).

While Hudson does not deny that the Eleventh Amendment applies to his § 1983 claims for monetary relief, he nonetheless argues that his claims should not be dismissed because he is seeking prospective injunctive relief and therefore the *Ex parte Young* doctrine applies. Specifically, Hudson seeks an injunction against the CCSAO and Cook County to:

> take effective steps to prevent race and gender discrimination and harassment . . .; fully investigate conduct that may constitute race and gender discrimination and harassment, appropriately respond to all conduct that may constitute race and gender harassment and discrimination; and mitigate the effects of harassments, discrimination, and/or retaliation by eliminating any hostile environment that may arise from or contribute to it.

(FAC at p. 25.) "While *Ex parte Young* allows a suit for injunctive relief to be brought in federal court against a state official acting in his or her official capacity, it is clear that *Ex parte Young* does not allow a State or its departments to be directly joined as parties." *Am. Soc'y of Consultant Pharmacists v. Patla*, 138 F. Supp. 2d 1062, 1070–71 (N.D. Ill. 2001). For that reason, the § 1983 claims must be dismissed as to the CCSAO. Moreover, the FAC contains no allegations of unlawful conduct specific to Cook County. And because the Cook County State's Attorney is an

independently elected official who is not answerable to the Cook County Board of Commissioners, the FAC fails to plead that Cook County has any authority to implement any injunctive relief that might be ordered. *See Jones v. Takaki*, 153 F.R.D. 609, 612 (N.D. Ill. 1993). Therefore, the § 1983 claims must be dismissed as to Cook County as well.

Even though the FAC directs its request for injunctive relief to only the CCSAO and Cook County, the Court will nonetheless determine whether Hudson has adequately stated a § 1983 claim for prospective relief against Foxx and Individual Defendants. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Notably, here, Hudson does not seek reinstatement, a commonly granted form of prospective relief that is not barred by the Eleventh Amendment. *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986). Rather, he only requests that the CCSAO take steps to investigate and remedy the hostile work environment there. But absent any request for reinstatement, Hudson does not have standing to seek such relief because he does not face any immediate risk of being subject to further harassment and bullying at the CCSAO. *Doe v. Purdue Univ.*, 928 F.3d 652, 666 (7th Cir. 2019). Instead, Hudson seeks to "champion the rights of other" ASAs, which even if altruistic is still a "no-go" as he "plainly lacks standing to assert the Fourteenth Amendment rights of other" CCSAO employees. *Id.* Consequently, the § 1983 claims must be dismissed as to Foxx and Individual Defendants in their official capacities.[7]

---

[7] Count II of the FAC is a claim for failure to train and supervise brought under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). However, *Monell* "applies only to municipalities and not states or states' departments." *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748–49 (7th Cir. 2005). That claim is therefore dismissed in its entirety.

### B.   FMLA Claims

Also subject to the Eleventh Amendment are Hudson's claims under the FMLA, 29 U.S.C. § 2615, against the CCSAO, Cook County, Joly Stein, and Pernecke. He contends that those Defendants interfered with his ability to exercise his right under the FMLA's "self-care" provision, 29 U.S.C. § 2612(a)(1)(D), to take leave on account of a serious health condition that made him unable to perform his employment duties, and retaliated against him for attempting to do so. The Supreme Court has held that Congress did not validly abrogate the states' sovereign immunity for claims brought under the FMLA's self-care provision. *Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 43–44 (2012). Moreover, Hudson does not seek any injunctive relief in connection with his FMLA claims, and even if he did, as with his § 1983 claims, he would lack standing to seek such relief. Consequently, his claims under the FMLA are dismissed as to the CCSAO and Cook County, and as to Joly Stein and Pernecke in their official capacities.

### II.   Statute of Limitations

Entity Defendants and Individual Defendants argue that certain of the claims against them are time-barred. Generally, a complaint need not state all facts necessary to overcome an affirmative defense, which is why it is "irregular to dismiss a claim as untimely under Rule 12(b)(6)." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (internal quotation marks omitted). Dismissal on statute of limitations grounds at the pleading stage may be warranted, however, when a plaintiff pleads facts that effectively establish the defense. *Id.* Here, both Entity Defendants and Individual Defendants contend that the FAC plainly reveals that the IIED claim is based on an injury that occurred outside of the one-year statute of limitations applicable to state-law actions against a local entity or any of its employees. In addition, Individual Defendants claim

that the two-year statute of limitations applicable to § 1983 claims had run as to the claims against Joly Stein, Pernecke, and Ballard-Croft.

A.   **IIED Claim**

Entity Defendants and Individual Defendants assert that the applicable statute of limitations for the IIED claim is set out in Illinois's Local Governmental and Governmental Employees Tort Immunity Act. That statute provides that, with certain exceptions, no civil action may "be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a). Here, Hudson was terminated effective March 4, 2018, and the FAC was filed on October 31, 2019. Thus, the FAC was filed more than a year after the latest date that Hudson could have been subject to harassment while employed at the CCSAO.

In his response, Hudson argues that the statute of limitations should be tolled and that the FAC should be deemed to relate back to the original complaint, which was filed within the statute of limitations. While those arguments would fail, the Court declines to dismiss the IIED claim as time-barred based on another ground that Hudson failed to raise but the Court cannot ignore. The one-year statute of limitations in the Local Governmental and Governmental Employees Tort Immunity Act applies only to a "local entity." 745 ILCS 10/8-101(a). But the definition of "local public entity" expressly excludes "the State or any office, officer, department, division, bureau, board, commission, university or similar agency of the State." 745 ILCS 10/1-206. As discussed above, Illinois State's Attorneys are state officials. Consequently, the one-year statute of limitations applicable to local entities does not apply. *Bourke v. County of DuPage*, No. 08 C 7200, 2009 WL 5183843, at *3 (N.D. Ill. Dec. 22, 2009) (holding that a State's Attorney, as an officer of the State, "does not fall within the purview of the one-year statute of limitations").

11

Instead, Illinois's normal two-year statute of limitations for tort claims applies. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003). And because the FAC was filed within two years of Hudson's termination, the IIED claim cannot be dismissed as time-barred.

### B. Section 1983 Claims against Individual Defendants

Individual Defendants claim that the § 1983 claims against Joly Stein, Pernecke, and Ballard-Croft must be dismissed because all relevant allegations concerning their conduct occurred outside of the limitations period. The statute of limitations for a § 1983 claim is "governed by the personal injury laws of the state" in which the injury occurred. *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004). In the present case, the injury occurred in Illinois, so the statute of limitations is two years. *See* 735 ILCS 5/13-202.

As an initial matter, the Court addresses Hudson's argument that the statute of limitations for the § 1983 claims should be tolled for the period that the matter was before the Equal Employment Opportunity Commission ("EEOC"). In *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1975), the Supreme Court rejected a similar argument that the statute of limitations for a § 1981 claim was tolled by the pendency of EEOC charges. Its decision was grounded in the fact that Title VII and § 1981, "although related, and although directed to most of the same ends," offer "separate, distinct, and independent" remedies. *Id.* at 461. While the Supreme Court acknowledged that not allowing tolling may be inconsistent with Title VII's goal of achieving conciliation and voluntary compliance through administrative proceedings, that was "the natural effect" of Congress's decision to retain § 1981 as an independent remedy. *Id.* at 461. There is no reason for that same logic not to apply to § 1983 claims. *See, e.g.*, *Carter v. District of Columbia*, 14 F. Supp. 2d 97, 102 (D.D.C. 1998) ("[T]he statute of limitations on a . . . Section 1983 claim is not tolled by the pendency of administrative action on a Title VII claim."); *see also Juarez v.*

*Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322–23 (7th Cir. 1992) (holding that under *Johnson*, state-law tort claims were separate and independent from Title VII claims); *Scott v. Transp. Am., Inc.*, 89 F. Supp. 3d 1275, 1283 (N.D. Ala. 2015) ("[S]eparate' and 'independent' simply means "***not Title VII***."). Consequently, the statute of limitations is not tolled as to the § 1983 claims, and any claim based entirely on conduct occurring prior to October 31, 2017, is time-barred.[8]

Plainly, Hudson cannot maintain a § 1983 claim against Ballard-Croft because all allegations specific to her concern conduct occurred in January and February 2017. (FAC ¶¶ 27–30.) Therefore, all § 1983 claims against Ballard-Croft are dismissed. On the other hand, the FAC does contain an allegation that both Joly Stein and Pernecke told Hudson on December 1, 2017, that it was unacceptable for him to take FMLA leave. (*Id.* ¶ 59.) While Individual Defendants argue that this allegation relates only to Hudson's FMLA claims and cannot support his § 1983 claims, the Court cannot conclude at this stage that the allegation has no relevance to any violation of Hudson's constitutional rights. For example, if a supervisor denied an employee medical leave because he is an African American, that could violate the employee's rights under both the FMLA and the Equal Protection Clause. Thus, the § 1983 claims against Joly Stein and Pernecke will not be dismissed on statute of limitations grounds.

---

[8] Hudson could argue that the statute of limitations should be tolled to account for the time it took the Court to decide his motion for leave to amend. *See Moore v. Indiana*, 999 F.2d 1125, 1131 (7th Cir. 1993) ("[T]he submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion."). However, even if such tolling were allowed, it would not be determinative of any of Individual Defendants' timeliness arguments.

### III. Individual Capacity Section 1983 Claims

Following the dismissal of those claims barred by the Eleventh Amendment or statute of limitations grounds, there remain individual capacity § 1983 claims against Foxx and all Individual Defendants other than Ballard-Croft. Two of the claims allege the violation of Hudson's rights under the equal protection clause of the Fourteenth Amendment and one of the claims alleges a violation of his rights under the First Amendment.

### A. Equal Protection Claims

According to Hudson, he was subject to harassment and bullying during his employment with the CCSAO because he is an African-American man, which violated his right to equal protection. "The Fourteenth Amendment's Equal Protection Clause prohibits intentional discrimination based on membership in a particular class, including acts of employment discrimination." *Trigg v. Fort Wayne Cmty. Schs.*, 766 F.2d 299, 300 (7th Cir. 1985) (citation omitted). To plead an equal protection claim, a plaintiff must allege that "(1) he is a member of a protected class, (2) he was similarly situated to individuals not of the protected class, (3) he was treated differently than those similarly-situated individuals, and (4) those who treated him differently acted with discriminatory intent." *Brown v. Ill. Dep't of Pub. Aid*, 318 F. Supp. 2d 696, 699 (N.D. Ill. 2004). "A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly." *Trautvetter v. Quick*, 916 F.2d 1140, 1150 (7th Cir. 1990) (internal quotation marks omitted). Discriminatory intent may not be pleaded simply by a conclusory allegation of a causative link but "instead, [a] plaintiff must offer 'facts that might plausibly support' the discriminatory link." *Cole v. Bd. of Trs. of N. Ill. Univ.*, 38 F. Supp. 3d 925, 933

(N.D. Ill. 2014) (quoting *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832–33 (7th Cir. 2012)).

Hudson's equal protection claims fail because his allegations do not plausibly suggest that any Defendant intentionally discriminated against him on account of either his race or gender. Indeed, while Hudson alleges a series of incidents of harassment and bullying during his tenure at the CCSAO, he fails to plead facts sufficiently that plausibly demonstrate that he was mistreated because of his race or gender. Most of the alleged incidents of harassment Hudson recounts, at least facially, had nothing to do with his race or gender. For example, Hudson claims that he was ridiculed because of his size, subject to unfounded accusations, and called an "asshole" by a coworker. Certainly, that mistreatment could have been motivated by racial or gender bias but it could also have been based on simple personal animosity. Hudson's conclusory allegations that the mistreatment was motivated by his race or gender simply tracks the elements of an equal protection claim and are insufficient to survive a motion to dismiss. *E.g.*, *Doe v. Bd. of Educ. of Cmty. High Sch. Dist. 218*, No. 16 CV 6646, 2017 WL 2672076, at *3 (N.D. Ill. June 19, 2017). Standing alone, allegations that Hudson, an African-American man, was treated poorly by his white female coworkers is insufficient to plead racial animus. *Perkins v. City of Chicago*, No. 97 C 2389, 1998 WL 89296, at *4 (N.D. Ill. Feb. 19, 1998) ("Although the facts as alleged surely indicate that the officers treated [the plaintiff] extremely poorly, there are no facts, other than the fact that [the plaintiff] was an African-American and the officers were Caucasians, to support plaintiffs' naked assertion of the officers' racial animus.").

Further, to state an equal protection claim against any individual Defendant, Hudson must allege facts specific to that Defendant that plausibly show that she targeted Hudson because of his race or gender. *See Harrison v. Ill. Dep't of Transp.*, No. 10-cv-4674, 2011 WL 2470626, at *6

(N.D. Ill. June 21, 2011) ("[B]ecause . . . § 1983 racial discrimination claims only provide remedies for intentional discrimination, the plaintiff must sufficiently allege that the defendant himself (or herself) possessed an intent to discriminate on the basis of race." (internal quotation marks omitted)). Hudson fails to do so. The most concrete allegation that Hudson makes to connect his harassment to Defendants' racial bias is a statement from a former coworker that he was treated as inferior because he is African American. (FAC ¶ 46.) Yet, that allegation fails to specify who was racially biased against Hudson and this former coworker's opinion about the generalized racial bias Hudson faced at the CCSAO is insufficient to attribute discriminatory intent to all Defendants.[9] *See Minority Police Officers Ass'n of S. Bend v. City of South Bend*, 801 F.2d 964, 967 (7th Cir. 1986) ("[C]onclusory allegations of generalized racial bias do not establish discriminatory intent."); *Parker v. Ill. Hum. Rights Comm'n*, No. 12 C 8275, 2013 WL 5799125, at *7 (N.D. Ill. Oct. 25, 2013) (finding that, without more, one individual's discriminatory intent cannot be attributed to a different individual who was responsible for the adverse employment action); *see also Brown*, 318 F. Supp. 2d at 700 ("[A]llegations of unequal treatment . . . made generally against all defendants[] fail[] to allege[] the element of personal involvement necessary for individual liability under § 1983." (internal quotation marks omitted)). While he also cites Foxx's acknowledgment of "an unprecedented number of workplace harassment and discrimination complaints," that statement does not address whether some specific protected class was bearing the brunt of the discrimination. (FAC ¶ 49.)

In sum, Hudson fails to plead facts that could plausibly demonstrate that any Defendant targeted him for harassment because he is African American or male. While one or more

---

[9] Also possibly suggestive of racial bias is Hudson's allegation that an unnamed white female coworker compared him to a Black murder suspect. (FAC ¶ 19.) However, that remark was not made by any Defendant and cannot be used to attribute discriminatory intent to all Defendants.

Defendants may have treated Hudson rudely and disrespectfully, his allegations fail to connect that mistreatment with any Defendant's racial or gender bias. For that reason, the remaining equal protection claims are dismissed.

### B. First Amendment

Hudson also claims that Defendants violated his First Amendment rights by terminating him in retaliation for complaining about the hostile work environment he endured at the CCSAO. "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Accordingly, a government employee is shielded form retaliation for engaging in protected speech. *Milliman v. County of McHenry*, 893 F.3d 422, 430 (7th Cir. 2018). Here, Defendants contend that Hudson's claim must be dismissed because Hudson's speech was not constitutionally protected.

A public employee's speech is constitutionally protected where he is speaking out "as a citizen on a matter of public concern." *Garcetti*, 547 U.S. at 417. But "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. The Seventh Circuit has held that when an employee complains about his coworkers' harassment and misconduct, he is speaking as an employee rather than a citizen. *Kubiak v. City of Chicago*, 810 F.3d 476, 481–82 (7th Cir. 2016) ("Generally, an employee who is verbally assaulted by a colleague would be expected to report the inappropriate behavior to a supervisor.").

Hudson's allegations clearly demonstrate that his complaints about his coworkers' harassment and bullying were made in his capacity as an employee of the CCSAO. All relevant

speech was made to his supervisors and focused solely on the hostility directed toward him and his belief that the CCSAO was an inhospitable workplace for African-American men. His primary aim in complaining about misconduct was to improve the working conditions for himself as well as his Black male coworkers. When a public employee speaks out in an "attempt to improve [his] work environment" and prevent further harassment, his speech is "intimately connected with [his] professional duties." *Id.* at 482; *see also Roberts v. McLean Cty. State's Attorney's Office*, No. 1:19-cv-01316, 2020 WL 1957903, at *3 (C.D. Ill. Apr. 23, 2020) ("As with verbal abuse, an internal report of sexual harassment to an employee's and/or the harasser's superiors falls within the expected duties [a State's Attorney] would perform.").

In response, Hudson claims that he also spoke out as a private citizen because he complained about the lack of diversity at the CCSAO at a national meeting attended by Foxx. That allegation was nowhere in the FAC, however, and the Court will not consider it in support of his First Amendment claim. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) ("[I]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . ." (internal quotation marks omitted)). And because the four corners of the FAC reveal that Hudson's speech was made as a public employee rather than as a citizen, all remaining First Amendment claims are dismissed.

## IV. The FMLA

Next, Hudson seeks to hold Joly Stein and Pernecke liable in their individual capacities for violating the FMLA, 29 U.S.C. § 2615(a). Specifically, he alleges that Joly Stein and Pernecke interfered with his right to take self-care leave in violation of the FMLA by scolding him for requesting leave and then discharging him days after he told them of his impending leave. To state a FMLA interference claim, a plaintiff's allegations must show that: "(1) [he] was eligible for the

FMLA's protections, (2) [his] employer was covered by the FMLA, (3) [he] was entitled to leave under the FMLA, (4) [he] provided sufficient notice of [his] intent to take leave, and (5) his employer denied or interfered with FMLA benefits to which [he] was entitled." *Summerland v. Exelon Generation Co.*, 455 F. Supp. 3d 646, 658 (N.D. Ill. 2020).

Individual Defendants contend the individual capacity FMLA claims should be dismissed for three independent reasons: (1) Hudson was not an eligible employee under the FMLA; (2) he failed to identify a serious health condition making him eligible for FMLA leave; and (3) he failed to allege that he was ever denied FMLA leave. In addition, they argue that his claim under the anti-retaliation provision of the FMLA must be dismissed because he cannot establish that his protected activity caused his discharge. Yet Hudson failed to address any of these merits arguments in either of his response briefs. Instead, he argued only that the FMLA claims should not be dismissed on Eleventh Amendment grounds, an argument the Court has already rejected. Thus, he has waived or forfeited his arguments in opposition to the dismissal of the individual capacity claims against Joly Stein and Pernecke. *E.g.*, *Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) ("A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim."). Those claims are therefore dismissed.

## V. Privacy Act Violations

Due to Cole's and Coleman's alleged tampering with his mail containing private health information, Hudson seeks to bring a claim for violation of the Privacy Act 5 U.S.C. § 552a, against Cole, Coleman, the CCSAO, and Cook County. "The Privacy Act generally prohibits the federal government from disclosing personal information about an individual without an

individual's consent." *U.S. Dep't of Navy, Navy Exch., Naval Training Station, Navy Hosp., Great Lakes, Ill. v. Fed. Lab. Rels. Auth.*, 975 F.2d 348, 350 (7th Cir. 1992). Of course, as Defendants emphasize, the Privacy Act applies to the federal government and not to state governments. 5 U.S.C. § 551(1) ("[A]gency" means each authority of the Government of the United States."); *McClain v. U.S. Dep't of Just.*, No. 97 C 0385, 1999 WL 759505, at *2 (N.D. Ill. Sept. 1, 1999) ("The Privacy Act . . . appl[ies] to federal, not state, agencies. Therefore, we lack subject matter jurisdiction over . . . claims against the Cook County State's Attorney . . . ."). For that reason, the Privacy Act claim is dismissed.

## VI.    IIED

Finally, Hudson argues that Defendants' conduct in creating a hostile work environment at the CCSAO was extreme and outrageous and caused him severe emotional distress. In Illinois, to state an IIED claim, a plaintiff must show: (1) the conduct involved was truly extreme and outrageous; (2) the actor intended his conduct to inflict severe emotional distress, or knew that there was at least a high probability that his conduct would cause severe emotional distress; and (3) the conduct must actually cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). However, extreme and outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* Rather, the conduct "must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." *Feltmeier*, 798 N.E.2d at 80–81.

Here, Hudson fails to plead sufficiently that any Defendant's conduct was extreme and outrageous. Rather, the pleaded conduct consists of nothing more than harsh criticism of Hudson's job performance along with insults, false accusations, and annoying practical jokes. "In the employment context, Illinois courts have long recognized that personality conflicts and

questioning of job performance are 'unavoidable aspects of employment' and that 'frequently, they produce concern and distress.'" *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997) (quoting *Heying v. Simonaitis*, 466 N.E.2d 1137, 1144 (Ill. App. Ct. 1984)). However, "if such incidents were actionable, nearly all employees would have a cause of action for intentional infliction of emotional distress." *Id.* at 568. Rather, in the employment context, an IIED claim can only be maintained where the plaintiff alleges conduct that "goes well beyond the parameters of the typical workplace dispute." *Parker v. Side by Side, Inc.*, 50 F. Supp. 3d 988, 1023 (N.D. Ill. 2014). Not even false accusations of workplace violations and baseless threats of discipline suffice. *E.g.*, *Harrison v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (affirming dismissal of IIED claim despite the employee's allegations of, among other things, "being reprimanded for no reason," false accusations of poor sales, and threats of discipline). While the conduct to which Hudson was subjected may have been rude and obnoxious, his allegations fail to plead anything more than the type of insults, indignities, and annoyances that do not give rise to an IIED claim. Consequently, his IIED claim is dismissed.

**VII. Dismissal with or without Prejudice**

Having dismissed all claims, the Court must address Defendants' request that the FAC be dismissed with prejudice. Although this is the Court's first time ruling on a motion to dismiss in this case, Entity Defendants previously moved to dismiss Hudson's original complaint. That motion was fully briefed and awaiting a ruling when Hudson moved for leave to amend under Rule 15(a). The Court granted Hudson leave to amend over Entity Defendants' opposition but admonished him to come forward with an amended complaint containing his best factual and legal arguments because it was not inclined to grant him another opportunity to amend. Having considered the nature of the deficiencies of the first amended complaint in light of the Court's

admonition, on the one hand, and the Seventh Circuit's guidance that normally a plaintiff "should be given at least one opportunity to try to amend her complaint before the entire action is dismissed," *NewSpin Sports, LLC v. Arrow Electronics, Inc.*, 910 F.3d 293, 310 (7th Cir. 2018), on the other, the Court has decided to allow Hudson one final opportunity to attempt to state a claim. Only those claims dismissed on Eleventh Amendment grounds are dismissed with prejudice. The remaining claims are dismissed without prejudice and Hudson will be given one final opportunity to amend his complaint to state a claim.

## CONCLUSION

For the foregoing reasons, Entity Defendants' and Individual Defendants' motions to dismiss (Dkt. Nos. 49, 69) are granted.

ENTERED:

Dated:  March 31, 2021

Andrea R. Wood
United States District Judge