1          UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ILLINOIS
2                 EASTERN DIVISION

3  BRANDON HUDSON,                    )
                                      )
4             Plaintiff,             )
                                      )
5             vs.                     )  No. 18-cv-08243
                                      )
6  KIMBERLY M. FOXX, Cook             )
   County State Attorney, in         )
7  her official and individual       )  Chicago, Illinois
   capacity; COOK COUNTY STATE       )
8  ATTORNEY'S OFFICE; COOK           )  July 23, 2021
   COUNTY, ILLINOIS; JENNIFER        )
9  WALKER-COLEMAN, in her            )  10:24 a.m.
   official and individual           )
10 capacity as Division Chief        )
   of Staff; JENNIFER                )
11 BALLARD-CROFT, in her             )
   official and individual           )
12 capacity as Chief of Staff;       )
   JOAN PERNECKE, in her             )
13 official and individual           )
   capacity as Division Chief;       )
14 EMILY COLE, in her official       )
   and individual capacity as        )
15 Supervisor; and MARY JOLY         )
   STEIN, in her official and        )
16 individual capacity as            )
   Supervisor,                       )
17                                    )
              Defendants.            )
18

19      TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS HEARING

20           BEFORE THE HONORABLE ANDREA R. WOOD

21
   APPEARANCES:
22
   For the Plaintiff:    MR. BRANDON HUDSON, Pro Se
23

24

25

```
 1   APPEARANCES:   (Continued)

 2   For the Defendants:     SCHARF BANKS MARMOR LLC
                             BY:  MR. MORGAN CHURMA
 3                           333 West Wacker Drive, Suite 450
                             Chicago, Illinois 60606
 4                           (312) 726-6000
                             Mchurma@scharfbanks.com
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22
     Court Reporter:        Brenda S. Tannehill, CSR, RPR, CRR
23                          Official Court Reporter
                            219 South Dearborn Street, Suite 1928
24                          Chicago, Illinois 60604
                            (312) 554-8931
25                          brenda_tannehill@ilnd.uscourts.gov
```

1      (Proceedings held remotely, via telephone:)

2          THE COURT:  Good morning.  This is Judge Wood.  I

3   think we're ready to get started, so I'll have my courtroom

4   deputy call the case, and then we'll get appearances.  And

5   we'll start with defense counsel when we get appearances.

6          David, go ahead and call the case.

7          THE CLERK:  18 C 8243, Hudson versus Foxx, et al.,

8   for status.

9          MR. CHURMA:  Morgan Churma on behalf of defendants.

10         THE COURT:  Thank you.

11         And do we have the plaintiff on the line?

12         MR. HUDSON:  Good morning, Judge.  This is

13  Brandon Hudson.

14         THE COURT:  Good morning, Mr. Hudson.

15         Okay.  So I set the status to find out what was going

16  on with the parties' settlement efforts because I did not

17  receive dismissal papers as I had anticipated; and then

18  yesterday, in advance of the hearing, there was a filing by

19  defense counsel to have the case dismissed pursuant to a

20  settlement agreement or, alternatively, on the ground that was

21  raised prior to all of our settlement discussions.

22         I did take a look at the motion to dismiss the case

23  with prejudice that was filed by the defendants which attaches

24  what appears to be a letter agreement to resolve the case.

25  That appears to be signed by Mr. Hudson.  And then there's

1    also a stipulation attached which has typed signatures on both

2    lines.

3         So I wasn't sure what the current status is.  It

4    would appear that the parties have agreed to settlement terms

5    and the case is ripe to be dismissed, but nothing has been

6    filed.

7         So since it's defendant's motion, let me hear from

8    Mr. Churma what their understanding is and why it is that

9    they've filed this motion, and then I'll get a response from

10   Mr. Hudson.

11        MR. CHURMA:  Thank you, Your Honor.

12        Yeah.  So, I mean, we entered into the settlement

13   agreement by the Court's deadline, and then we followed up

14   with Mr. Hudson via email asking him to file the stipulation

15   of dismissal which was attached to the settlement letter.  And

16   that's where the electronic signatures were on that as well so

17   he could just simply file it without having any more back and

18   forth.

19        We asked him whether or not he intended to file it,

20   and he never responded to that.  And we again followed up with

21   him after this Court set the status hearing asking if he

22   intended to file it or if he would prefer that we file it.

23   And since we didn't hear back from him again, we wanted to

24   file this motion with the Court in advance of today's hearing

25   to update the Court on the status of everything.

1     THE COURT:  So Mr. Foxx -- I'm sorry.  Not Mr. Foxx.

2     Mr. Hudson, what is going on with the agreement?  It

3  looks like you signed off on the letter agreement.  Is there

4  any reason that I shouldn't dismiss the case pursuant to that

5  agreement at this point?

6     MR. HUDSON:  Judge, I signed it on June 7th.  I think

7  that's over a month ago now.  The only, I guess, hesitancy was

8  I never wanted to represent myself in this matter, so I

9  reached out to Chicago Lawyers Committee For Civil Rights to

10  see if I can get someone possibly appointed through the

11  Settlement Assistance Program.  They informed me to ask

12  Your Honor and Counsel if someone could do that.

13     It seems that opposing counsel has filed it.  I

14  signed it.  I think I'm kind of without any options at this

15  point unless Your Honor is inclined to have someone else look

16  at it.  But it is signed and it's filed, so it's there in the

17  record.

18     THE COURT:  Mr. Hudson, is there some particular

19  concern that you have about the terms that's giving you pause?

20     MR. HUDSON:  Well, it's just I don't -- with legal

21  matters, I never represent myself.  I haven't been in a

22  predicament where counsel that I've retained has left the file

23  in settlement.  So that's the only pause that I have.

24     I don't usually review documents that relate to me

25  and then file them on my own behalf, so that is why I did not

1   do so in this case.  I've never done so, and I don't want to

2   create a practice of doing that, especially at this level of

3   court, in federal court at the district level.

4       So that's the only pause that -- or delay on my

5   behalf.  But I did sign it on June 7th, again, I guess,

6   without counsel and without opposing counsel agreeing to the

7   Settlement Assistance Program or settlement counsel to help me

8   review it.

9       THE COURT:  So Mr. Hudson, the difficulty with your

10  request at this point is that it would appear from the

11  signature accepting the agreement as of June 7th that there

12  was a meeting of the minds here, that there was consideration

13  for the agreement; both sides were offering something and

14  giving up something.

15      And so absent some reason for me to find that perhaps

16  this decision was coerced in some way, that it wasn't actually

17  an agreement entered into through your consent but somehow was

18  forced, unless the defense agrees to allow the additional

19  time, it's not clear to me that there's any basis not to

20  enforce the settlement.

21      I'll also note it was signed off on on June 7th.  If

22  you wanted to have settlement assistance provided through the

23  court, I would have expected a motion or a request to be made

24  along those lines sooner.  It's over a month after the letter

25  agreement was signed.  It looks like it was signed relatively

1   soon after it was sent.  So there is the concern that to the

2   extent you had second thoughts about this agreement that you

3   weren't diligent in following up on them.

4           So again, I think the real issue here is that the

5   terms of the agreement are clearly stated.  It's a signed,

6   written agreement.  Appears to be adequate consideration, a

7   meeting of the minds.

8           I know you were represented by counsel for a part of

9   the settlement agreement -- settlement discussions but not

10  all.  I participated in some of the later settlement

11  discussions with the parties and believed that everybody sort

12  of understood what was going on.  I don't think there was any

13  undue pressure or any concern with coercion or the

14  voluntariness of the decision on either side.

15          So again, unless Mr. Churma tells me that the

16  defendants are willing to, just for everyone's peace of mind,

17  allow additional time for Mr. Hudson to have another attorney

18  get involved, I'd be hard pressed to see a reason not to

19  enforce the settlement.

20          Mr. Churma.

21          MR. CHURMA:  Yeah.  Thank you, Your Honor.

22          I mean, it's time for this case to come to an end.

23  The defendants aren't interested in allowing any additional

24  time.

25          As the Court stated, Mr. Hudson had counsel

1    throughout almost the entirety of the settlement

2    conversations.  The Court participated in that as well.

3          This letter agreement is substantially identical to

4    the one that was provided to Mr. Hudson's former counsel, and

5    my understanding is that she discussed it with him.  And we

6    all discussed this with Your Honor.  And so I think the time

7    for this case to be dismissed is now.

8          THE COURT:  Mr. Hudson, I'll give you one last

9    opportunity if you have any cause why I shouldn't proceed with

10   dismissing the case with prejudice at this point.

11         MR. HUDSON:  Judge, I would agree with you, I haven't

12   filed anything with the Court to bring this request to your

13   attention, but my request to at all times, like, not be

14   underrepresented or -- I never wanted to be pro se in this

15   matter, so I think I've made that clear to opposing counsel

16   and to Your Honor.

17         As far as the diligence that Your Honor mentioned, I

18   have been in touch, like I said, with the civil rights Chicago

19   lawyers, civil rights group, and a private law firm that was

20   looking into assisting me, but they have not been able to make

21   a decision before today's date.  So I don't want to hold

22   things up if Your Honor thinks that this is a fair outcome

23   based on the time that has passed.  And, you know, it is

24   signed.

25         I just think with my counsel leaving during

1　settlement and some of the requests that occurred with the

2　back and forth may present an issue, and maybe it won't.  I'm

3　not sure.

4　　　　THE COURT:  In asking for other attorneys to step in

5　and represent you, did you inform them that there was a signed

6　agreement to dismiss the case?

7　　　　MR. HUDSON:  I did.  I also informed them of the

8　circumstances under which I signed it.  So yeah, I did.  To

9　answer your question, I did inform them of that.

10　　　　THE COURT:  Okay.  So again, given that there is a

11　motion essentially to enforce the settlement, I have to

12　approach it looking at contract principles here.

13　　　　We have offer.  We have acceptance.  We have

14　sufficiently definite terms that are stated in writing.  There

15　appears to be adequate consideration.

16　　　　I think the only argument here for not treating this

17　as a binding settlement agreement and enforcing its terms

18　would be the suggestion by Mr. Hudson that perhaps he wasn't

19　adequately advised or informed or felt some pressure to sign

20　the agreement as a result of losing his counsel over the

21　course of the settlement discussions.

22　　　　In considering whether that might provide a reason

23　not to enforce an otherwise inherently enforceable agreement,

24　I think, one, the counsel that was in the case was involved

25　for a portion of the settlement discussions.  I actually kept

1   her in, and she continued to provide advice a little bit

2   longer than perhaps she desired to.

3          I then mediated some further settlement discussions,

4   and based on my observation, I think the options for the

5   parties were clearly discussed and laid out the risks.  The

6   benefits to each side were clearly laid out.  There was time

7   provided for each side to think about whether to agree to

8   these terms.

9          There was an opportunity, if the parties didn't agree

10  within a certain time period, to then have a further status

11  date with the Court.  So there wasn't a sense of you have to

12  decide immediately or else.  It was see if you decide, and if

13  not, we'll have another discussion on how things are going to

14  go from here.  So I don't think there was any pressure in that

15  sense.

16         It seems that the correspondence from defense counsel

17  to Mr. Hudson was not unprofessional or abusive in any way

18  with respect to asking that he sign the letter agreement.

19         I also, of course, have to take into account whether

20  there's any reason to think that Mr. Hudson didn't understand

21  the terms or, you know, his ability to make these decisions.

22         And certainly, I know Mr. Hudson to be an attorney

23  himself.  That's probably one of the reasons why he really

24  wanted to have an attorney advise him, because I think most of

25  us who have practiced or practice appreciate the value of

1   having somebody other than yourself provide advice.  But that

2   said, given Mr. Hudson's background and given my interactions

3   with him in connection with this case when he was represented

4   and after he was no longer represented, I believe he

5   understood the procedural posture of the case, the pros and

6   cons of settlement, what the effect of the settlement would

7   be.

8           So while getting another opinion may have given or

9   would give Mr. Hudson additional peace of mind and maybe belts

10  and suspenders from his perspective to make sure that he's

11  doing the right thing, that's not the standard that I need to

12  apply in considering whether to enforce the settlement.

13          And the fact that Mr. Hudson didn't have counsel by

14  itself isn't dispositive here because, of course, there is no

15  right to counsel in a civil case even for people who aren't

16  schooled in the law themselves or haven't had the benefit of

17  speaking with attorneys at any point in the process.

18          So for all of those reasons, looking at the written

19  agreement in front of me and the fact that there's no dispute

20  that this is Mr. Hudson's signature on it, it's signed by

21  Ms. Marmor on behalf of the defendants, I am going to enforce

22  the settlement and proceed to dismiss the lawsuit with

23  prejudice and find that the settlement agreement that's been

24  provided reflects the material terms to which the parties have

25  agreed.

1       Mr. Hudson, I appreciate that you may still have some

2   lingering doubts in your mind.  I have to look at the

3   documentation that's in front of me and apply the law to it.

4       So I will say, as I have had said to the parties

5   before, I think it's clear that this is a situation that has

6   caused a bit of disruption and angst on both sides, and so

7   perhaps all for the best at this point for the parties to be

8   able to get closure.

9       With that, the case will be closed.

10      Is there anything further from the defendants on this

11  matter, Mr. Churma?

12      MR. CHURMA:  No.  Thank you, Your Honor.  I think

13  that will be sufficient.

14      THE COURT:  Mr. Hudson?

15      MR. HUDSON:  I find myself in an interesting spot,

16  Judge, because I'm not represented, and it is a settlement.

17  So, you know, as I said, there are attorneys looking at this,

18  and I don't know for the record if I need to preserve any

19  rights to allow them to get back to me.

20      So as I've signed it, I don't know if I need to have

21  an objection on the record in time in case the attorneys want

22  to come in and try to set it aside under some theories that

23  they evaluate.  But like I said, it being me and I'm the

24  party, to kind of speak out of both sides of my mouth is

25  really kind of silly.

1     THE COURT:  Let me ask one further question,

2  actually, because I do want to make sure the procedural issues

3  are all addressed.

4     Mr. Churma, did you let Mr. Hudson know in advance of

5  the hearing today or in advance of filing it yesterday that

6  you were going to be asking for enforcement of the settlement?

7     MR. CHURMA:  No, Your Honor.  We asked them -- we

8  sent multiple emails to him to see if he would follow the

9  terms of the settlement and file the dismissal papers, and we

10 never heard back from him.

11    So our position, we wanted to file the motion to

12 dismiss to enforce the settlement agreement.  The terms are

13 already clear.  I don't think there was anything new, but we

14 didn't reach out to him beforehand since we hadn't been able

15 to get in touch with him previously.

16    THE COURT:  Understood.

17    So here's one modification I'm going to make to my

18 ruling, probably much to the chagrin of Mr. Churma, but I

19 think given the fact that there was just a 24-hour notice that

20 the motion was going to be heard today, it's probably the

21 appropriate thing to do, given that under normal

22 circumstances, I do require a three-day notice for any

23 hearings.

24    I am going to dismiss the case today without

25 prejudice.  I'm going to allow seven days, so exactly one

1    week, until July 30th.

2           If there is some reason that has not been articulated

3    today, Mr. Hudson, that you have for me to set aside basically

4    the order that the case should be dismissed and take some

5    other action, you will need to file a motion to reinstate the

6    case, to reconsider the order allowing the enforcement of the

7    settlement.  So essentially, it would be a filing asking to

8    vacate the order enforcing the settlement and seeking

9    reconsideration of that decision within seven days.

10          If there's no filing, the case will be dismissed with

11   prejudice without anything further.

12          So I'll give you an opportunity to give some thought

13   to whether there's a basis here, to see if you hear back from

14   any of these counsel that you've spoken to.

15          Again, I think seven days under other circumstances

16   is a shorter period of time, but given that you've had a few

17   weeks since you signed off on this agreement, I think that

18   should be a generous amount of time for you to follow up and

19   to see if there is any reason that I shouldn't proceed.

20          As you're having those discussions, of course, keep

21   in mind what the procedural posture of this case was at the

22   time that you entered into the agreement because if I don't

23   enforce the settlement and -- well, if I vacate the order that

24   the settlement's being enforced due to some reason for

25   reconsideration that's presented, then I imagine that the

1  defense position is going to revert back to the objections

2  about the filing of the amended complaint and whether the

3  prior motion for voluntary dismissal should be with or without

4  prejudice.  It doesn't get the case moving forward again.

5  You're still at the stage of having had your most recent

6  complaint dismissed.  So it's not necessarily that the

7  litigation is moving forward and now you're going to get

8  discovery, et cetera.  And that's just something that you

9  should keep it mind.

10            Okay.  Any questions about that approach, Mr. Hudson?

11            MR. HUDSON:  No, Judge.  I'm grateful for the week.

12            I have been diligent since the agreement issued in

13  asking.  I've been following up with the attorneys, so I think

14  a week is appropriate here.  So thank you for that.

15            Is there any reason that Your Honor could see for not

16  asking for an attorney through the Settlement Assistance

17  Program just to review this, or is that not appropriate at

18  this time?

19            THE COURT:  The difficulty, Mr. Hudson, is, again,

20  there would appear to be a valid contract that's in place

21  here.  Illinois contract law principles would apply to whether

22  the settlement is valid and enforceable.

23            Without some indication that one of the elements for

24  a binding agreement is lacking or that there's some defense to

25  enforcing the settlement that needs to be explored, whether

1    it's coercion or duress or whatever the typical defenses are

2    that sometimes people raise to enforcement of a settlement, I

3    can't find that there is grounds to go through the Settlement

4    Assistance Program.

5          It's a limited resource that, you know, there are

6    other plaintiffs who don't have a settlement agreement that

7    appears to be valid and enforceable who need to make use of

8    those resources.  So it's not clear to me that there would be

9    an appropriate basis for me to go to that program when it does

10   appear that a settlement has already been reached here.

11         So that's, I think, the answer.

12         Any other questions, Mr. Hudson?

13         MR. HUDSON:  No, Your Honor.  Thank you.

14         THE COURT:  So here's what the order will read.

15         Let me see if there's any questions from the defense.

16         MR. CHURMA:  We don't have any questions.  I don't

17   have any questions, Your Honor.

18         THE COURT:  Okay.  So here's what the order will read

19   because normally, when there's a motion to enforce a

20   settlement, it's a case-dispositive motion, it is in and of

21   itself an order that would be appealable, assuming that it was

22   objected to.

23         It's not clear to me exactly whether Mr. Hudson has

24   objected to the motion at this point or simply wants to

25   reserve the ability to do so.  So --

1          MR. HUDSON:  Judge.

2          THE COURT:  Yes.  Go ahead, Mr. Hudson.

3          MR. HUDSON:  I wasn't sure, based on the notice, if

4   you were going to allow the motion, but if the motion is

5   allowed, I would like to preserve rights as it relates to the

6   motion.

7          I know the settlement contemplates waiving appellate

8   rights for that, but with the motion being filed less than

9   24 hours in the notice period, if we're going to allow it to

10  go forward, then I would just object for the record to

11  preserve those rights.

12         THE COURT:  Okay.  So here's what I think is the

13  cleanest procedural way to address this.  The order will

14  reflect my initial, I'll say, preliminary ruling that this

15  appears to be a valid and enforceable settlement agreement and

16  there's no basis to set it aside.

17         Accordingly, defendant will have seven days to show

18  cause.  So the case will be dismissed initially -- well, what

19  do I want to say here?

20         I'm going to say that the plaintiff will have seven

21  days to show cause in writing why the case should not be

22  dismissed with prejudice.  And there would be a separate

23  Rule 58 judgment entered at that time to indicate that it's

24  pursuant to the motion rather than just a voluntary dismissal.

25         If within the next seven-day period there is a motion

1   filed explaining why the settlement shouldn't be enforced and

2   the case dismissed with prejudice, then I will take up that

3   motion as I indicated.  If nothing is filed, the case will be

4   dismissed with prejudice.

5           So I'm going to phrase this as a show cause type

6   position where there appears to be a solid basis for

7   enforcement of the settlement and dismissal with prejudice.

8   Your seven-day period is to show cause why the case should not

9   be dismissed with prejudice.

10          Okay, Mr. Hudson?

11          MR. HUDSON:  Yes, Your Honor.

12          THE COURT:  Okay.  I'm not going to set a further

13  status date, so the onus here will be on the parties.

14          If there is a party that wants to prevent the entry

15  of a dismissal with prejudice seven days from now, that party

16  will need to request that relief through a motion asking for

17  whatever the relief is and a hearing.

18          I think that's appropriate, given the fact that,

19  apparently, the parties did have doubts about how things

20  should proceed and hadn't reached out.  Even after I set the

21  status date for today, it seems that the parties didn't -- I

22  know initially, the defendants eventually took the initiative

23  to file something, but I am concerned that there wasn't

24  anything from the plaintiff's side, given that Mr. Hudson

25  obviously knew that he had entered into this agreement, he

1    obviously wanted relief from his obligations but as I

2    understand it from the email that was sent to my chambers

3    earlier today was not even necessarily planning to appear for

4    the hearing to let me know what was going on.

5         So to make sure that this isn't a situation where

6    silence keeps us in a holding pattern, I'm going to put the

7    onus on any party that wants to object to the dismissal

8    without prejudice to actually take an affirmative step to do

9    so.  And if you don't, then it will be dismissed with

10   prejudice on the 30th.

11        MR. CHURMA:  Okay.  Thank you, Your Honor.

12        THE COURT:  Okay.  Thank you, Mr. Churma.  Thank you,

13   Mr. Hudson.

14        MR. CHURMA:  Have a good day.

15     (Proceedings adjourned at 10:55 a.m.)

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2

3

4          I, Brenda S. Tannehill, certify that the foregoing is

5   a complete, true, and accurate transcript from the record of

6   proceedings on July 23, 2021, before the HON. ANDREA R. WOOD

7   in the above-entitled matter.

8

9

10  */s/Brenda S. Tannehill, CSR, RPR, CRR*          10/13/2021

11       Official Court Reporter                    Date
         United States District Court
12       Northern District of Illinois
         Eastern Division
13

14

15

16

17

18

19

20

21

22

23

24

25