UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| BRANDON HUDSON, | ) |
| Plaintiff, | ) |
| v. | ) |
| KIMBERLY M. FOXX, Cook County State Attorney in her Official and Individual Capacity; COOK COUNTY STATE ATTORNEY'S OFFICE; COOK COUNTY, ILLINOIS; JENNIFER WALKER-COLEMAN, in her official and individual capacity as Division Chief of Staff; JENNIFER BALLARD-CROFT, in her official and individual capacity as Chief of Staff; JOAN PERNECKE, in her official and individual capacity as Division Chief; EMILY COLE, in her Official and individual capacity as Supervisor; and MARY JOLY STEIN, in her official and individual capacity as Supervisor; | ) Case No: 18-cv-08243 ) ) Judge Andrea R. Wood |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO SHOW CAUSE**

Defendants Cook County State's Attorney's Office, Cook County, Illinois, and Kimberly M. Foxx, Jennifer Coleman, Jennifer Ballard-Croft, Joan Pernecke, Emily Cole, and Mary Joly Stein, in their official and individual capacities ("Defendants") oppose Plaintiff's Motion to Show Cause (Dkt. 118 ("Motion")). The Motion is yet another effort – in a long line of efforts – to improperly delay final dismissal of this case. Furthermore, the Motion reveals that Brandon Hudson ("Hudson") intentionally misled Defendants and, more importantly, this Court about the circumstances of his signature on a settlement agreement he executed over four months ago.

Since April of this year, Hudson (both while represented and after his lawyer withdrew from representing him) has missed every deadline set by this Court – whether to amend his

1

complaint as to the individual defendants or to show cause why the executed settlement agreement that required this case to be dismissed with prejudice should not be granted. His pleadings increasingly have been marked by uncivil personal attacks on counsel and inaccuracies, all without reference to a single legal authority for any of the relief he seeks.

There is no basis on which to delay this case any further, and there certainly is no basis on which to reopen settlement negotiations and force Defendants to appear before a Magistrate Judge to do so. Defendants ask the Court to dismiss this case with prejudice for the reasons provided in their pending motion (Dkt. 110) and in their opposition to extending the deadline to show cause (Dkt. 113 at ¶ 11). Despite Hudson's admission that he failed to use his own signature on the settlement agreement, the Court still can enforce it and end this case with prejudice. If the Court concludes that it cannot enforce the settlement agreement, it should dismiss the case and allow Defendants the opportunity pursue attorney fees against Hudson.

**FACTS**

1. On December 17, 2018, Hudson filed his first complaint (Dkt. 1) alleging violations of Title VII. Defendants moved to dismiss the first complaint. (*See* Dkt. 19). Shortly thereafter, Hudson's first attorney in this case sought an extension (Dkt. 23) and then, weeks later, withdrew from the case and asked to stay all deadlines, with a further status hearing six weeks later on June 13, 2019. (Dkt. 28).

2. On June 12, 2019, Sivonnia Debarros filed an appearance on behalf of Hudson. (Dkt. 29) and filed a response to the first motion to dismiss on July 22, 2019 (Dkt. 31).

3. Defendants filed a reply brief (Dkt. 32) pointing out that Plaintiff's response failed to address the relevant legal issues or substantiate any claim or basis for further amendments – which should have been clear at the outset. Rather than await the Court's expected ruling, Plaintiff

reversed course and sought to amend the complaint a month later on September 13, 2019 – nearly seventh months after the motion to dismiss was filed. (Dkts. 33, 34).

4. Over Defendants' objection, the Court granted leave to amend (Dkt. 36), but admonished Plaintiff that should the amended complaint repeat the defects of the former, dismissal likely would be with prejudice – and that, as to any new claims, the court would "assume at this point you've had time to research both factually and legally your best arguments here. So, what I'm looking for is your best complaint here." (9/26/19 Hrg. Tr. at 9-10, Ex. A).

5. On October 31, 2019, Plaintiff filed his amended complaint (Dkt. 37) adding claims against six individual current and former employees of the Cook County Sheriff's Office.

6. Both the entity and individual Defendants moved to dismiss the First Amended Complaint ("FAC"). (*See* Defs. Mots. to Dismiss FAC, Dkts. 63, 70; Reply Briefs, Dkts. 79, 87; Memo. Op. and Or., Dkt. 96).

7. On March 31, 2021, the Court dismissed the FAC with prejudice as to the entity Defendant, but *sua sponte* afforded Plaintiff one last chance to state a claim against the individuals by April 14, 2021 – stating that if he failed to do so "those claims will be dismissed with prejudice." (Dkt. 95). The Court extended this deadline to April 21, 2021. (Dkt. 98).

8. Plaintiff failed to file a second amended complaint by April 21, 2021 (or indeed at any time thereafter). Instead, he filed a motion for a court-ordered voluntary dismissal without prejudice under Rule 41(a)(2). (Dkt. 100).

9. Because Rule 41(a)(2) requires the moving party to establish a reasonable basis for the Court to order dismissal without prejudice, and the motion simply states that counsel "is unable to file a SAC," Defendants' counsel emailed Ms. Debarros to set a briefing schedule and ask why this case should not simply be dismissed with prejudice if she was unable to support a new

3

complaint. (4/22/21 Email Chain, Ex. B). Ms. Debarros's response made it clear that the basis for seeking voluntary dismissal was to allow her to cease representing Mr. Hudson – "[i]f you guys want to brief it then I'll be asking the court for leave to file a motion to withdraw and to give my client time to find counsel." (*Id.*). Defendants explained that wanting to withdraw is not a proper basis for voluntary dismissal under Rule 41(a)(2) and requested that she withdraw the motion and file a motion for leave to withdraw instead. (*Id.*). Rather than respond in substance, Ms. Debarros opted to take this matter up with the Court on the April 27, 2021 status call. (*Id.*). There was no discussion of sanctions or attorneys' fees in this correspondence. Whatever Ms. Debarros may have told her client later, she was already preparing to withdraw from this case at this time.

10. During the status call on April 27, 2021, Ms. Debarros reiterated that she sought voluntary dismissal to allow her to withdraw from this case and give Plaintiff additional time to find counsel. She provided no other basis. Defendants objected that this was not a proper basis for dismissal under Rule 41(a)(2) and that a court-ordered dismissal would simply allow Plaintiff to bring another lawsuit and voluntarily dismiss again to stall the ultimate resolution of this matter. Defendants further asserted that if the Court granted dismissal without prejudice under Rule 41(a)(2), it should use its discretion to make the dismissal contingent upon Hudson paying attorney fees for the claims against the individuals – citing *Wells Fargo v. Younan Properties*, 737 F.3d 465, 468 (7th Cir. 2013). Defendants also asked the Court to dismiss this case with prejudice under Rule 41(b) for failing to comply with the Court's deadline for filing a second amended complaint – citing *Watford v. LaFond*, 725 Fed. Appx. 412 at 413 (7th Cir. 2018) and *Ewa v. AFSCME, Council 31*, 2012 U.S. Dist. LEXIS 112650 (C.D. Ill. Aug. 10, 2012). Moreover, Defendants explained that voluntary dismissal would only apply to the individuals and since the

4

Court dismissed the entity with prejudice, Defendants would still be able to seek prevailing party attorney fees under 42 U.S.C. § 1988(b) and potentially under 28 U.S.C. § 1927.

11. In light of the potential for attorney fees – which the Court recognized could be substantial and would date back to before Ms. Debarros appeared, the Court encouraged the parties to see if they could settle the matter, with Hudson agreeing to dismiss the case with prejudice if the Defendants (both entity and individual) would waive the right to seek fees. The Court continued the Rule 41(a)(2) motion and directed the parties to "engage in settlement discussions regarding dismissal, appellate rights, and attorneys' fees" and to advise the Court of the status of those discussions by May 4, 2021. (Dkt. 101). The parties did just that.

12. On May 3, 2021, Defendants informed Ms. Debarros that they would agree to the terms discussed above. On May 4, 2021, Ms. Debarros responded stating that Hudson "agrees to the settlement terms but thinks the terms should go before a magistrate which I don't think is necessary." Defendants agreed. Defendants also proposed language for the joint email to chambers advising the Court on the status of the discussions. Plaintiff agreed to the draft language which Defendants emailed to the Court on May 4, 2021 (Ex. C), stating:

> At Court's request, the parties have met and conferred about whether an agreement could be reached to dismiss this case with prejudice and submit this email jointly to inform the Court of their progress. The parties have agreed to a settlement in principle that would result in a dismissal with prejudice and Plaintiff waiving his appellate rights. Ms. DeBarros has filed a motion to withdraw, but the attorneys are hopeful that settlement can be completed and this matter resolved in the next day or two.

13. On May 4, 2021, Ms. Debarros filed her motion for leave to withdraw. (Dkt. 103).

14. On May 6, 2021, Defendants emailed Ms. Debarros the executed letter agreement with an enclosed stipulation of dismissal with prejudice – these appear to be the same documents Ms. Debarros forwarded to Plaintiff later that day in the email and letter attached as Exhibit 2 to his Motion. Hudson inexplicably characterizes this email and letter agreement as an "email threat,"

5

and it is the entirety of his support for vacating the settlement. These settlement terms substantially mirror those that Hudson eventually signed on June 7, 2021 after settlement conferences with Court.

15. Nowhere in communications with Ms. Debarros did Defendants ever threaten ethical sanctions, use the word "sanctions" at all, or threaten any course of action not permitted under the law. It is unclear why Ms. Debarros told Hudson that she "do[es] not feel comfortable making any further communications with the other side regarding the merits of this case considering that they are selling attorney's fees and potentially – sanctions." (Dkt. 118-2 (5/6/21 letter Ms. Debarros to Hudson)). The rules cited to Ms. Debarros by which fees could be recovered were no different from the rules cited to this Court in hearings and in pleadings, and there was nothing untoward about doing so. Perhaps Ms. Debarros was trying to placate her client with this claim, or was signaling to him that she thought any further pursuit of Hudson's case would be frivolous and sanctionable. Whatever the reason, her reference to "sanctions" is not a basis to assert that the settlement in this case was obtained by any improper duress.

16. On May 6, 2021, Ms. Debarros filed a motion to advance ruling on her motion to withdraw, stating that "[t]here is a difference of opinion on how to proceed with this matter between Plaintiff and Counsel and as such between Plaintiff's Counsel and Plaintiff." (Dkt. 105).

17. On May 24, 2021, Hudson emailed the Court directly asking for the Court to assist with settlement discussions or refer to the Magistrate and improperly attached redlined edits he had added to the settlement agreement. Defendants objected to the request to refer to the Magistrate and Hudson's submission of redlined settlement terms to the Court.

18. On May 25, 2021, the Court held a confidential settlement conference with Mr. Hudson present to discuss the terms and status of settlement. During the conference, **Hudson**

6

*agreed before counsel and this Court to dismiss the case with prejudice based on the original terms sent to him on May 6, 2021 with the following addition that appears on the agreement he eventually signed: "The Parties all agree to mutually release any known claims arising out of Hudson's employment and departure from the CCSAO."* (*See* Dkt. 118-4 (emphasis added)). The Court set further discussions for June 2, 2021.

19. Prompted by Hudson's statements during the settlement conference, Ms. Debarros emailed the Court on May 26, 2021, copying counsel and Hudson, asking for her immediate withdrawal. Her reasons had nothing to do with Defendants' conduct in settlement negotiations or any perceived "threat" of sanctions. Rather, she stated:

> **The issue with that is my client has made claims against me on record** and recently sent an email seeking his client file.
>
> Previous to this, Mr. Hudson has communicated directly with Opposing Counsel and this Court acting as his own counsel.
>
> **Keeping me in this matter will only subject me to additional unfounded allegations of insufficient representation** after the hard work and fighting I've done on Mr. Hudson's behalf.

(Ex. D, emphasis added).

20. Based on this email, it appears that Hudson requested and likely received his client file as early as May 2021 – contradicting assertions made in his recent motions for extensions claiming that he did not have information needed for his motion to show cause. (Dkts. 112, 114, 115, 116).

21. On June 2, 2021, the Court granted Ms. Debarros's motion to withdraw without objection from Mr. Hudson and permitted Hudson – a lawyer himself – to proceed *pro se*. The Court set June 7, 2021 as the deadline for the parties to "make a final decision on the proposed settlement and file dismissal papers." (Dkt. 108).

7

22. At the Court's direction, on June 2, 2021, Defendants sent Hudson the letter agreement with the enclosed stipulation of dismissal with directions that he should file the stipulation once he executed the agreement. (Ex. E).

23. On June 7, 2021, Hudson emailed the signed agreement and Defendants reminded him that he also needed to file the stipulation of dismissal as stated in the agreement – he did not respond or file the stipulation. (*Id.*)

24. It did not occur to Defendants' counsel that Mr. Hudson's signature was not actually his name. Defendants' counsel assumed Mr. Hudson had signed the document in good faith and that he would abide by its very simple and plain terms.

25. On July 14, 2021, Defendants again emailed Hudson asking whether he would file the stipulation of dismissal, or whether Defendants had his permission to file it themselves. He did not respond. (*Id.*)

26. In light of Hudson's delays and refusal to engage, Defendants filed the pending Motion to Dismiss with Prejudice based on the executed settlement agreement (which they properly attached to the motion) or, in the alternative, under Rule 41(b) for failing to file a second amended complaint by the Court's April 21, 2021 deadline. (Dkt. 110).

27. On July 23, 2021, the Court held a status hearing regarding the settlement and heard argument on Defendants' Motion to Dismiss based on the settlement or "on the ground that was raised prior to all of our settlement discussions." (7/23/21 Tr. at 3:15-21, Ex. F). Immediately prior to the hearing, Hudson informed the Court that he was not planning to attend the hearing and directed it to "proceed with the Settlement [Defendants] filed." (Dkt. 113-1). **During that hearing, Hudson unequivocally told the Court at least seven times that he signed the settlement agreement**. (*Id.* at 5:6 ("Judge, **I signed it on June 7th**."), 5:13-14 ("**I signed it**."),

8

5:16 ("**it is signed and it's filed**"), 6:5 ("**I did sign it on June 7th**"), 8:23-24 ("**as you know, it is signed**"), 9:7-8 ("**I signed it**"), 12:20 ("**I've signed it**")). (Emphasis added)

28. The Court repeatedly asked Hudson to provide reasons why the settlement should not be enforced and what was giving him pause to file dismissal papers. All of Hudson's responses essentially said the same thing as to why he had not filed the stipulation of dismiss and the case should not be dismissed: "I never represent myself. I haven't been in a predicament where counsel that I've retained has left the file in settlement. So *that's the only pause that I have*….or delay on my behalf." (*Id.* at 5:20-6:8 (emphasis added)). **Despite multiple opportunities to do so, Hudson never once revealed that he used something other than his name to sign the settlement agreement.**

29. Nor did Hudson actually object to enforcing the settlement; rather, he stated that the settlement should proceed and objecting would be like "speak[ing] out of both sides of [his] mouth." (*Id.* at 8:21-24 ("So I don't want to hold things up if Your Honor thinks that this is a fair outcome based on the time that has passed."), 12:20-25 ("So as I've signed it, I don't know if I need to have an objection on the record in time in case attorneys want to come in and try to set it aside under some theories that they evaluate. But like I said, it being me and I'm the party, to kind of speak out of both sides of my mouth is really kind of silly."))

30. Despite Hudson not raising any specific objection to enforcing the settlement, the Court evaluated the propriety of the agreement, finding that there was offer, acceptance, sufficiently definite terms, and consideration from both parties. (*Id.* at 9:13-15.) Having been involved in repeated settlement discussions in chambers, the Court "believed that everybody sort of understood what was going on" and did not observe "any undue pressure or any concern with coercion or the voluntariness of the decision on either side." (*Id.* at 7:8-14). Hudson agreed with

9

the Court's assessment of the settlement discussions and only repeated his concern about having to proceed *pro se*. (*Id.* at 8:11 ("Judge, I would agree with you….")). The Court also rejected any notion that Hudson was not "adequately advised or informed or felt some pressure to sign the agreement as a result of losing his counsel over the course of the settlement discussions." (*Id.* at 9:16-12:9).

31. The Court initially ruled that the case be closed pursuant to the settlement (*Id.* at 12:9). However, because the motion was filed the previous day, Hudson was granted an additional week, until July 30, 2021, to show cause why the agreement should not be enforced and stated that "[i]f no filing is made by 7/30/2021, this case will be dismissed with prejudice." (Dkt. 111). Hudson agreed that "a week is appropriate here." (7/23/21 Tr. at 15:13-14).

32. Hudson failed to file papers showing cause on July 30, 2021, and instead sought an extension through August 20, 2021 – not to show cause, but to provide the Court with a status update. (Dkt. 112). Defendants opposed the extension on August 5, 2021. (Dkt. 113). Hudson filed his reply on August 12, 2021. The reply failed to make any effort to refute the case law cited in Defendants' opposition. (Dkt. 114).

33. On August 20, 2021, Hudson filed a second motion for extension to provide the Court a status update – not the pleading that was now long overdue – on September 13, 2021. (Dkt. 115).

34. On September 10, 2021, Hudson sought a third extension to October 11, 2021, to provide a status update. (Dkt. 116).

35. On October 11, 2021, attorney Sean Brown filed a limited appearance for the purpose of settlement, without regard for the fact that there is a dispositive motion to dismiss pending and that settlement discussions have long since ended. (Dkt. 117). On the same day –

10

two and a half months after the Court's July 30, 2021 deadline – Hudson filed his motion to show cause. (Dkt. 118).

36. The Motion largely rehashes prior claims. The only new matter in the Motion is the shocking claim, for the first time, that Hudson signed the settlement agreement at issue with the words "*vi coactus*" rather than his name.

## ARGUMENT

Hudson's Motion to Show Cause why the settlement agreement should not be enforced says nothing about the second ground for dismissal under Rule 41(b) for failing to comply with the Court's deadline to file a second amended complaint. The Court should not countenance Hudson's gamesmanship and misleading conduct with regard to his signature on the settlement agreement. However, even so, it can still grant the pending motion to dismiss and permit all defendants in this case to pursue any attorneys' fees claims – as they always could have absent the now-disputed settlement.

As for that dispute, Hudson seeks improperly to relitigate the merits of this case and claims that the settlement agreement should be vacated due to "unequal bargaining powers" and his claim that his counsel withdrew based on the fact that Defendants' counsel told Ms. Debarros (and the Court) that they had a right to seek fees as a prevailing party in the case as to the entity Defendant (who already were dismissed with prejudice) or if the Court granted voluntary dismissal in the absence of a settlement. (Dkt. 118 at 3). Hudson now avers – despite his many statements to the Court during the July 23, 2021 hearing that now appear to have been false and misleading – that it is not his signature on the settlement, but that he signed the Latin phrase "*vi coactus*" instead. (Dkt. 118 at ¶ 8).

The Motion fails to cite to any case, explain how the agreement is unconscionable, or show any actionable impropriety in settlement discussions. Nor does the Motion address the case law Defendants cited in their opposition to his first motion for extension, which conclusively reject this theory as a basis to vacate a settlement. (*See* Dkt. 113 at ¶ 11). All of these are fatal flaws warranting dismissal. *See Mitsui Sumitomo Ins. Co. v. Moore Transp., Inc.*, 500 F. Supp. 2d 942, 950-51 (N.D. Ill. 2007) ("The law of the Seventh Circuit is clear: 'Perfunctory or undeveloped arguments are waived.'"). As such, and for the reasons discussed below, this Court should reject Hudson's attempt to show cause, and should dismiss this case with prejudice pursuant to the settlement.

Alternatively, this Court may use its discretion and dismiss this case with prejudice under Rule 41(b) for Hudson's failure to file a second amended complaint (Dkt. 110), which remains unrefuted by any of Hudson's many filings since Defendants raised this point with the Court on April 27, 2021. Moreover, Hudson's failure to file a timely motion to show cause after the Court again made it clear that dismissal would be forthcoming further supports dismissal. (Dkt. 111).

### I. Hudson Has Not Established Any Legitimate Basis to Vacate the Settlement.

The bar for vacating a settlement agreement is high and the Motion does not come close to satisfying that standard. Apart from a conclusory statement that "it is clear Plaintiff did not enter into a Settlement knowingly, voluntarily, of his free will" (Dkt. 118 at ¶ 9), Hudson offers nothing to refute the Court's findings of offer, acceptance, adequate consideration, or a meeting of the minds to settle this case. Rather, he claims the agreement to be unconscionable – and potentially, by his reference to "*vi coactus*," that he signed under duress – but there is no evidence of either. (*Id.*).

Since Illinois law requires under both theories that Hudson be deprived of his ability to exercise free will, the Motion fails to provide a factual or legal basis showing that the settlement should be vacated under either theory. *See Bank of Am., N.A. v. 108 N. State Retail LLC*, 401 Ill. App. 3d 158, 174 (1st Dist. Ill. 2010) ("It is well settled that, where consent to an agreement is secured merely through a demand that is lawful or upon doing *or threatening to do that which a party has a legal right to do*, economic duress does not exist.") (emphasis added); *Gavery v. Altheimer & Gray*, 1996 U.S. Dist. LEXIS 13240, *8-9 (N.D. Ill. 1996) ("**Where consent is secured by hard bargaining positions or financial pressures, duress does not exist**. Plaintiff must demonstrate inducement by a wrongful act or threat of another under circumstances depriving him of the exercise of free will.") (emphasis added); *In re Marriage of Bielawski*, 328 Ill. App. 3d 243, 251 (1st Dist. Ill. 2002) ("Unconscionability encompasses an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.").

Paragraphs 1-4 of the Motion have nothing to with whether the settlement is enforceable and instead seeks to relitigate the merits with allegations already rejected by the Court. Paragraphs 5-7 raise the spurious claim that Defendants somehow threatened Ms. Debarros by telling her they had a right to seek attorneys fees (which Hudson, not his attorney, would have to pay) and then seek to blame Ms. Debarros's withdrawal on Defendants. The facts show otherwise – that Debarros planned to withdraw before the topic of fees even arose. The Court itself witnessed the breakdown of the relationship between this counsel and Hudson; it was not the result of any improper behavior by Defendants or their counsel. (*See* Ex. D).

In paragraph 8, Hudson admits that he misled this Court and seems to suggest that his bizarre choice to sign the settlement agreement with something other than his name is proof of

13

duress. It is not – it is proof of sharp practices and inexcusable gamesmanship by a lawyer and officer of this Court. In any event, Hudson has not provided – and Defendants have been unable to find – any case law holding that a fake signature can be the basis for vacating an otherwise valid settlement that was mutually accepted – as Hudson admitted in court that it was. *See Randle v. Butler*, 2021 U.S. Dist. LEXIS 186448 *5 (where plaintiff had "plenty of time" to tell defendants' counsel or the court that a settlement agreement failed to reflect terms, and like Hudson, he "**returned to Defendants a signed document that added language indicating that he signed the agreement under coercion and duress**" he "**unilaterally modified the terms of the settlement agreement, which he cannot do**."). (Emphasis added).

Paragraph 9 repeats Hudson's attacks against Defendants and their counsel; complains that the settlement was filed with the Court by Defendants rather than Plaintiff; points to the fact that extensions were sought; refers to the Court's request that Ms. Debarros remain counsel of record to finalize the terms of the settlement; and notes that Hudson now has counsel to "enter into a reasonable settlement." None of these are reasons to vacate the settlement. *See Bank of Am., N.A.*, 401 Ill. App. 3d at 174; *Gavery*, 1996 U.S. Dist. LEXIS 13240 at *8-9; *In re Marriage of Bielawski*, 328 Ill. App. 3d at 251. Hudson was apprised of the law, he signed the settlement (and/or repeatedly represented to the Court that he signed it), and that should be the end of this matter. Defendants will not engage in any further settlement discussions.

**II.   This Court Should Grant Defendants' Motion to Dismiss.**

As stated in their Motion to Dismiss (Dkt. 110), this Court has discretion to dismiss this case with prejudice for Hudson's failure to file a second amended complaint after being warned this would result in dismissal – as well as his delay tactics and misleading statements to the Court. Courts in this Circuit repeatedly have held under circumstances just like these that a case may be

dismissed with prejudice. "When a district court judge is unable to dispose of a matter because a recalcitrant plaintiff systematically refuses to obey the court's orders, dismissal is justified." *Lewis v. Sch. Dist. #70*, 648 F.3d 484, 488-89 (7th Cir. 2011) (vacating settlement award for the plaintiff and dismissing with prejudice after she failed to finalize the settlement within the Court's deadline following Defendants' motion to enforce); *see Givens v. Vaughn*, U.S. 2021 App. LEXIS 24615, *5-8 (7th Cir. Aug. 18, 2021) (dismissing case where plaintiff refused to sign settlement documents and disobeyed court order); *Watford v. LaFond*, 725 Fed. Appx. 412, 413 (7th Cir. 2018) (affirming dismissal of *pro se* plaintiff who sought leave to recruit counsel rather than file an amended complaint by the court's deadline); *Randle v. Butler*, 2021 U.S. Dist. LEXIS 186448, *4-6 (S.D. Ill. Sept. 29, 2021) (dismissal with prejudice where *pro se* plaintiff failed to execute settlement documents by the court's deadline and where he added language indicating it was signed under duress or coercion after agreeing to terms during settlement conferences); *Ewa v. AFSCME, Council 31*, 2012 U.S. Dist. LEXIS 112650 (C.D. Ill. Aug. 10, 2012) (dismissal with prejudice where plaintiff sought counsel rather than file an amended complaint); *Johnson v. Schoen*, No. CIV 10-113-GPM, 2011 U.S. Dist. LEXIS 7626 (S.D. Ill. Jan. 26, 2011) (dismissal with prejudice where the plaintiff failed to file an amended complaint by the deadline).

Even if the Court feels it cannot dismiss this case with prejudice based on the settlement agreement, these authorities make clear that the Court may dismiss this case with prejudice in its discretion, and Defendants ask that it do so for the reasons stated herein and previously.

## **CONCLUSION**

For the foregoing reasons, Defendants ask that this case be dismissed with prejudice either pursuant to the settlement agreement or pursuant to the Court's inherent authority in light of

15

Plaintiff's failure to follow repeated Court orders and deadlines, and that the Court enter any other such relief as the Court determines is appropriate and just.

Respectfully submitted,

/s/ *Sarah R. Marmor*
Sarah R. Marmor
Suzanne M. Alexander
Morgan G. Churma
SCHARF BANKS MARMOR LLC
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Telephone: 312-726-6000
smarmor@scharfbanks.com
salexander@scharfbanks.com
mchurma@scharfbanks.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Sarah Marmor, certify that on October 15, 2021, I caused to be filed the foregoing using the Court's CM/ECF system, which will send e-mail notification of the filing to all parties of record. These documents are available for viewing and downloading via the CM/ECF system.

/s/ Sarah Marmor