```
 1                  UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3   BRANDON HUDSON,                    )
                                        )
 4            Plaintiff,                )
                                        )
 5       vs.                            ) No. 18-cv-08243
                                        )
 6   KIMBERLY M. FOXX, Cook             )
     County State Attorney, in          )
 7   her official and individual        ) Chicago, Illinois
     capacity; COOK COUNTY STATE        )
 8   ATTORNEY'S OFFICE; COOK            ) July 23, 2021
     COUNTY, ILLINOIS; JENNIFER         )
 9   WALKER-COLEMAN, in her             ) 10:24 a.m.
     official and individual            )
10   capacity as Division Chief         )
     of Staff; JENNIFER                 )
11   BALLARD-CROFT, in her              )
     official and individual            )
12   capacity as Chief of Staff;        )
     JOAN PERNECKE, in her              )
13   official and individual            )
     capacity as Division Chief;        )
14   EMILY COLE, in her official        )
     and individual capacity as        )
15   Supervisor; and MARY JOLY          )
     STEIN, in her official and         )
16   individual capacity as             )
     Supervisor,                        )
17                                      )
              Defendants.               )
18

19        TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS HEARING

20              BEFORE THE HONORABLE ANDREA R. WOOD

21
     APPEARANCES:
22
     For the Plaintiff:    MR. BRANDON HUDSON, Pro Se
23

24

25
```

EXHIBIT F

```
 1   APPEARANCES:   (Continued)

 2   For the Defendants:      SCHARF BANKS MARMOR LLC
                              BY:  MR. MORGAN CHURMA
 3                            333 West Wacker Drive, Suite 450
                              Chicago, Illinois 60606
 4                            (312) 726-6000
                              Mchurma@scharfbanks.com
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22
     Court Reporter:          Brenda S. Tannehill, CSR, RPR, CRR
23                            Official Court Reporter
                              219 South Dearborn Street, Suite 1928
24                            Chicago, Illinois 60604
                              (312) 554-8931
25                            brenda_tannehill@ilnd.uscourts.gov
```

1       (Proceedings held remotely, via telephone:)
2       THE COURT: Good morning. This is Judge Wood. I
3  think we're ready to get started, so I'll have my courtroom
4  deputy call the case, and then we'll get appearances. And
5  we'll start with defense counsel when we get appearances.
6       David, go ahead and call the case.
7       THE CLERK: 18 C 8243, Hudson versus Foxx, et al.,
8  for status.
9       MR. CHURMA: Morgan Churma on behalf of defendants.
10      THE COURT: Thank you.
11      And do we have the plaintiff on the line?
12      MR. HUDSON: Good morning, Judge. This is
13 Brandon Hudson.
14      THE COURT: Good morning, Mr. Hudson.
15      Okay. So I set the status to find out what was going
16 on with the parties' settlement efforts because I did not
17 receive dismissal papers as I had anticipated; and then
18 yesterday, in advance of the hearing, there was a filing by
19 defense counsel to have the case dismissed pursuant to a
20 settlement agreement or, alternatively, on the ground that was
21 raised prior to all of our settlement discussions.
22      I did take a look at the motion to dismiss the case
23 with prejudice that was filed by the defendants which attaches
24 what appears to be a letter agreement to resolve the case.
25 That appears to be signed by Mr. Hudson. And then there's

1  also a stipulation attached which has typed signatures on both
2  lines.
3         So I wasn't sure what the current status is.  It
4  would appear that the parties have agreed to settlement terms
5  and the case is ripe to be dismissed, but nothing has been
6  filed.
7         So since it's defendant's motion, let me hear from
8  Mr. Churma what their understanding is and why it is that
9  they've filed this motion, and then I'll get a response from
10 Mr. Hudson.
11        MR. CHURMA:  Thank you, Your Honor.
12        Yeah.  So, I mean, we entered into the settlement
13 agreement by the Court's deadline, and then we followed up
14 with Mr. Hudson via email asking him to file the stipulation
15 of dismissal which was attached to the settlement letter.  And
16 that's where the electronic signatures were on that as well so
17 he could just simply file it without having any more back and
18 forth.
19        We asked him whether or not he intended to file it,
20 and he never responded to that.  And we again followed up with
21 him after this Court set the status hearing asking if he
22 intended to file it or if he would prefer that we file it.
23 And since we didn't hear back from him again, we wanted to
24 file this motion with the Court in advance of today's hearing
25 to update the Court on the status of everything.

1       THE COURT:  So Mr. Foxx -- I'm sorry.  Not Mr. Foxx.
2       Mr. Hudson, what is going on with the agreement?  It
3  looks like you signed off on the letter agreement.  Is there
4  any reason that I shouldn't dismiss the case pursuant to that
5  agreement at this point?
6       MR. HUDSON:  Judge, I signed it on June 7th.  I think
7  that's over a month ago now.  The only, I guess, hesitancy was
8  I never wanted to represent myself in this matter, so I
9  reached out to Chicago Lawyers Committee For Civil Rights to
10 see if I can get someone possibly appointed through the
11 Settlement Assistance Program.  They informed me to ask
12 Your Honor and Counsel if someone could do that.
13      It seems that opposing counsel has filed it.  I
14 signed it.  I think I'm kind of without any options at this
15 point unless Your Honor is inclined to have someone else look
16 at it.  But it is signed and it's filed, so it's there in the
17 record.
18      THE COURT:  Mr. Hudson, is there some particular
19 concern that you have about the terms that's giving you pause?
20      MR. HUDSON:  Well, it's just I don't -- with legal
21 matters, I never represent myself.  I haven't been in a
22 predicament where counsel that I've retained has left the file
23 in settlement.  So that's the only pause that I have.
24      I don't usually review documents that relate to me
25 and then file them on my own behalf, so that is why I did not

1 do so in this case. I've never done so, and I don't want to
2 create a practice of doing that, especially at this level of
3 court, in federal court at the district level.
4 So that's the only pause that -- or delay on my
5 behalf. But I did sign it on June 7th, again, I guess,
6 without counsel and without opposing counsel agreeing to the
7 Settlement Assistance Program or settlement counsel to help me
8 review it.
9 THE COURT: So Mr. Hudson, the difficulty with your
10 request at this point is that it would appear from the
11 signature accepting the agreement as of June 7th that there
12 was a meeting of the minds here, that there was consideration
13 for the agreement; both sides were offering something and
14 giving up something.
15 And so absent some reason for me to find that perhaps
16 this decision was coerced in some way, that it wasn't actually
17 an agreement entered into through your consent but somehow was
18 forced, unless the defense agrees to allow the additional
19 time, it's not clear to me that there's any basis not to
20 enforce the settlement.
21 I'll also note it was signed off on on June 7th. If
22 you wanted to have settlement assistance provided through the
23 court, I would have expected a motion or a request to be made
24 along those lines sooner. It's over a month after the letter
25 agreement was signed. It looks like it was signed relatively

1  soon after it was sent.  So there is the concern that to the
2  extent you had second thoughts about this agreement that you
3  weren't diligent in following up on them.
4  　　　　So again, I think the real issue here is that the
5  terms of the agreement are clearly stated.  It's a signed,
6  written agreement.  Appears to be adequate consideration, a
7  meeting of the minds.
8  　　　　I know you were represented by counsel for a part of
9  the settlement agreement -- settlement discussions but not
10 all.  I participated in some of the later settlement
11 discussions with the parties and believed that everybody sort
12 of understood what was going on.  I don't think there was any
13 undue pressure or any concern with coercion or the
14 voluntariness of the decision on either side.
15 　　　　So again, unless Mr. Churma tells me that the
16 defendants are willing to, just for everyone's peace of mind,
17 allow additional time for Mr. Hudson to have another attorney
18 get involved, I'd be hard pressed to see a reason not to
19 enforce the settlement.
20 　　　　Mr. Churma.
21 　　　　MR. CHURMA:  Yeah.  Thank you, Your Honor.
22 　　　　I mean, it's time for this case to come to an end.
23 The defendants aren't interested in allowing any additional
24 time.
25 　　　　As the Court stated, Mr. Hudson had counsel

1 throughout almost the entirety of the settlement
2 conversations.  The Court participated in that as well.
3 　　　　　　This letter agreement is substantially identical to
4 the one that was provided to Mr. Hudson's former counsel, and
5 my understanding is that she discussed it with him.  And we
6 all discussed this with Your Honor.  And so I think the time
7 for this case to be dismissed is now.
8 　　　　　　THE COURT:  Mr. Hudson, I'll give you one last
9 opportunity if you have any cause why I shouldn't proceed with
10 dismissing the case with prejudice at this point.
11 　　　　　　MR. HUDSON:  Judge, I would agree with you, I haven't
12 filed anything with the Court to bring this request to your
13 attention, but my request to at all times, like, not be
14 underrepresented or -- I never wanted to be pro se in this
15 matter, so I think I've made that clear to opposing counsel
16 and to Your Honor.
17 　　　　　　As far as the diligence that Your Honor mentioned, I
18 have been in touch, like I said, with the civil rights Chicago
19 lawyers, civil rights group, and a private law firm that was
20 looking into assisting me, but they have not been able to make
21 a decision before today's date.  So I don't want to hold
22 things up if Your Honor thinks that this is a fair outcome
23 based on the time that has passed.  And, you know, it is
24 signed.
25 　　　　　　I just think with my counsel leaving during

Case: 1:18-cv-08243 Document #: 122-6 Filed: 10/15/21 Page 9 of 20 PageID #:1065

9

1  settlement and some of the requests that occurred with the
2  back and forth may present an issue, and maybe it won't.  I'm
3  not sure.
4       THE COURT:  In asking for other attorneys to step in
5  and represent you, did you inform them that there was a signed
6  agreement to dismiss the case?
7       MR. HUDSON:  I did.  I also informed them of the
8  circumstances under which I signed it.  So yeah, I did.  To
9  answer your question, I did inform them of that.
10      THE COURT:  Okay.  So again, given that there is a
11 motion essentially to enforce the settlement, I have to
12 approach it looking at contract principles here.
13      We have offer.  We have acceptance.  We have
14 sufficiently definite terms that are stated in writing.  There
15 appears to be adequate consideration.
16      I think the only argument here for not treating this
17 as a binding settlement agreement and enforcing its terms
18 would be the suggestion by Mr. Hudson that perhaps he wasn't
19 adequately advised or informed or felt some pressure to sign
20 the agreement as a result of losing his counsel over the
21 course of the settlement discussions.
22      In considering whether that might provide a reason
23 not to enforce an otherwise inherently enforceable agreement,
24 I think, one, the counsel that was in the case was involved
25 for a portion of the settlement discussions.  I actually kept

1  her in, and she continued to provide advice a little bit
2  longer than perhaps she desired to.
3        I then mediated some further settlement discussions,
4  and based on my observation, I think the options for the
5  parties were clearly discussed and laid out the risks.  The
6  benefits to each side were clearly laid out.  There was time
7  provided for each side to think about whether to agree to
8  these terms.
9        There was an opportunity, if the parties didn't agree
10 within a certain time period, to then have a further status
11 date with the Court.  So there wasn't a sense of you have to
12 decide immediately or else.  It was see if you decide, and if
13 not, we'll have another discussion on how things are going to
14 go from here.  So I don't think there was any pressure in that
15 sense.
16       It seems that the correspondence from defense counsel
17 to Mr. Hudson was not unprofessional or abusive in any way
18 with respect to asking that he sign the letter agreement.
19       I also, of course, have to take into account whether
20 there's any reason to think that Mr. Hudson didn't understand
21 the terms or, you know, his ability to make these decisions.
22       And certainly, I know Mr. Hudson to be an attorney
23 himself.  That's probably one of the reasons why he really
24 wanted to have an attorney advise him, because I think most of
25 us who have practiced or practice appreciate the value of

1  having somebody other than yourself provide advice.  But that
2  said, given Mr. Hudson's background and given my interactions
3  with him in connection with this case when he was represented
4  and after he was no longer represented, I believe he
5  understood the procedural posture of the case, the pros and
6  cons of settlement, what the effect of the settlement would
7  be.
8        So while getting another opinion may have given or
9  would give Mr. Hudson additional peace of mind and maybe belts
10 and suspenders from his perspective to make sure that he's
11 doing the right thing, that's not the standard that I need to
12 apply in considering whether to enforce the settlement.
13       And the fact that Mr. Hudson didn't have counsel by
14 itself isn't dispositive here because, of course, there is no
15 right to counsel in a civil case even for people who aren't
16 schooled in the law themselves or haven't had the benefit of
17 speaking with attorneys at any point in the process.
18       So for all of those reasons, looking at the written
19 agreement in front of me and the fact that there's no dispute
20 that this is Mr. Hudson's signature on it, it's signed by
21 Ms. Marmor on behalf of the defendants, I am going to enforce
22 the settlement and proceed to dismiss the lawsuit with
23 prejudice and find that the settlement agreement that's been
24 provided reflects the material terms to which the parties have
25 agreed.

1                 Mr. Hudson, I appreciate that you may still have some
2     lingering doubts in your mind.  I have to look at the
3     documentation that's in front of me and apply the law to it.
4                 So I will say, as I have had said to the parties
5     before, I think it's clear that this is a situation that has
6     caused a bit of disruption and angst on both sides, and so
7     perhaps all for the best at this point for the parties to be
8     able to get closure.
9                 With that, the case will be closed.
10                Is there anything further from the defendants on this
11    matter, Mr. Churma?
12                MR. CHURMA:  No.  Thank you, Your Honor.  I think
13    that will be sufficient.
14                THE COURT:  Mr. Hudson?
15                MR. HUDSON:  I find myself in an interesting spot,
16    Judge, because I'm not represented, and it is a settlement.
17    So, you know, as I said, there are attorneys looking at this,
18    and I don't know for the record if I need to preserve any
19    rights to allow them to get back to me.
20                So as I've signed it, I don't know if I need to have
21    an objection on the record in time in case the attorneys want
22    to come in and try to set it aside under some theories that
23    they evaluate.  But like I said, it being me and I'm the
24    party, to kind of speak out of both sides of my mouth is
25    really kind of silly.

Case: 1:18-cv-08243 Document #: 122-6 Filed: 10/15/21 Page 13 of 20 PageID #:1069

13

1            THE COURT: Let me ask one further question,
2    actually, because I do want to make sure the procedural issues
3    are all addressed.
4            Mr. Churma, did you let Mr. Hudson know in advance of
5    the hearing today or in advance of filing it yesterday that
6    you were going to be asking for enforcement of the settlement?
7            MR. CHURMA: No, Your Honor. We asked them -- we
8    sent multiple emails to him to see if he would follow the
9    terms of the settlement and file the dismissal papers, and we
10   never heard back from him.
11           So our position, we wanted to file the motion to
12   dismiss to enforce the settlement agreement. The terms are
13   already clear. I don't think there was anything new, but we
14   didn't reach out to him beforehand since we hadn't been able
15   to get in touch with him previously.
16           THE COURT: Understood.
17           So here's one modification I'm going to make to my
18   ruling, probably much to the chagrin of Mr. Churma, but I
19   think given the fact that there was just a 24-hour notice that
20   the motion was going to be heard today, it's probably the
21   appropriate thing to do, given that under normal
22   circumstances, I do require a three-day notice for any
23   hearings.
24           I am going to dismiss the case today without
25   prejudice. I'm going to allow seven days, so exactly one

1 week, until July 30th.

2 If there is some reason that has not been articulated
3 today, Mr. Hudson, that you have for me to set aside basically
4 the order that the case should be dismissed and take some
5 other action, you will need to file a motion to reinstate the
6 case, to reconsider the order allowing the enforcement of the
7 settlement. So essentially, it would be a filing asking to
8 vacate the order enforcing the settlement and seeking
9 reconsideration of that decision within seven days.

10 If there's no filing, the case will be dismissed with
11 prejudice without anything further.

12 So I'll give you an opportunity to give some thought
13 to whether there's a basis here, to see if you hear back from
14 any of these counsel that you've spoken to.

15 Again, I think seven days under other circumstances
16 is a shorter period of time, but given that you've had a few
17 weeks since you signed off on this agreement, I think that
18 should be a generous amount of time for you to follow up and
19 to see if there is any reason that I shouldn't proceed.

20 As you're having those discussions, of course, keep
21 in mind what the procedural posture of this case was at the
22 time that you entered into the agreement because if I don't
23 enforce the settlement and -- well, if I vacate the order that
24 the settlement's being enforced due to some reason for
25 reconsideration that's presented, then I imagine that the

1  defense position is going to revert back to the objections
2  about the filing of the amended complaint and whether the
3  prior motion for voluntary dismissal should be with or without
4  prejudice.  It doesn't get the case moving forward again.
5  You're still at the stage of having had your most recent
6  complaint dismissed.  So it's not necessarily that the
7  litigation is moving forward and now you're going to get
8  discovery, et cetera.  And that's just something that you
9  should keep it mind.
10           Okay.  Any questions about that approach, Mr. Hudson?
11           MR. HUDSON:  No, Judge.  I'm grateful for the week.
12           I have been diligent since the agreement issued in
13 asking.  I've been following up with the attorneys, so I think
14 a week is appropriate here.  So thank you for that.
15           Is there any reason that Your Honor could see for not
16 asking for an attorney through the Settlement Assistance
17 Program just to review this, or is that not appropriate at
18 this time?
19           THE COURT:  The difficulty, Mr. Hudson, is, again,
20 there would appear to be a valid contract that's in place
21 here.  Illinois contract law principles would apply to whether
22 the settlement is valid and enforceable.
23           Without some indication that one of the elements for
24 a binding agreement is lacking or that there's some defense to
25 enforcing the settlement that needs to be explored, whether

1  it's coercion or duress or whatever the typical defenses are
2  that sometimes people raise to enforcement of a settlement, I
3  can't find that there is grounds to go through the Settlement
4  Assistance Program.
5      It's a limited resource that, you know, there are
6  other plaintiffs who don't have a settlement agreement that
7  appears to be valid and enforceable who need to make use of
8  those resources. So it's not clear to me that there would be
9  an appropriate basis for me to go to that program when it does
10 appear that a settlement has already been reached here.
11     So that's, I think, the answer.
12     Any other questions, Mr. Hudson?
13     MR. HUDSON: No, Your Honor. Thank you.
14     THE COURT: So here's what the order will read.
15     Let me see if there's any questions from the defense.
16     MR. CHURMA: We don't have any questions. I don't
17 have any questions, Your Honor.
18     THE COURT: Okay. So here's what the order will read
19 because normally, when there's a motion to enforce a
20 settlement, it's a case-dispositive motion, it is in and of
21 itself an order that would be appealable, assuming that it was
22 objected to.
23     It's not clear to me exactly whether Mr. Hudson has
24 objected to the motion at this point or simply wants to
25 reserve the ability to do so. So --

1         MR. HUDSON: Judge.

2         THE COURT: Yes. Go ahead, Mr. Hudson.

3         MR. HUDSON: I wasn't sure, based on the notice, if
4 you were going to allow the motion, but if the motion is
5 allowed, I would like to preserve rights as it relates to the
6 motion.

7         I know the settlement contemplates waiving appellate
8 rights for that, but with the motion being filed less than
9 24 hours in the notice period, if we're going to allow it to
10 go forward, then I would just object for the record to
11 preserve those rights.

12         THE COURT: Okay. So here's what I think is the
13 cleanest procedural way to address this. The order will
14 reflect my initial, I'll say, preliminary ruling that this
15 appears to be a valid and enforceable settlement agreement and
16 there's no basis to set it aside.

17         Accordingly, defendant will have seven days to show
18 cause. So the case will be dismissed initially -- well, what
19 do I want to say here?

20         I'm going to say that the plaintiff will have seven
21 days to show cause in writing why the case should not be
22 dismissed with prejudice. And there would be a separate
23 Rule 58 judgment entered at that time to indicate that it's
24 pursuant to the motion rather than just a voluntary dismissal.

25         If within the next seven-day period there is a motion

1  filed explaining why the settlement shouldn't be enforced and
2  the case dismissed with prejudice, then I will take up that
3  motion as I indicated.  If nothing is filed, the case will be
4  dismissed with prejudice.
5         So I'm going to phrase this as a show cause type
6  position where there appears to be a solid basis for
7  enforcement of the settlement and dismissal with prejudice.
8  Your seven-day period is to show cause why the case should not
9  be dismissed with prejudice.
10       Okay, Mr. Hudson?
11       MR. HUDSON:  Yes, Your Honor.
12       THE COURT:  Okay.  I'm not going to set a further
13  status date, so the onus here will be on the parties.
14       If there is a party that wants to prevent the entry
15  of a dismissal with prejudice seven days from now, that party
16  will need to request that relief through a motion asking for
17  whatever the relief is and a hearing.
18       I think that's appropriate, given the fact that,
19  apparently, the parties did have doubts about how things
20  should proceed and hadn't reached out.  Even after I set the
21  status date for today, it seems that the parties didn't -- I
22  know initially, the defendants eventually took the initiative
23  to file something, but I am concerned that there wasn't
24  anything from the plaintiff's side, given that Mr. Hudson
25  obviously knew that he had entered into this agreement, he

obviously wanted relief from his obligations but as I understand it from the email that was sent to my chambers earlier today was not even necessarily planning to appear for the hearing to let me know what was going on.

So to make sure that this isn't a situation where silence keeps us in a holding pattern, I'm going to put the onus on any party that wants to object to the dismissal without prejudice to actually take an affirmative step to do so. And if you don't, then it will be dismissed with prejudice on the 30th.

MR. CHURMA: Okay. Thank you, Your Honor.

THE COURT: Okay. Thank you, Mr. Churma. Thank you, Mr. Hudson.

MR. CHURMA: Have a good day.

(Proceedings adjourned at 10:55 a.m.)

1                 C E R T I F I C A T E

4       I, Brenda S. Tannehill, certify that the foregoing is
5 a complete, true, and accurate transcript from the record of
6 proceedings on July 23, 2021, before the HON. ANDREA R. WOOD
7 in the above-entitled matter.

10   */s/Brenda S. Tannehill, CSR, RPR, CRR*           10/13/2021
11      Official Court Reporter                    Date
       United States District Court
12      Northern District of Illinois
       Eastern Division