IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRANDON HUDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18-cv-08243 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| KIMBERLY M. FOXX, Cook County ) | |
| State's Attorney in Her Official ) | |
| and Individual Capacity, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Defendants' motion to dismiss with prejudice pursuant to the settlement agreement [110] is granted. The Court finds that the parties have reached a binding and enforceable settlement agreement subject to the terms memorialized in the written agreement attached as Exhibit A to the motion and located at Docket No. [110-1]. Consistent with the parties' settlement agreement, the remaining claims in this case are dismissed with prejudice. Plaintiff has waived his appellate rights with respect to all dismissed claims. Defendants will not seek attorney's fees. Other terms of the written agreement stand as stated in the agreement. The Clerk is directed to enter Judgment pursuant to Fed. R. Civ. P. 58 in favor of Defendants. In light of the settlement, Plaintiff's motion to voluntarily dismiss without prejudice [100] and all other pending motions are terminated as moot. The telephonic status hearing set for 11/1/2021 is stricken; parties need not appear. Civil case terminated. See the accompanying Statement for details.

## STATEMENT

Plaintiff Brandon Hudson is a former Assistant State's Attorney with the Cook County State's Attorney's Office. In his First Amended Complaint ("FAC"), Hudson asserted several claims arising from alleged racially discriminatory harassment and bullying to which he was subjected by his supervisors and his coworkers at the Cook County State's Attorney's Office. This Court dismissed all the FAC's claims without prejudice, except for those claims dismissed on Eleventh Amendment grounds, which were dismissed with prejudice. (Dkt. Nos. 95, 96.) The Court granted Hudson leave to amend his complaint to attempt to salvage the claims dismissed without prejudice. Instead, the parties reached what Defendants believed to be a settlement agreement that would end the litigation. After Hudson failed to file a stipulation dismissing his remaining claims with prejudice, as required under the settlement agreement, Defendants filed the present motion to enforce the agreement. (Dkt. No. 110.) For the reasons that follow, Defendants' motion is granted.

**I.**

On March 31, 2021, this Court granted Defendants' motions to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) in its entirety. Certain of the FAC's claims were dismissed with prejudice on Eleventh Amendment grounds but otherwise the dismissal was without prejudice. Accordingly, Hudson was given until April 14, 2021 to file a second amended complaint that cured the pleading deficiencies with respect to the claims dismissed without prejudice. The Court later extended that deadline to April 21, 2021. However, on that date, instead of filing a second amended complaint, Hudson filed a motion to voluntarily dismiss his action without prejudice pursuant to Federal Rule of Civil Procedure 41(a). (Dkt. No. 100.) In his motion, Hudson explained that his counsel, Sivonnia DeBarros, informed him that she was unable to file a second amended complaint. Therefore, Hudson requested that he be permitted to voluntarily dismiss his claims with leave to reinstate them within a reasonable time "to be determined by the Court."

During the ensuing hearing on Hudson's Rule 41(a) motion, DeBarros indicated that she did not believe that she could file a second amended complaint consistent with her obligations under Federal Rule of Civil Procedure 11. She believed that allowing Hudson to voluntarily dismiss his claims without prejudice would allow her to withdraw as Hudson's counsel while affording Hudson sufficient time to retain new counsel. Defendants objected to the motion, arguing that DeBarros's desire to withdraw as counsel was not an adequate basis for dismissal under Rule 41(a). Further, Defendants stated that if Hudson's motion were granted, they intended to seek prevailing party attorney's fees from him pursuant to 42 U.S.C. § 1988(b) and possibly 28 U.S.C. § 1927. Given the circumstances, the Court suggested that the parties consider an agreement whereby Hudson would agree to dismiss the remainder of his case with prejudice and waive his appellate rights in exchange for Defendants' agreement to waive their right to seek attorney's fees. The parties agreed to discuss that option.

Following the hearing, Defendants and Hudson (with DeBarros still serving as his counsel) agreed to a settlement in principle that, in relevant part, would result in Hudson voluntarily dismissing his claims with prejudice and waiving his appellate rights, and, in exchange, Defendants would not seek prevailing party attorney's fees. On May 4, 2021, DeBarros filed a motion for leave to withdraw as Hudson's counsel. (Dkt. No. 103.) Two days later, DeBarros emailed Hudson the proposed settlement agreement, a stipulation of dismissal with prejudice, and a letter informing Hudson of her motion to withdraw. In her letter to Hudson, DeBarros explained that in light of her motion to withdraw and the fact "that there [was] a difference of opinion on how to handle this matter," she did not "feel comfortable making any further communications with the other side regarding the merits of this case considering that they are selling attorney's fees and potentially—sanctions." (Pl.'s Mot. to Show Cause, Ex. 2, Dkt. No. 118-2.) That same day, DeBarros filed a motion seeking to expedite her withdrawal in light of the differences of opinion between Hudson and her on how to proceed in the matter. (Dkt. No. 105.)

This Court held a status hearing regarding the parties' settlement discussions and DeBarros's request to withdraw on May 25, 2021. In light of the pending settlement in principle negotiated by DeBarros, the Court continued her motion to withdraw until the next status hearing to allow time for Hudson to consider his options. Afterwards, DeBarros emailed the Court and

requested that she be permitted to withdraw immediately due to the "unfounded and ungrounded allegations made by" Hudson concerning her representation. (Defs.' Resp. to Pl.'s Mot. to Show Cause, Ex. D, Dkt. No. 122-4.) She expressed concern that if she was not permitted to withdraw immediately, she would be subjected "to additional unfounded allegations of insufficient representation after the hard work and fighting" she had done on Hudson's behalf. (*Id.*) The Court held another status hearing on June 2, 2021, which included an impromptu settlement conference. At the conclusion of the conference, the Court granted DeBarros's motion to withdraw and acknowledged that Hudson would be proceeding *pro se* from that point forward. (Dkt. No. 108.) Further, the Court directed the parties to make a final decision on their proposed settlement and file dismissal papers, if appropriate, by June 7, 2021. Accordingly, Defendants emailed Hudson the proposed settlement agreement for his signature along with a stipulation of dismissal with prejudice that he would file upon executing the settlement.

On June 7, 2021, Hudson emailed Defendants' counsel and informed them that he was taking steps to retain new counsel to assist him with the proposed settlement agreement. (Defs.' Resp. to Pl.'s Mot. to Show Cause, Ex. E, Dkt. No. 122-5.) He further inquired as to whether certain additional terms would be added to the proposed settlement agreement. (*Id.*) In response, Defendants' counsel objected to Hudson's request for additional terms and warned that if Hudson did not sign the settlement agreement by the Court's deadline, Defendants would ask the Court to dismiss the case with prejudice based on Hudson's failure to file a second amended complaint by the April 21, 2021 deadline and would then seek attorney's fees as the prevailing party. (*Id.*) Hudson responded by promptly returning a signed copy of the settlement agreement. Specifically, the second (and final) page of the letter agreement includes a section for Hudson to countersign indicating that he has accepted and agreed to the terms stated there. That section includes a line for a signature above a second line for the signatory to print his name. Hudson signed the first line in cursive and then printed his name clearly on the second line as "Mr. Brandon Hudson, Esq." Upon receipt of what appeared to be a fully executed settlement agreement, Defendants asked Hudson to effectuate the settlement by filing the stipulation of dismissal with prejudice. Hudson never filed the stipulation.

Because dismissal papers had not been filed, the Court directed the parties to appear before it again on July 23, 2021. One day before the hearing, Defendants filed the present motion to dismiss the case with prejudice pursuant to the settlement agreement, attaching a copy of the signed settlement agreement. (Dkt. No. 110.) When asked about the settlement agreement at the July 23, 2021 hearing, Hudson repeatedly confirmed to the Court that he signed the agreement on June 7, 2021. He expressed concern that he did so without the assistance of counsel but at no time did Hudson suggest in any way that he had not actually signed the agreement. At the conclusion of the hearing, the Court preliminarily concluded that the parties had reached a valid and enforceable settlement agreement and hat there appeared to be no basis to set it aside. Nonetheless, because the motion to enforce the settlement had not been filed sufficiently in advance of the hearing to provide Hudson with adequate notice consistent with the Court's procedures, the Court gave Hudson until July 30, 2021 to show cause in writing why the settlement should not be enforced.

Rather than file a written response, on July 30, 2021, Hudson filed a motion for an extension of time to show cause. (Dkt. No. 112.) He explained that following the July 23, 2021

hearing, he reached out to Defendants' counsel seeking to discuss his concerns about the settlement. Hudson also stated that he had reached out to DeBarros regarding the "erratic and unusual" circumstances of her withdrawal. According to Hudson, because he was unable to confer sufficiently with either Defendants' counsel or his former counsel, he was unable to file his show-cause submission by the Court's deadline. Hudson went on to file three additional submissions regarding his need for more time to prepare a response to the show cause order on August 12, 2021, August 20 and September 10, 2021. (Dkt. Nos. 114–16.) None of these submissions included claim any by Hudson that he had not in fact signed the settlement agreement.

Finally, on October 11, 2021, Hudson filed his show-cause submission. In that submission, Hudson contends that he "did not enter into a Settlement knowingly, voluntarily, of his free will, with the benefit of counsel, without threat, without duress, and without coercion from Defendants' and/or its counsel." (Pl.'s Mot. to Show Cause at 3, Dkt. No. 118.) Specifically, Hudson asserts that the settlement agreement should be set aside because he was without counsel when the agreement was executed and both Hudson and his former counsel were threatened during settlement negotiations. Despite seeking multiple extensions of the Court's show-cause deadline due to his purported need to obtain necessary information in support of vacating the settlement agreement, Hudson's show-cause submission contains no pertinent information or evidence that was not available to him at the time of the July 23, 2021 court hearing. Instead, Hudson claims for the first time in his show cause submission that he signed the agreement by writing "Vi Coactus," a Latin phrase meaning "having been forced" or "having been compelled," rather than his name on the signature line. Hudson goes on to request that the settlement agreement be set aside and the Court allow him to retain new counsel for the limited purpose of negotiating a "reasonable" settlement. The Court took all the parties' submissions under advisement and now decides whether the settlement agreement should be enforced.

## II.

"A settlement agreement is a contract and as such, the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally." *Laserage Tech. Corp. v. Laserage Lab'ys, Inc.*, 972 F.2d 799, 802 (7th Cir. 1992). In Illinois, a settlement agreement is enforceable "where there has been an offer, an acceptance, and a meeting of the minds or mutual assent as to all material terms." *Desimone v. Danaher Corp.*, No. 17-cv-5232, 2018 WL 4181483, at *4 (N.D. Ill. Aug. 31, 2018); *see also Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 448 F. Supp. 3d 898, 904 (N.D. Ill. 2019) ("If no party raises a choice of law issue, the court applies the law of the forum state." (internal quotation marks and alteration omitted)). Where the parties in a case pending before it agree to settle, a district court "possess[es] the inherent or equitable power" summarily to enforce that agreement. *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). But where there is a material dispute as to the existence or terms of a settlement agreement, the district court should conduct an evidentiary hearing. *Id.*

Here, there is a signed, written settlement agreement that evidences the parties' mutual assent to all material terms. At the July 23, 2021 hearing, Hudson repeatedly confirmed to the Court that he had signed the settlement agreement and never once indicated that he signed it with something other than his name. Nor did he raise the issue in the four filings he made between the July 23, 2021 hearing and his belated show-cause submission. Nonetheless, in his October 11,

2021 show-cause submission, Hudson claims that he signed the settlement agreement with "Vi Coactus" to signal that he executed the agreement under duress.

"The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, as, for example, by acts or conduct of the parties." *Lynge v. Kunstmann*, 418 N.E.2d 1140, 1144 (Ill. App. Ct. 1981). Here, Defendants sent Hudson the settlement agreement for his signature, and Hudson returned the agreement with what appeared to be his signature above his printed name. The Court notes that the "signature" is written in cursive in such a manner that it would not readily be apparent to anyone unfamiliar with Hudson's actual signature that he had signed anything other than his name—particularly given that Hudson's full name was printed legibly on the line below it without any modifier. Although the phrase "Vi Coactus" arguably can be made out from the cursive once one is alerted to look for it, Hudson gave no indication to Defendants when he returned the signed settlement agreement that he used that phrase rather than signing his name. Later, Hudson repeatedly acknowledged to this Court that he had signed the agreement. Consequently, Hudson cannot invalidate the settlement agreement by now claiming that he intended to convey a different message with what he previously represented to be his signature. *See Robbins v. Lynch*, 836 F.2d 330, 332 (7th Cir. 1988) ("You can't escape contractual obligation by signing with your fingers crossed behind your back, even if that clearly shows your intent ***not*** to be bound.").

Nonetheless, if Hudson were, in fact, under duress when he agreed to settle, the agreement could not be enforced. *Porter v. Chi. Bd. of Educ.*, 981 F. Supp. 1129, 1131 (N.D. Ill. 1997) ("Duress or coercion is a ground for invalidating the terms of a settlement agreement."). Duress means "the imposition, oppression, undue influence or taking advantage of the stress of another whereby one is deprived of the exercise of his free will." *Id.* at 1132 (internal quotation marks omitted). "The party asserting duress must prove the allegation by clear and convincing evidence." *Id.*

According to Hudson, Defendants procured his agreement to settle through threats against him and his former counsel, DeBarros. But the only evidence Hudson presents of Defendants' alleged threats is DeBarros's letter informing Hudson that in light of her motion to withdraw, she did not feel comfortable making any further communications with Defendants "considering that they are selling attorney's fees and potentially—sanctions." Hudson claims DeBarros's letter demonstrates that she withdrew as a result of Defendants' threats, leaving him to complete settlement negotiations without assistance of counsel.

The Court finds that DeBarros's letter does not provide clear and convincing proof that Defendants threatened her. As an initial matter, because Defendants' consideration for Hudson's agreement to settle was their promise to refrain from seeking prevailing party attorney's fees (as well as to provide a neutral reference in response to inquiries from prospective employers), it was not improper for Defendants to reference attorney's fees as a bargaining chip in negotiations. "Duress does not exist . . . where consent to an agreement is secured because of hard bargaining positions or the pressure of financial circumstances unless the party obtaining the advantage is shown to be tainted with some degree of fraud or wrongdoing." *Enslen v. Village of Lombard*, 470 N.E.2d 1188, 1190 (Ill. App. Ct. 1984). Further, Hudson has presented no evidence that Defendants threatened to seek sanctions (and, if so, that those threats were wrongful) other than

DeBarros's vague reference to the possibility of sanctions. Finally, Hudson's suggestion that DeBarros withdrew as his counsel due to Defendants' threats is belied by DeBarros's own representations to this Court that her withdrawal was due to Hudson's "unfounded allegations of insufficient representation."

Hudson also claims that he could not knowingly and voluntarily settle the case at a time when he was unrepresented by counsel. That claim is unavailing since civil litigants do not have a right to counsel. *E.g.*, *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006) ("Civil litigants do not have a constitutional or statutory right to counsel in federal court."). Further, Hudson was represented throughout most of the settlement negotiations, including when Defendants first extended their offer—an offer DeBarros deemed to present a "reasonable resolution" to the matter. (Mot. to Withdraw as Counsel of Record, Dkt. No. 103.) The Court also notes that Hudson is not a typical *pro se* litigant but is himself a practicing attorney. Moreover, the Court has had the benefit of participating in more than one settlement discussion with the parties and observed no improper coercion on the part of Defendants or apparent duress on the part of Hudson. To the contrary, at all times Hudson appeared well-informed and more than capable of negotiating with Defendants' counsel and making his own decisions concerning his litigation. Thus, Hudson's claim that he lacked the wherewithal to settle knowingly and voluntarily without counsel rings hollow.

In sum, Hudson falls far short of presenting clear and convincing evidence in favor of setting aside the parties' written settlement agreement. The evidence simply shows that Hudson agreed to settle this case and then had second thoughts. "Buyer's remorse, however, cannot undo a contract to which all parties have given their assent." *Newkirk v. Village of Steger*, 536 F.3d 771, 775 (7th Cir. 2008); *see also Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 454 (7th Cir. 1986) ("A party to a settlement cannot avoid the agreement because he subsequently believes the settlement insufficient . . . ."). For that reason, the parties' settlement agreement will be enforced and the case is dismissed with prejudice.

Dated: November 1, 2021

_____
Andrea R. Wood
United States District Judge